LAW OFFICE OF ROBERT G. LOEWY, P.C.
ROBERT G. LOEWY (State Bar No. 179868)
rloewy@rloewy.com
20 Enterprise, Suite 310
Aliso Viejo, CA  92656
Telephone:  949/468-7150
949/242-5105 (fax)

ROBBINS GELLER RUDMAN & DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
RICARDO J. MARENCO
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
rmarenco@rgrdlaw.com

Attorneys for Plaintiffs

*(Additional Attorneys Listed on Signature Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BELL, BILLY BLAYLOCK, JASON JANSON, RICHARD NAREZ, ALEJANDRA RENTERIA, REMI RUNDZIO, MAXIMILLIAN ACCETTA, JAN FREYMAN, MAUREEN HEINER, JESSICA KELLY, FREDERICKA MCPHERSON, PEDRO SEPULVEDA RAMIREZ, CURTIS RESTA, MOISES SENTI, VANIA SILVA, GERALD STRAUSS, ANN MARIE GRAY, LYNN COX, TONYA SKINNER, CAUSE 4 PAWS, INC., RYAN FRAZIER, BRIDGET MILLER, CHRISTY SULLIVAN, DONNA RICHARDS, TOMMY BENTLEY, ALVIN DUNCAN, KINYATA JONES, ) | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TONYA MCNEELY, CHARLES
WILLIAMS, RUSSELL STEEL,
ANGELA BOWENS, KATHY
CLEGHORN, BRENT DEROUEN,
EVAN GREEN, FELICIA JEFFRIES,
ANN HARLAND, AND NICHOLAS
CROUCH, Individually and on Behalf
of All Others Similarly Situated,

Plaintiffs,

vs.

ZF FRIEDRICHSHAFEN AG, ZF-
TRW AUTOMOTIVE HOLDINGS
CORP., TRW AUTOMOTIVE INC.,
TRW AUTOMOTIVE U.S. LLC, TRW
VEHICLE SAFETY SYSTEMS INC.,
HONDA MOTOR CO. LTD.,
AMERICAN HONDA MOTOR CO.
INC., HONDA OF AMERICA MFG.
INC., HONDA R&D CO., LTD,
HYUNDAI MOTOR GROUP,
HYUNDAI MOTOR CO., HYUNDAI
MOTOR AMERICA, KIA MOTORS
CORP., KIA MOTORS AMERICA,
TOYOTA MOTOR CORP., TOYOTA
MOTOR SALES, U.S.A., INC.,
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH
AMERICA, INC., FCA US, LLC, and
MITSUBISHI MOTORS NORTH
AMERICA, INC.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1

2

**Table of Contents**

3

**Page**

4   I.      NATURE OF THE ACTION ........................................................................ 2

5   II.     JURISDICTION AND VENUE ................................................................. 11

6   III.    PARTIES ................................................................................................... 11

7           A.     Plaintiffs ........................................................................................ 11

8           B.     ACU Manufacturer Defendants ................................................... 18

9           C.     Vehicle Manufacturer Defendants ............................................... 20

10  IV.     FACTUAL ALLEGATIONS .................................................................... 24

11          A.     The Class Vehicles ....................................................................... 27

12          B.     The ACU Defect ........................................................................... 29

13          C.     Defendants' Knowledge of the ACU Defect and Associated Safety
                   Risks ............................................................................................. 36

14          D.     The Vehicle Manufacturer Defendants Sold Their Vehicles as "Safe"
15                 and "Reliable" .............................................................................. 41

16  V.      TOLLING OF THE STATUTE OF LIMITATIONS ................................. 46

17          A.     Fraudulent Concealment .............................................................. 46

18          B.     Estoppel ........................................................................................ 46

19          C.     Discovery Rule ............................................................................. 47

20  VI.     CLASS ACTION ALLEGATIONS .......................................................... 47

21          A.     The Class ...................................................................................... 47

22          B.     Numerosity .................................................................................... 48

23          C.     Predominance of Common Issues ................................................. 48

24          D.     Typicality ...................................................................................... 50

25          E.     Adequate Representation .............................................................. 50

26          F.     Superiority .................................................................................... 50

27  VII.    CLAIMS FOR RELIEF ............................................................................ 52

28          A.     Nationwide Claims ....................................................................... 53

- i -

|  |  |  |  |
|---|---|---|---|
|  | 1. | Federal Statutory Claim | 53 |
|  | 2. | Common Law Claims | 57 |
| B. | State Statutory Claims | | 63 |
|  | 1. | Alabama | 63 |
|  | 2. | Alaska | 69 |
|  | 3. | Arizona | 76 |
|  | 4. | Arkansas | 86 |
|  | 5. | California | 96 |
|  | 6. | Colorado | 108 |
|  | 7. | Connecticut | 118 |
|  | 8. | Delaware | 129 |
|  | 9. | District of Columbia | 143 |
|  | 10. | Florida | 153 |
|  | 11. | Georgia | 163 |
|  | 12. | Hawaii | 174 |
|  | 13. | Idaho | 185 |
|  | 14. | Illinois | 194 |
|  | 15. | Indiana | 205 |
|  | 16. | Iowa | 212 |
|  | 17. | Kansas | 222 |
|  | 18. | Kentucky | 233 |
|  | 19. | Louisiana | 244 |
|  | 20. | Maine | 250 |
|  | 21. | Maryland | 256 |
|  | 22. | Massachusetts | 267 |
|  | 23. | Michigan | 273 |
|  | 24. | Minnesota | 285 |
|  | 25. | Mississippi | 299 |

26. Missouri .................................................................. 310

27. Montana ................................................................. 320

28. Nebraska ................................................................ 330

29. Nevada ................................................................... 340

30. New Hampshire ...................................................... 350

31. New Jersey ............................................................. 361

32. New Mexico ........................................................... 371

33. New York............................................................... 382

34. North Carolina ....................................................... 392

35. North Dakota ......................................................... 402

36. Ohio ...................................................................... 413

37. Oklahoma.............................................................. 425

38. Oregon .................................................................. 436

39. Pennsylvania.......................................................... 446

40. Rhode Island .......................................................... 456

41. South Carolina ....................................................... 467

42. South Dakota ......................................................... 477

43. Tennessee .............................................................. 487

44. Texas ..................................................................... 499

45. Utah....................................................................... 505

46. Vermont ................................................................. 516

47. Virginia .................................................................. 526

48. Washington ............................................................ 537

49. West Virginia ......................................................... 548

50. Wisconsin .............................................................. 554

51. Wyoming ............................................................... 564

VIII.   PRAYER FOR RELIEF .......................................................... 571

IX.     DEMAND FOR JURY TRIAL................................................... 572

1    William Bell, Billy Blaylock, Jason Janson, Richard Narez, Alejandra
2  Renteria, Remi Rundzio, Maximillian Accetta, Jan Freyman, Maureen Heiner,
3  Jessica Kelly, Fredericka McPherson, Pedro Sepulveda Ramirez, Curtis Resta,
4  Moises Senti, Vania Silva, Gerald Strauss, Ann Marie Gray, Lynn Cox, Tonya
5  Skinner, Cause 4 Paws, Inc., by and through Eric Munson, Ryan Frazier, Bridget
6  Miller, Christy Sullivan, Donna Richards, Tommy Bentley, Alvin Duncan, Kinyata
7  Jones, Tonya McNeely, Charles Williams, Russell Steel, Angela Bowens, Kathy
8  Cleghorn, Brent DeRouen, Evan Green, Felicia Jeffries, Ann Harland, and Nicholas
9  Crouch (collectively, "Plaintiffs"), on behalf of themselves and all others similarly
10  situated, bring this Class Action Complaint against Defendants ZF Friedrichshafen
11  AG ("ZF"), ZF-TRW Automotive Holdings Corp. ("ZF-TRW Automotive
12  Holdings"), TRW Automotive Inc. ("TRW Automotive"), TRW Automotive U.S.
13  LLC ("TRW Automotive U.S."), TRW Vehicle Safety Systems Inc. ("TRW Vehicle
14  Safety Systems"), Honda Motor Co. Ltd. ("Honda Motor"), American Honda Motor
15  Co. Inc. ("American Honda"), Honda of America Mfg. Inc. ("Honda Mfg."), Honda
16  R&D Co., Ltd. ("Honda R&D"), Hyundai Motor Group ("Hyundai Group"),
17  Hyundai Motor Co. ("Hyundai Motor"), Hyundai Motor America ("Hyundai
18  America"), Kia Motors Corp. ("Kia Motors"), Kia Motors America Inc. ("Kia
19  America"), Toyota Motor Corp. ("Toyota Motor"), Toyota Motor Sales, U.S.A., Inc.
20  ("Toyota U.S.A."), Toyota Motor Engineering & Manufacturing North America,
21  Inc. ("TEMA"), FCA US, LLC ("Chrysler"), and Mitsubishi Motors North America,
22  Inc. ("Mitsubishi"), and upon personal knowledge as to Plaintiffs' own conduct, and
23  on information and belief as to all other matters based on an investigation by
24  counsel,[1] allege as follows:

---

[1]   Counsels' investigation includes an analysis of publicly available information, including investigations by the National Highway Traffic Safety Administration ("NHTSA"), vehicle recalls, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

## I.     NATURE OF THE ACTION

1.     Plaintiffs bring this action individually and on behalf of all persons similarly situated in the United States who purchased or leased certain vehicles manufactured, distributed, marketed, and/or sold by Honda Motor, American Honda, Honda Mfg., Honda R&D (collectively, "Honda"); Hyundai Motor Group, Hyundai Motor Co., Hyundai Motor America (collectively, "Hyundai"); Kia Motors Corp., Kia Motors America (collectively, "Kia") (together with Hyundai, "Hyundai/Kia"); Toyota Motor, Toyota U.S.A., TEMA (collectively, "Toyota"); Chrysler; and Mitsubishi (collectively, the "Vehicle Manufacturer Defendants") with defective airbag control units ("ACU" or "ACUs") manufactured by ZF, ZF-TRW Automotive Holdings, TRW Automotive, TRW Automotive U.S., TRW Vehicle Safety Systems, and/or their related subsidiaries, successors, or affiliates ("ZF-TRW" or "ACU Manufacturer Defendants") (collectively, with the Vehicle Manufacturer Defendants, "Defendants"), as described below.

2.     Airbags are a critical safety component in virtually every motor vehicle sold in the United States and throughout the world.  Drivers and passengers reasonably expect that airbags will properly deploy if their vehicles are involved in an accident.  When functioning properly, an airbag can mean the difference between life and death.

3.     Likewise, seatbelt pretensioners are crucial safety features in any motor vehicle and work in tandem with seatbelts.  Seatbelts restrain the strongest parts of an occupant's body, spreading out any force from the collision, helping the occupant's body to slow down, protecting an occupant's brain and spinal cord, and preventing the occupant from striking hard objects in the crash.  A seatbelt's pretensioner is a component of the seatbelt system that locks the seatbelt in place during a crash.  When the vehicle's ACU detects a crash, it sends a signal to the seatbelt pretensioner to initiate a concealed piston that proceeds to drive the spool

that wraps and controls the seatbelt fabric.  This causes a retraction which removes slack from the seatbelt, pulling the vehicle occupant's body firmly into his seat, and milliseconds later, releasing the occupant in a timely manner to receive the maximum protection benefit of the airbag.

4.     ACUs are designed and manufactured to sense a vehicle crash, determine whether airbag deployment is necessary, and deploy appropriate airbags and other supplemental restraints where needed.  The ACU contains an electronic component – an application specific integrated circuit ("ASIC") – which monitors signals from other crash sensors located in the Class Vehicles (defined herein).  If the ASIC fails, the ACU will not operate properly.

5.     The defect is the result of an electrical overstress ("EOS") condition that causes the malfunction of the ASIC in the ACUs manufactured by ZF-TRW ("ACU Defect"), which in turn causes a failure in the ACU that prevents the airbags and the seat belt pretensioners equipped in the Class Vehicles (defined below) from deploying.  According to NHTSA's investigation, the ASIC is designed without sufficient electrical circuitry protection to prevent harmful electrical signals to enter the ACU via sensor.  This results in EOS and a system failure.  The ACU Defect can also result in the ACU's inability to be read with the Event Data Recorder ("EDR"), a device which preserves data in the event of a crash.

6.     The ACU Defect exposes Plaintiffs and Class members to the serious and life-threatening safety risk that their Class Vehicle airbags and seatbelt pretensioners could fail to deploy during an accident, resulting in injury or death.

7.     Because of this common, uniform ACU Defect, ZF-TRW ACUs often fail to perform as they should.  Instead of deploying safety devices such as airbags and seatbelt pretensioners that protect vehicle occupants from bodily injury during accidents, the defective ZF-TRW ACUs too often fail to send a signal to deploy airbags and engage seatbelt pretensioners, causing occupants to suffer serious bodily

injury and death.  As of April 2019, ZF-TRW's defective ACUs have been responsible for at least four deaths and six serious injuries, worldwide.

8.     Automakers that purchased ZF-TRW's defective ACUs were involved in their design and testing and knew or should have known of the ACUs' common, uniform design defect.

9.     Apart from the notice and warnings received through their interactions with ZF-TRW, internal review, design approval, and testing, the Vehicle Manufacturer Defendants gained knowledge of the ACU Defect through various customer complaints and incidents of non-deployment.

10.     For example, as early as August 2011, ZF-TRW and Hyundai/Kia had knowledge that there was a defect in the ACUs that could cause airbags not to deploy in the event of a collision.  Specifically, ZF-TRW analyzed the ACU from a Kia Forte in China – in which the airbag did not properly deploy – and observed damage to the ASIC that was consistent with EOS.[2]  Thereafter, in March 2012, ZF-TRW analyzed another Kia Forte in which the airbags did not properly deploy and again observed that EOS negatively affected the functioning of the ASIC in the ACU.[3]  ZF-TRW and Hyundai/Kia communicated about these ACU malfunctions and related investigations in 2011 and 2012.

11.     From 2015 through 2018, ZF-TRW and Hyundai/Kia continued to investigate the ACU Defect, inspect additional vehicles in which airbags failed to deploy, and communicate regarding the results of their findings related to the ACU Defect.[4]

12.     The Vehicle Manufacturer Defendants also had knowledge that ZF-TRW's ACUs were experiencing the same problems in other automakers' or original

---

[2]   *See* Exhibit A, TRW Automotive Inc. (ZF) Chronology.

[3]   *See id.*

[4]   *See id.*

equipment manufacturers' ("OEM") vehicles.  Indeed, no later than January 2016, ZF-TRW reached out to the Vehicle Manufacturer Defendants regarding the nature of the ACU Defect.

13.     Chrysler then issued a public recall of the defective ACUs in the United States in September 2016, putting all OEMs, including the Vehicle Manufacturer Defendants, on further notice of the defect.

14.     Numerous personal injury and wrongful death lawsuits also have been filed against ZF-TRW and/or the Vehicle Manufacturer Defendants alleging that airbags failed to deploy in accidents as a result of the ACU Defect – providing ZF-TRW and the Vehicle Manufacturer Defendants with knowledge of the ACU Defect. Despite knowledge of the ACU Defect, ZF-TRW has continued to manufacture and sell the defective ACUs, resulting numerous injuries and deaths.  In addition, the Vehicle Manufacturer Defendants have continued to equip the Class Vehicles with airbag systems containing the ACU Defect and sell and lease the Class Vehicles, without disclosing the ACU Defect and its corresponding safety risks, to Plaintiffs and Class members.

15.     In March 2018, NHTSA's Office of Defects Investigation ("NHTSA ODI") opened a preliminary evaluation ("PE") investigation into the ACU Defect based on six frontal crashes, reported via Early Warning Reporting between 2012 and 2017, where airbags did not deploy.[5]  These crashes resulted in six injuries and four deaths.

16.     While the PE investigation focused on certain Hyundai and Kia vehicles containing the ACU Defect, NHTSA ODI identified ZF-TRW as the supplier of the defective ACUs, putting the Vehicle Manufacturer Defendants on notice of the ACU

---

[5]   Exhibit B, NHTSA, ODI Resume, Investigation PE 18-003, Mar. 16, 2018, https://static.nhtsa.gov/odi/inv/2018/INOA-PE18003-9810.PDF.

1   Defect.  NHTSA ODI described the ACU Defect as follows: "[f]ailure of the air bag

2   control unit may prevent the frontal air bags from deploying in the event of a crash."[6]

3   17.   As explained by NHTSA ODI, in February 2018, Hyundai reported that

4   "post-collision inspections of the air bag control units (ACUs) showing that an

5   electrical overstress condition (EOS) of an ACU electronic component occurred in

6   three of the crashes, and that the fourth ACU is under evaluation for the same

7   concern."[7] Hyundai further reported that it had "not identified a remedy for this recall,

8   and state[d] that the cause of the EOS is being investigated with the ACU supplier,

9   ZF-TRW."[8]

10   18.   Thereafter, on April 19, 2019, NHTSA ODI upgraded its PE

11   investigation into the ACU Defect to an Engineering Analysis and expanded the

12   investigation to include ZF-TRW and the Vehicle Manufacturer Defendants, as well

13   as certain other car manufacturers.[9]  According to NHTSA, ZF-TRW supplied the

14   defective ACUs to Defendants Kia, Chrysler, Mitsubishi, Hyundai, Honda and

15   Toyota.[10]  NHTSA ODI estimates that 12.3 million vehicles contain the ACU Defect.

16   19.   Plaintiffs and members of the Class (defined below) assert claims

17   against Defendants for violations of the Magnuson-Moss Warranty Act ("MMWA"),

18   15 U.S.C. §2301 *et seq.*, fraudulent concealment, breach of express and implied

19   warranties, unjust enrichment, and violations of state consumer fraud/unfair trade

20   practices laws.

21

22

---

23   [6]   *Id.*

24   [7]   *Id.*

25   [8]   *Id.*

26   [9]   Exhibit C, NHTSA, ODI Resume, Investigation EA 19-001, Apr. 19, 2019,
27   https://static.nhtsa.gov/odi/inv/2019/INOA-EA19001-2536.PDF.

28   [10]   *See id.*

20.     No reasonable consumer expects to purchase or lease a Class Vehicle containing a concealed ACU Defect with an inherent safety risk that an airbag or seatbelt pretensioner will not deploy when necessary during an accident.  The ACU Defect is material to Plaintiffs and members of the Class because when they purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from defects and contain an ACU and airbag system that properly functioned.  Had Defendants disclosed the ACU Defect, Plaintiffs and members of the Class would not have purchased or leased the Class Vehicles, or would have paid less for their Class Vehicles.

21.     Indeed, Defendants knowingly, actively, and affirmatively omitted and/or concealed the existence of the ACU Defect from Plaintiffs and members of the Class.  Knowledge and information regarding the ACU Defect and the associated safety risk was in the exclusive and superior possession of Defendants, and was not disclosed to Plaintiffs and members of the Class, who could not reasonably discover the defect through due diligence.  Based on, *inter alia*, pre-production testing, design failure mode analysis, wrongful death and personal injury lawsuits, post-collision inspections, vehicle owner questionnaires, and NHTSA investigations, Defendants knew of the ACU Defect but did nothing to protect consumers or warn of the product dangers and, in fact, fraudulently concealed the defect from Plaintiffs and members of the Class.

22.     Notwithstanding this knowledge, ZF-TRW continued selling defective ACUs and the Vehicle Manufacturer Defendants continued selling Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants failed to disclose the existence of the ACU Defect to Plaintiffs and members of the Class and have not remedied the ACU Defect and/or compensated Plaintiffs or members of the Class for this material defect.  In addition, the Vehicle Manufacturer Defendants have not issued recalls for the Class Vehicles containing the ACU Defect.

23.     Instead, Defendants have, and continue to, market and emphasize the safety of their products.  ZF-TRW proclaims that it "has the most comprehensive safety technology portfolio in the supplier industry" and boasts of its "strategic goal of helping to create a mobile world with zero accidents."  ZF-TRW's stated "strategic focus" is on "Next Generation Mobility [which] has manifested itself in a variety of market-ready innovations that are viable for the future."

24.     ZF-TRW's marketing emphasizes its corporate devotion to safety: "Under the banner 'Next Generation Mobility', ZF-TRW is leveraging the current industry transformation as a strategic opportunity.  The core aspects of this are four clearly demarcated fields of activity on which the Group is focused: vehicle motion control, integrated safety, automated driving and electric mobility."

25.     Describing its safety philosophy, ZF-TRW states: "One day, autonomous driving and intelligent traffic routing will make accidents a thing of the past. Until that time, occupant safety is critical, though."  ZF-TRW "is pursuing the goal of clean and safe mobility that is automated, comfortable, affordable and accessible to everyone, everywhere."

26.     Honda proclaims on its website: "[n]ot all vehicle safety technology serves the same purpose.  That's why Honda employs two different methods to help make our vehicles even safer."[11]   Regarding passive safety, one of Honda's two purported methods to make its vehicles safer, Honda explains that: "Passive Safety systems are those you hope you'll never need, but are critical to your safety in the event of a collision."[12]   Honda emphasizes on its website that all Honda vehicles come standard with front seat belts with pretensioners and load limiters, which (after detection of a strong frontal impact) "instantly retract, then give slightly if the load

---

[11]  HONDA, *The Two Sides of Safety*, https://automobiles.honda.com/safety (last visited May 3, 2019).

[12]  *Id.*

on the seat belt exceeds a certain amount, reducing the pressure it applies to the occupant's chest."[13]   Honda elaborates that "[e]very Honda is equipped with advanced front airbags to help protect you in the event of a collision."[14]

27.   Similarly, Toyota's online marketing underscores that "[f]or years, the Toyota Camry has been the go-to car for safety . . . ."[15]  Indeed, in December 2016, Dino Triantafyllos, Toyota's North American Chief Quality Officer, touted that "[a]t Toyota, our focus remains on the safety and peace of mind of our customers . . . [w]e are proud that our commitment to developing safe and reliable vehicles resulted in such a strong showing in 2017 . . . "[16]

28.   Chrysler also touts the safety of its vehicles in marketing its various makes and models.  For example, online marketing for the 2019 Jeep Compass states: "The 2019 Compass builds on the Jeep Brand tradition of safety and security. Equipped with over 70 standard and available safety and security features, it provides peace of mind wherever the road takes you."[17]

29.   Hyundai similarly purports to embrace safety as part-and-parcel of its corporate philosophy: "always striving to make our safety features more advanced and innovative."[18]  Hyundai claims that its "vehicles completely surround you and

---

[13]  *Id.*

[14]  *Id.*

[15]  NORM REEVES TOYOTA SAN DIEGO, *Safety Features: 2019 Toyota Camry Safety Features*,    https://www.normreevestoyotasandiego.com/safety-feature/toyota-camry-safety-features-san-diego-ca/ (last visited May 3, 2019).

[16]  *Toyota Continues to Lead the Industry with the Most IIHS TOP SAFETY PICK+*, TOYOTA.COM,    (July    6,    2017)    Awards https://pressroom.toyota.com/releases/toyota+continues+lead+industry+most+iihs+top+safety+pick+awards.htm.

[17]  *2019   Jeep   Compas   Safety   &   Security*, JEEP.COM, https://www.jeep.com/compass/safety-security.html (last visited May 17, 2019).

[18]  *Why   Hyundai*, HYUNDAIUSA.COM,   https://www.hyundaiusa.com/why-hyundai/safety.aspx (last visited May 17, 2019)

1  your passengers with a wide range of features that automatically look out for you."[19]

2  Hyundai touts the quality and workmanship of their vehicles: "Quality and

3  workmanship are in everything we do.  Because at Hyundai, everything matters."[20]

4       30.    Kia represents that "[a]t Kia, we work tirelessly to ensure that every

5  passive safety system on our vehicle is designed to help you handle the unexpected.

6  And that every active safety system is designed to help you avoid trouble whenever

7  possible."[21]  Indeed, Kia indicates that "[b]uilt with your safety as our top priority,

8  Kia's vehicle lineup has collected numerous top safety awards."[22]  On its websites,

9  Kia states that that its ACU "system monitors the severity of the impact, the presence

10  of a front passenger, and seat-belt use, and then controls airbag inflation accordingly

11  whenever possible."[23]

12       31.    Similarly, Mitsubishi claims that "[w]ith every passing year few brands

13  have added and expanded their safety features as much as Mitsubishi Motors."[24]  In

14  its online advertising, Mitsubishi states: "When you get into the car, you are worried

15  about where you are going and what time you need to be there, not safety.  It is our

16  job to worry about safety, so that you don't have to.  Mitsubishi safety technology is

17  top-of-the-line so that we give you peace of mind when you are behind the wheel."[25]

18

19  [19] *Why Hyundai, Safety*, HYUNDAIUSA.COM, https://www.hyundaiusa.com/why-hyundai/smartsense.aspx (last visited May 17, 2019)

20  [20] *Why Hyundai, Quality & Workmanship*, HYUNDAIUSA.COM

21  https://www.hyundaiusa.com/why-hyundai/quality.aspx (last visited May 17, 2019)

22  [21] *Kia Safety*, BRIGGSKIA.COM, https://www.briggskia.com/kia-safety.htm (last visited May 17, 2019)

23  [22] *Id.*

24  [23] *Id.*

25  [24] *Mitsubishi's Advanced Safety Features*, MIAMILAKESAUTOMALL.COM (Mar. 23,
26  2018) http://www.miamilakesautomall.com/mitsubishi-blog/mitsubishi-safety-features/

27  [25] *Mistubishi Safety Features*, PANTILIMITSUBISHI.COM
28  https://pantilimitsubishi.com/Mitsubishi-Safety-Features (last visited May 17, 2019)

32.     As a direct result of Defendants' conduct, Plaintiffs and members of the Class have been harmed and are entitled to actual damages, including damages for diagnosis, repair and/or replacement costs, damages for the diminished value of their vehicles, compensatory, statutory, and punitive damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## II.     JURISDICTION AND VENUE

33.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are a citizens.

34.     This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. §1367 and jurisdiction over the MMWA claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

35.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.

36.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because numerous Vehicle Manufacturer Defendants have their headquarters within this District, Defendants conduct substantial business in this District and have caused harm to Class members residing in this District.  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

## III.     PARTIES

### A.     Plaintiffs

37.     Plaintiff William Bell (in this paragraph, "Plaintiff") is a citizen of the State of California and resides in Desert Hot Springs, California.  In 2018, Plaintiff

purchased a used 2018 Jeep Wrangler in Huntington Beach, California (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

38.     Plaintiff Billy Blaylock (in this paragraph, "Plaintiff") is a citizen of the State of California and resides in Spring Valley, California. In 2016, Plaintiff purchased a new 2017 Toyota Corolla in San Diego, California (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

39.     Plaintiff Jason Janson (in this paragraph, "Plaintiff") is a citizen of the State of California and resides in Gilroy, California. In 2019, Plaintiff purchased a new 2018 Jeep Wrangler in Gilroy, California (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

40.     Plaintiff Richard Narez (in this paragraph, "Plaintiff") is a citizen of the State of California and resides in Visalia, California. In 2018, Plaintiff purchased a new 2019 Toyota Tacoma in Salinas, California (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

41.     Plaintiff Alejandra Renteria (in this paragraph, "Plaintiff") is a citizen of the State of California and resides in San Bernardino, California. In 2013, Plaintiff purchased a new 2013 Toyota Corolla Matrix in Ontario, California (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

42.     Plaintiff Remi Rundzio (in this paragraph, "Plaintiff") is a citizen of the State of California and resides in Westminster, California. In 2012, Plaintiff purchased a new 2012 Jeep Wrangler in Huntington Beach, California (in this

1  paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's
2  Class Vehicle is equipped with an airbag system containing the ACU Defect.

3       43.    Plaintiff Maximillian Accetta (in this paragraph, "Plaintiff") is a citizen
4  of the State of Florida and resides in Fort Lauderdale, Florida.  In 2015, Plaintiff
5  purchased a used 2015 Jeep Compass in Lake Worth, Florida (in this paragraph,
6  "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class
7  Vehicle is equipped with an airbag system containing the ACU Defect.

8       44.    Plaintiff Jan Freyman (in this paragraph, "Plaintiff") is a citizen of the
9  State of Florida and resides in Lake Mary, Florida.  In 2017, Plaintiff purchased a
10 new 2017 Jeep Patriot in Sanford, Florida (in this paragraph, "Class Vehicle"), for
11 personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with
12 an airbag system containing the ACU Defect.

13      45.    Plaintiff Maureen Heiner (in this paragraph, "Plaintiff") is a citizen of
14 the State of Florida and resides in Weeki Wachee, Florida.  In 2016, Plaintiff
15 purchased a new 2013 Kia Optima in Crystal River, Florida (in this paragraph, "Class
16 Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is
17 equipped with an airbag system containing the ACU Defect.

18      46.    Plaintiff Jessica Kelly (in this paragraph, "Plaintiff") is a citizen of the
19 State of Florida and resides in Lauderhill, Florida.  In 2015, Plaintiff purchased a new
20 2015 Toyota Corolla in Weston, Florida (in this paragraph, "Class Vehicle"), for
21 personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with
22 an airbag system containing the ACU Defect.

23      47.    Plaintiff Fredericka McPherson (in this paragraph, "Plaintiff") is a
24 citizen of the State of Florida and resides in Riverview, Florida.  In 2015, Plaintiff
25 purchased a used 2013 Honda Accord in Tampa, Florida (in this paragraph, "Class
26 Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is
27 equipped with an airbag system containing the ACU Defect.

28

48.     Plaintiff Pedro Sepulveda Ramirez (in this paragraph, "Plaintiff") is a citizen of the State of Florida and resides in Princeton, Florida.  In 2018, Plaintiff leased a new 2018 Kia Optima in Doral, Florida (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

49.     Plaintiff Curtis Resta (in this paragraph, "Plaintiff") is a citizen of the State of Florida and resides in Winter Haven, Florida.  In 2018, Plaintiff leased a new 2018 Toyota Tacoma in Lakeland, Florida (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

50.     Plaintiff Moises Senti (in this paragraph, "Plaintiff") is a citizen of the State of Florida and resides in Ocala, Florida.  In 2016, Plaintiff purchased a new 2016 Jeep Wrangler in Miami, Florida (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

51.     Plaintiff Vania Silva (in this paragraph, "Plaintiff") is a citizen of the State of Florida and resides in Boca Raton, Florida.  In 2017, Plaintiff purchased a new 2017 Hyundai Sonata in Coconut Creek, Florida (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

52.     Plaintiff Gerald Strauss (in this paragraph, "Plaintiff") is a citizen of the State of Florida and resides in Tamarac, Florida.  In 2018, Plaintiff leased a new 2018 Hyundai Sonata Hybrid (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

53.     Plaintiff Ann Marie Gray (in this paragraph, "Plaintiff") is a citizen of the State of Georgia and resides in Conyers, Georgia.  In 2016, Plaintiff purchased a

used 2014 Mitsubishi Lancer in Lumberton, North Carolina (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

54. Plaintiff Lynn Cox (in this paragraph, "Plaintiff") is a citizen of the State of Illinois and resides in Chicago, Illinois. In 2013, Plaintiff purchased a new 2013 Jeep Compass in Gurnee, Illinois (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

55. Plaintiff Tonya Skinner (in this paragraph, "Plaintiff") is a citizen of the State of Indiana and resides in Middlebury, Indiana. In 2017, Plaintiff purchased a new 2016 Toyota Corolla in Elkhart, Indiana (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

56. Plaintiff Cause 4 Paws, Inc., by and through Eric Munson, (in this paragraph, "Plaintiff") is a citizen of the State of Indiana and resides in Bedford, Indiana. In 2016, Plaintiff purchased a used 2010 Dodge Nitro in Bedford, Indiana (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

57. Plaintiff Ryan Frazier (in this paragraph, "Plaintiff") is a citizen of the State of Kentucky and resides in Richmond, Kentucky. In 2018, Plaintiff purchased a used 2015 Toyota Tundra in Richmond, Kentucky (in this paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

58. Plaintiff Bridget Miller (in this paragraph, "Plaintiff") is a citizen of the State of Kentucky and resides in Owensboro, Kentucky. In 2018, Plaintiff purchased a used 2016 Toyota Corolla in Taylorsville, Indiana (in this paragraph, "Class

Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

59.    Plaintiff Christy Sullivan (in this paragraph, "Plaintiff") is a citizen of the State of Kentucky and resides in Independence, Kentucky.  In 2014, Plaintiff purchased a new 2014 Hyundai Sonata Alexandria, Kentucky (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

60.    Plaintiff Donna Richards (in this paragraph, "Plaintiff") is a citizen of the State of Maryland and resides in Bowie, Maryland.  In 2017, Plaintiff purchased a used 2014 Kia Optima in Brandywine, Maryland (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

61.    Tommy Bentley (in this paragraph, "Plaintiff") is a citizen of the State of Michigan and resides in Dexter, Michigan.  In 2015, Plaintiff purchased a used 2013 Dodge Avenger in Chelsea, Michigan (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

62.    Plaintiff Alvin Duncan (in this paragraph, "Plaintiff") is a citizen of the State of Michigan and resides in Fenton, Michigan.  In 2017, Plaintiff leased a new 2017 Jeep Wrangler in Fenton, Michigan (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

63.    Plaintiff Kinyata Jones (in this paragraph, "Plaintiff") is a citizen of the State of Michigan and resides in Saint Joseph, Michigan.  In 2015, Plaintiff purchased a used 2013 Kia Optima in Benton Harbor, Michigan (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

64.     Plaintiff Tonya McNeely (in this paragraph, "Plaintiff") is a citizen of the State of North Carolina and resides in Mooresville, North Carolina.  In 2015, Plaintiff purchased a used 2012 Honda Civic in Concord, North Carolina.  This vehicle was purchased for personal, family and household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

65.     Plaintiff Charles Williams (in this paragraph, "Plaintiff") is a citizen of the State of Oklahoma and resides in Tulsa, Oklahoma.  In 2017, Plaintiff purchased a used 2011 Toyota Corolla in Bixby, Oklahoma (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

66.     Plaintiff Russell Steel (in this paragraph, "Plaintiff") is a citizen of the State of Tennessee and resides in Cookeville, Tennessee.  In 2009, Plaintiff purchased a new 2009 Dodge Ram 1500 in Cookeville, Tennessee (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

67.     Plaintiff Angela Bowens (in this paragraph, "Plaintiff") is a citizen of the State of Texas and resides in Dallas, Texas.  In 2015, Plaintiff purchased a new 2015 Honda Civic in Dallas, Texas (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

68.     Plaintiff Kathy Cleghorn (in this paragraph, "Plaintiff") is a citizen of the State of Texas and resides in Fort Worth, Texas.  In 2011, Plaintiff purchased a used 2010 Chrysler Sebring in Fort Worth, Texas (in this paragraph, "Class Vehicle"), for personal, family, or household purposes.  Plaintiff's Class Vehicle is equipped with an airbag system containing the ACU Defect.

69.     Plaintiff Brent DeRouen (in this paragraph, "Plaintiff") is a citizen of the State of Texas and resides in Spring, Texas.  In 2016, Plaintiff purchased a new

1   2016 Toyota Tundra in Nederland, Texas (in this paragraph, "Class Vehicle"), for
2   personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with
3   an airbag system containing the ACU Defect.

4        70.    Plaintiff Evan Green (in this paragraph, "Plaintiff") is a citizen of the
5   State of Texas and resides in Dallas, Texas. In 2015, Plaintiff purchased a used 2015
6   Toyota Tacoma in Dallas, Texas (in this paragraph, "Class Vehicle"), for personal,
7   family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag
8   system containing the ACU Defect.

9        71.    Plaintiff Felicia Jeffries (in this paragraph, "Plaintiff") is a citizen of the
10  State of Texas and resides in Fort Worth, Texas. In 2016, Plaintiff leased a new 2016
11  Toyota Corolla in Dallas, Texas (in this paragraph, "Class Vehicle"), for personal,
12  family, or household purposes. Plaintiff's Class Vehicle is equipped with an airbag
13  system containing the ACU Defect.

14       72.    Plaintiff Ann Harland (in this paragraph, "Plaintiff") is a citizen of the
15  State of Virginia and resides in Dunnsville, Virginia. In 2015, Plaintiff purchased a
16  used 2013 Fiat 500 in Gloucester, Virginia (in this paragraph, "Class Vehicle"), for
17  personal, family, or household purposes. Plaintiff's Class Vehicle is equipped with
18  an airbag system containing the ACU Defect.

19       73.    Plaintiff Nicholas Crouch (in this paragraph, "Plaintiff") is a citizen of
20  the State of West Virginia and resides in Charles Town, West Virginia. In 2014,
21  Plaintiff purchased a new 2015 Hyundai Sonata in Gaithersburg, Maryland (in this
22  paragraph, "Class Vehicle"), for personal, family, or household purposes. Plaintiff's
23  Class Vehicle is equipped with an airbag system containing the ACU Defect.

24      **B.**    **ACU Manufacturer Defendants**

25       74.    Defendant ZF Friedrichshafen AG is a German car parts maker
26  headquartered in Friedrichshafen, in the south-west German region of Baden-
27  Württemberg. ZF is a worldwide supplier of driveline and chassis technology for

28

cars and commercial vehicles, including active and passive safety technology. ZF, either directly or through its wholly-owned subsidiaries, manufactures ACUs for distribution in the United States and ultimate use in the State of California, including the ACUs at issue in this litigation. ZF delivers its products, including the ACUs at issue in this litigation, into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

75.    Defendant ZF-TRW Automotive Holdings Corp. is a subsidiary of ZF and a Delaware corporation, with its corporate headquarters located in Livonia, Michigan. ZF-TRW Automotive Holdings is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Vehicle Manufacturer Defendants. ZF-TRW Automotive Holdings sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs in this litigation. ZF-TRW Automotive Holdings delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

76.    TRW Automotive Inc. is a subsidiary of ZF with its principal place of business in Livonia, Michigan. TRW Automotive is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Vehicle Manufacturer Defendants. TRW Automotive sells, designs, manufactures, tests, markets, and distributes ACUs in the United States. TRW Automotive manufactures ACUs in the United States, including ACUs at issue in this litigation. TRW Automotive delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

77.    TRW Automotive U.S. LLC is a subsidiary of TRW Automotive with its principal place of business in Livonia, Michigan. TRW Automotive U.S. is an American supplier of automotive systems, modules, and components to automotive

OEMs, including the Vehicle Manufacturer Defendants.  TRW Automotive U.S. sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation.  TRW Automotive U.S. delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

78.   TRW Vehicle Safety Systems Inc. is a subsidiary of ZF-TRW Automotive Holdings with its principal place of business in Farmington Hills, Michigan.  TRW Vehicle Safety Systems is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Vehicle Manufacturer Defendants.   TRW Vehicle Safety Systems sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation.  TRW Vehicle Safety Systems delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

79.   Defendants ZF, ZF-TRW Automotive Holdings, TRW Automotive, TRW Automotive U.S., and TRW Vehicle Safety Systems are collectively referred to as "ZF-TRW" or "ACU Manufacturer Defendants."  At all times relevant to this action, the ACU Manufacturer Defendants and/or their agents manufactured, distributed, sold, and warranted airbag systems containing the ACU Defect, as described herein, throughout the United States.

80.   On information and belief, at all times relevant to this action, the ACU Manufacturer Defendants made decisions related to design, manufacturing, marketing, sales, warranties, and recalls of the airbag systems containing the ACU Defect from ZF-TRW Automotive Holdings' Livonia, Michigan headquarters.

## C.   Vehicle Manufacturer Defendants

81.   Defendant Honda Motor Co., Ltd. is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Honda Motor manufactures and

sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

82.    Defendant American Honda Motor Co. Inc. is a subsidiary of Honda Motor headquartered in Torrance, California.  American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, sport utility vehicles, and automobile parts in the United States.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in: Greensburg, Indiana; East Liberty, Ohio; Lincoln, Alabama; and Marysville, Ohio.

83.    Defendant Honda of America Mfg. Inc. is an Ohio corporation with its principal place of business in Marysville, Ohio.  Honda Mfg. is a subsidiary of Honda Motor.  Honda Mfg. is involved in the design, manufacture, testing, marketing, distribution, and sale of Honda vehicles in the United States, including those utilizing the defective ACUs.

84.    Defendant Honda R&D Co., Ltd. is a Japanese corporation with its principal place of business in Wako, Japan.  Honda R&D is a subsidiary of Honda Motor.  Honda R&D is involved in the design, development, manufacture, assembly, testing, distribution, and sale of Honda vehicles, including those utilizing the defective ACUs.

85.    Defendants Honda Motor, Honda Mfg., Honda R&D, and American Honda are collectively referred to as "Honda".  Honda vehicles sold in the United States contain defective ACUs manufactured by ZF-TRW.  Honda delivers these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

86.    Defendant Hyundai Motor Group is a foreign for-profit corporation with its principal place of business in Seoul, South Korea.  Hyundai Group manufacturers automobiles, steel, and automotive parts.

87. Defendant Hyundai Motor Company is a subsidiary of Hyundai Group and is headquartered in Seoul, South Korea. Hyundai Motor manufactures and sells automobiles through independent retail dealers, outlets, and authorized dealerships primarily in North America, South America, Asia, Europe, Africa, and Oceania.

88. Defendant Hyundai Motor America is a subsidiary of Hyundai Motor headquartered in Fountain Valley, California. Hyundai America conducts the sale, marketing, and operational activities for Hyundai cars, trucks, sport utility vehicles, and automobile parts in the United States. Hyundai America manufactures and assembles its vehicles for sale in the United States in an automobile plant located in Montgomery, Alabama.

89. Defendant Kia Motors Corporation is a subsidiary of Hyundai Motor and is headquartered in Seoul, South Korea. Kia Motors manufactures and sells automobiles through independent retail dealers, outlets, and authorized dealerships primarily in America, Europe, Mexico, and India.

90. Defendant Kia Motors America, Inc. is a subsidiary of Kia Motors headquartered in Irvine, California. Kia America conducts the sale, marketing, and operational activities for Hyundai cars, trucks, sport utility vehicles, and automobile parts in the United States. Kia America manufactures and assembles its vehicles for sale in the United States in an automobile plant located in West Point, Georgia.

91. As used in this Complaint, "Kia" refers to Kia Motors and Kia America. "Hyundai" refers to Hyundai Group, Hyundai Motor, Hyundai America, Kia Motors, and Kia America. Hyundai vehicles sold in the United States contain defective ACUs manufactured by ZF-TRW. Hyundai delivers these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States, including the State of California.

92. Hyundai engineered, designed, developed, manufactured, or installed the defective ACUs in the Hyundai and Kia branded Class Vehicles, and approved

the defective ACUs for use in those vehicles.  They also developed, reviewed, and approved the marketing and advertising campaigns designed to sell those Class Vehicles.

93.     Defendant Toyota Motor Corporation is the world's largest automaker and the largest seller of automobiles in the United States.  Toyota is a Japanese corporation headquartered in Toyota City, Aichi Prefecture, Japan.

94.     Defendant Toyota Motor Sales, U.S.A., Inc. is a wholly owned subsidiary of Toyota Motor Corporation and is responsible for the marketing, sales, and distribution in the United States of automobiles manufactured by Toyota.  Toyota U.S.A. is headquartered in Torrance, California and is a subsidiary of Toyota.

95.     Defendant Toyota Motor Engineering & Manufacturing North America, Inc. is headquartered in Plano, Texas, with major operations in Arizona, California, and Michigan.   TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the United States, Mexico, and Canada.  TEMA is a subsidiary of Toyota.

96.     Defendants Toyota Motor, Toyota U.S.A., and TEMA are collectively referred to as "Toyota."  Toyota vehicles sold in the United States contain defective ACUs manufactured by ZF-TRW.  Toyota delivers these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of California.

97.     Defendant FCA US, LLC is one of the "Big Three" automobile manufacturers in the United States, headquartered in Auburn Hills, Michigan.  In January 2014, Chrysler Group LLC renamed itself FCA US, LLC to better align with its global parent, Fiat Chrysler Automobiles NV.  Chrysler designs, manufactures, and sells or distributes vehicles under the Chrysler, Dodge, Jeep, Ram, FIAT and Alfa Romeo brands, as well as the SRT performance designation.  Chrysler designs, engineers, manufactures, and sells vehicles and related parts, services, and production

1   systems worldwide.  Chrysler is a member of the Fiat Chrysler Automobiles N.V.

2   family of companies.

3        98.    Defendant Mitsubishi Motors North America, Inc. imports, exports, and

4   re-exports products assembled or manufactured in the United States and abroad.  Its

5   administrative headquarters and research and developments office are in Cypress,

6   California.  Mitsubishi's parent company, Mitsubishi Motors Corporation ("MMC"),

7   is a multinational manufacturer and distributor of automobiles, parts, and

8   powertrains.  MMC is a publicly traded company based in Tokyo, Japan.

9        99.    Honda, Hyundai, Kia, Toyota, Chrysler, and Mitsubishi are referred to

10   herein as the "Vehicle Manufacturer Defendants."  At all times relevant to this action,

11   the Vehicle Manufacturer Defendants and/or their agents manufactured, distributed,

12   sold, leased, and warranted the Class Vehicles throughout the United States.

13   **IV.    FACTUAL ALLEGATIONS**

14        100.   Although invented in the early 1950s, airbags were not installed on

15   manufactured automobiles until the 1970s and were slow to grow in popularity,

16   being featured initially on high-end luxury cars; consumers harbored concerns about

17   unintended deployment and injury to occupants, particularly children.  Airbags only

18   became commonplace after the federal government required passive restraints

19   (which included automatic seatbelts and airbags) in cars manufactured after April

20   1, 1989, and subsequently required dual front airbags in all cars and light trucks

21   manufactured after September 1, 1998.

22        101.   Modern vehicles are equipped with impact sensors located in the

23   bumpers of the vehicle, supplemented by side-impact sensors, accelerometers,

24   motion detectors, and other devices, the configuration or combination of which

25   depends on the sophistication of the safety system.  All the sensors and instruments

26   are connected to an ACU, which is a type of computer.

27

28

 

102. Each airbag unit consists of a control unit, an inflator, which is usually a metal canister containing a chemical explosive, and the airbag itself.

103. When the sensors detect an impact sufficiently severe to warrant deployment of the airbag system, the ACU calculates the force of the collision, the angle of impact, and the number and size of occupants, among other determinants, and triggers deployment of the airbag or airbags appropriate to protect the occupants, along with seatbelt pretensioners and/or other passenger-safety devices.



104. The airbag units are located in the hub of the steering wheel, side pillar, door, dashboard, and/or elsewhere.



105.   When the ACU signals an airbag to deploy, the ACU triggers the inflator.   An element within the inflator heats and triggers the explosive, and the exploding gas rapidly inflates the airbag.   The inflator is designed to disassemble in a controlled fashion, so that no metal parts or pieces are propelled by the explosion.



106.   Of necessity, the above-described process takes place almost instantaneously; the ACU's triggering calculations take approximately 15 to 30 milliseconds after impact, and the airbag inflates within 20 to 30 milliseconds of the ACU signaling deployment.   Thus, the airbag inflates before the vehicle occupant has moved significantly as a result of the impact.



## A.    The Class Vehicles

107.   The affected airbag systems containing the ACU Defect include those manufactured by ZF-TRW and subject to investigation by NHTSA ODI.   These airbag systems contain ACUs that suffer from EOS resulting in failure of airbags and seatbelt pretensioners to deploy when Class Vehicles suffer an impact.  As a result of the ACU Defect, the airbag systems pose unreasonably dangerous safety risks to Plaintiffs and members of the Class, including the risk of injury and death.

108.   As used in this Complaint, the "Class Vehicles" refer to vehicles sold in the United States, equipped at the time of sale with ZF-TRW airbags containing the ACU Defect, including the following makes and model years:

- Acura RLX 2014-2019
- Acura RLX Hybrid 2014-2019
- Acura TL 2012-2014
- Acura TLX 2015-2017
- Acura TSX 2012-2014
- Acura TSX Sport Wagon 2014
- Acura TSX Sportswagon 2012-2013
- Chrysler Sebring 2010
- Dodge Nitro 2010-2011
- Dodge Avenger 2013-2019
- Dodge Ram 1500 2009-2012

1

- Dodge Ram 2500 2010-2012

2

- Dodge Ram 3500 2010-2012

3

- Dodge Ram 4500 2011-2012

4

5

- Dodge Ram 5500 2011-2012

6

- Fiat 500 2012-2019

7

- Honda Accord 2013-2015

8

- Honda Accord Hybrid 2014-2015

9

- Honda Civic 2012-2015

10

- Honda Civic GX 2012-2015

11

- Honda Civic Hybrid 2012-2015

12

- Honda Civic SI 2012-2015

13

- Honda CR-V 2012-2016

14

- Honda Fit 2012-2017

15

- Honda Fit EV 2013-2014

16

- Honda Ridgeline 2012-2014

17

- Hyundai Sonata 2013-2019

18

- Hyundai Sonata Hybrid 2013-2019

19

- Jeep Compass 2010-2017

20

- Jeep Liberty 2010-2012

21

- Jeep Patriot 2015-2017

22

- Jeep Wrangler 2010-2018

23

- Kia Forte 2013

24

- Kia Forte KOUP 2013

25

- Kia Optima 2013-2019

26

- Kia Optima Hybrid 2012-2016

27

- Kia Sedona 2014

28

- Mitsubishi Lancer 2013-2017

- Mitsubishi Lancer Evolution 2013-2015
- Mitsubishi Lancer Ralliart 2014-2015
- Mitsubishi Lancer Sportback 2013-2016
- Mitsubishi Outlander 2013
- Toyota Avalon 2012-2018
- Toyota Avalon Hybrid 2013-2018
- Toyota Corolla 2011-2019
- Toyota Corolla IM 2017-2018
- Toyota Corolla Matrix 2011-2013
- Toyota Sequoia 2012-2017
- Toyota Tacoma 2012-2019
- Toyota Tundra 2012-2017

109.  ZF-TRW supplied the Vehicle Manufacturer Defendants with the defective ACUs and the Vehicle Manufacturer Defendants equipped the Class Vehicles with airbag systems containing the ACU Defect, which Defendants did not disclose to Plaintiffs or Class members.

110.  Despite their knowledge of the ACU Defect and corresponding safety risks, the Vehicle Manufacturer Defendants have not recalled the Class Vehicles.

**B.    The ACU Defect**

111.  The airbag systems in the Class Vehicles contain ACUs which sense vehicle crashes and evaluate whether airbag deployment is necessary in the event of an impact.[26]  The ACU is located in the Class Vehicles' passenger compartments and is electrically connected to crash sensors located at the front of the Class Vehicles.[27]

---

[26]  *See* Exhibit C.

[27]  *Id.*

Based on the readings of the sensor, the ACU will deploy the appropriate airbag and other safety restraints to protect drivers and passengers from an accident or impact.[28]

112.   In addition to airbags, the ACUs also deploy other safety restraints such as seatbelt pretensioners.  A seatbelt pretensioner is a critical safety component of the seatbelt system that locks the seatbelt in place during a crash.  When the vehicle's ACU detects a crash, it sends a signal to the seatbelt pretensioner to initiate a concealed piston that proceeds to drive the spool that wraps and controls the seatbelt fabric.  This causes a retraction which removes slack from the seatbelt, pulling the vehicle occupant's body firmly into his seat, and milliseconds later, releasing the occupant in a timely manner to receive the maximum protection benefit of the airbag. The ACU Defect can also cause the seatbelt pretensioner to fail and not engage during a crash.

113.   For illustrative purposes, below is a schematic representation of a 2012 Toyota Corolla airbag system:[29]

---

[28] *Id.*

[29]  ALLDATA AUTOMOTIVE INTELLIGENCE, http://www.alldata.com (last visited Apr. 25, 2019).



114. The ACU contains an electronic component – the ASIC – which monitors signals from other crash sensors located in the Class Vehicles. If the ASIC fails, the ACU will not operate properly and airbags and other supplemental restraints will not deploy when needed.[30]

115. According to NHTSA ODI, in the airbag systems in the Class Vehicles, the ACUs are experiencing EOS due to harmful electrical signals, which then damages the ASIC.[31] This causes the ACUs to stop working, and as a result, the

---

[30] *See* Exhibit C.

[31] *Id.*

1    proper airbag and supplemental restraints are not being deployed during a crash –

2    subjecting Plaintiffs and members of the Class to injury and death.

3        116.   The ACU is intended to have electrical wiring and circuitry that prevents

4    the transmission of harmful signals that may damage the ASIC.[32]  Upon information

5    and belief, the ACUs in the Class Vehicles do not contain sufficient ASIC protection

6    to avoid EOS, which results in failure of the airbags and the seatbelt pretensioners to

7    deploy when needed.

8        117.   As discussed above, NHTSA opened an initial investigation on March

9    16, 2018, into the ACU Defect, which, at that time, had caused front air bags to fail

10   to deploy in numerous crashes, resulting in at least six injuries and four deaths.[33]  The

11   PE investigation identified certain vehicles manufactured by Kia and Hyundai, which

12   contained defective ACUs manufactured by ZF-TRW.[34]

13       118.   At that time, NHTSA ODI indicated certain Kia vehicles "also use

14   similar ACU's supplied by ZF-TRW" and there was "a prior recall, 16V-668 where

15   EOS appeared to be a root cause of air bag non-deployment in significant frontal

16   crashes in certain Fiat Chrysler vehicles."

17       119.   While the PE investigation focused on certain Hyundai and Kia vehicles

18   containing the ACU Defect, NHTSA ODI identified ZF-TRW as the supplier of the

19   defective ACUs, putting the Vehicle Manufacturer Defendants on notice of the ACU

20   Defect.

21       120.   As a result of the PE investigation, Kia and Hyundai instituted recalls of

22   certain vehicles affected by the ACU Defect, including: 2010-2013 Kia Fortes; 2010-

23   2013 Kia Forte Koups; 2011-2013 Kia Optimas; 2011-2013 Kia Optima Hybrids;

24

25   _____

26   [32]  *Id.*

27   [33]  *See* Exhibit B.

28   [34]  *Id.*

2011-2012 Kia Sedonas; 2011-2012 Hyundai Sonatas; and 2011-2013 Hyundai Sonata Hybrids.[35]

121.    The ACU Defect is described as follows in the Kia recall: "The recalled vehicles are equipped with an Advanced Airbag System ("AAS").  The airbag control unit ("ACU") in these vehicles may be susceptible to electrical overstress ("EOS") during certain frontal crash events."[36]  The Kia recall further described the cause of the defect as "[t]he ASIC component within the subject ACUs may be susceptible to EOS due to inadequate circuit protection" and explained the safety risk as follows: "[i]f the ASIC becomes damaged, the front airbags and seatbelt pretensioners may not deploy in certain frontal crashes where deployment may be necessary, thereby increasing the risk of injury."[37]

122.    Chrysler also issued a recall for certain vehicles containing the ACU Defect in September 2016, disclosing that the EOS condition resulted in a failure of the ASIC, which caused airbag non-deployment.[38]  To date, none of the Class Vehicles have been recalled.

123.    On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect to an Engineering Analysis.  Such an upgrade of an NHTSA investigation occurs only after particular criteria are met signifying the need for an enhanced investigation.[39]

---

[35]  *See* Exhibit D, NHTSA, Part 573 Safety Recall Report, NHTSA Recall No. 18V-363 "Kia recall" and Exhibit E, NHTSA, Part 573 Safety Recall Report, NHTSA Recall No. 18V-137 "Hyundai recall."

[36]  *See* Exhibit D.

[37]  *Id.*

[38]  *See* Exhibit F, FCA Important Safety Recall, Occupant Restraint Controller, S61/NHTSA 16V-668 "FCA Recall."

[39]  *See* NHTSA, *Motor Vehicle Defects and Safety Recalls: What Every Vehicle Owner Should Know*, https://www-odi.nhtsa.dot.gov/recalls/documents/MVDefectsandRecalls.pdf (Revised Aug. 2017).

124.   An Engineering Analysis entails "a more detailed and complete analysis of the character and scope of the alleged defect," building on the information collected during the initial investigation.[40]   As a result of an Engineering Analysis, NHTSA may recommend a safety recall or work with a manufacturer to issue a safety recall.[41]

125.   NHTSA upgraded the investigation into the ACU Defect in order to expand the scope of affected vehicles to include, *inter alia*, the Class Vehicles, and include ZF-TRW in the investigation.[42]

126.   The ACU Defect poses a significant safety risk to Plaintiffs and Class members and NHTSA has documented numerous crashes causing injuries, including several fatalities.[43]

127.   Most recently, NHTSA ODI "identified two substantial frontal crash events (one fatal) involving Toyota products where EOS is suspected as the likely cause of the non-deployments."[44]   As explained by NHTSA ODI, "[t]he crashes involved a MY 2018 and a MY 2019 Corolla equipped with the subject ACU that incorporated higher levels of ASIC protection" where "both ACUs were found to be non-communicative (meaning the ACU could not be read with an Event Data Recorder) after the crash, a condition found in other cases where EOS occurred with other OEMs."[45]

---

[40]   *Id.*

[41]   *Id.*

[42]   *See* Exhibit C.

[43]   *Id.*; *see also* Tom Krisher, *US Expands Probe Into ZF-TRW Air Bag Failures to 12.3M Vehicles,* NBC Los Angeles (Apr. 23, 2019, 6:36 AM), https://www.nbclosangeles.com/news/national-international/US-Expands-ZF-TRW-Air-Bag-Failure-Probe-508942951.html.

[44]   *See* Exhibit C.

[45]   *Id.*

- 34 -

128. The defective airbag systems were designed, engineered, and manufactured by the ACU Manufacturer Defendants with design and/or manufacturing flaws that cause the ACU Defect and cause the airbags and seatbelt pretensioners to not deploy in a crash. By designing, manufacturing, assembling, inspecting, distributing, and/or selling defective ACUs and/or Class Vehicles equipped with airbag systems containing the ACU Defect, Defendants rendered the Class Vehicles unsafe for their intended use and purpose.

129. Upon information and belief, the ACU Defect was caused, *inter alia*, by ZF-TRW's design, manufacture, or assembly of the ACUs.

130. All persons in the United States who have purchased or leased a Class Vehicle were placed at risk by the ACU Defect from the moment they first drove their vehicles. The ACU Defect prevents all members of the Class from properly and safely using their vehicles, reduces vehicle occupant protection, and endangers members of the Class and other vehicle occupants. However, none of the Class members knew about, nor could they reasonably have discovered, the ACU Defect prior to purchasing or leasing the Class Vehicles, or before the warranties on their Class Vehicles expired.

131. As a result of Defendants' alleged misconduct, Plaintiffs and Class members were harmed and suffered actual damages, in that the Class Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested (or are at unreasonable risk of manifesting) a sudden and dangerous failure of their airbag system due to the ACU Defect that puts Plaintiffs, Class members, and others at serious risk of injury or death.

132. Plaintiffs and Class members did not receive the benefit of their bargain as purchasers and lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Plaintiffs and Class members did not receive

vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing, known, and undisclosed risk of harm, which could have been avoided through the use of non-defective airbag systems. A vehicle purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a vehicle – such as the Class Vehicles – that is known to contain a safety defect such as the ACU Defect.

133. As a result, all purchasers of the Class Vehicles overpaid for their vehicles at the time of purchase. Furthermore, public disclosure of the ACU Defect has further caused the value of the Class Vehicles to materially diminish. Purchasers or lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the ACU Defect been disclosed.

### C. Defendants' Knowledge of the ACU Defect and Associated Safety Risks

134. Since no later than 2011, there have been countless non-deployment incidents caused by the defective ACUs. Yet despite involvement in investigations and knowledge of the ACU Defect, Defendants have refused to recall vehicles containing the ACU Defect and/or have improperly narrowed the scope of the affected vehicles recalled in order to save costs and avoid negative publicity.

135. Defendants fraudulently, intentionally, and/or recklessly concealed from Plaintiffs and members of the Class the ACU Defect even though Defendants knew or should have known that defects in design, manufacturing, materials, and/or workmanship were causing the ACU Defect if Defendants had adequately tested the airbag system in the Class Vehicles. Instead, Defendants failed to disclose – and actively concealed – the ACU Defect from Plaintiffs, members of the Class, the public, and federal regulators, and continued to market and advertise the Class Vehicles as reliable and safe vehicles, which they are not.

136.    Knowledge and information regarding the ACU Defect were in the exclusive and superior possession of Defendants, and that information was not provided to Plaintiffs and members of the Class.  Based on, *inter alia*, pre-production testing, preproduction design or failure mode analysis, production design or failure mode analysis, post-collision inspections, NHTSA investigations, wrongful death and personal injury lawsuits, and early consumer complaints made to Defendants' network of vehicle manufacturers, Defendants were aware (or should have been aware) of the ACU Defect in the Class Vehicles and fraudulently concealed the ACU Defect and safety risks from Plaintiffs and members of the Class.

137.    As early as August 2011, ZF-TRW and Hyundai/Kia had knowledge that the ACU Defect could cause failure of the airbags and other safety restraints in the Class Vehicles to deploy in an accident.  At that time, ZF-TRW analyzed data from a Kia Forte that had been involved in a collision in China where its airbags did not deploy.[46]  ZF-TRW "observe[d] damage on the ASIC that is consistent with EOS."[47]

138.    Thereafter, in March 2012, ZF-TRW analyzed another Kia Forte where airbags did not deploy in a collision that took place in Egypt and again determined that EOS was negatively affecting the proper functioning of the ASIC in the ACU.[48]  In May 2012, ZF-TRW communicated with Hyundai/Kia "about the investigation of field events with observed EOS."[49]

139.    Hyundai/Kia, on the other hand, suggested the failures of the airbag systems in both Kias were due to "commanded non-deployment."[50]  ZF-TRW and

---

[46] *See* Exhibit A.

[47] *Id.*

[48] *See id.*

[49] *Id.*

[50] *Id.*

1   Hyundai/Kia communicated about these ACU malfunctions and related
2   investigations throughout 2011 and 2012.

3       140.   In March 2014, Hyundai received a lawsuit complaint involving an
4   incident of non-deployment of airbags in a 2012 Kia Forte, which was reported to
5   NHTSA through an Early Warning Report.  NHTSA subsequently sent Hyundai an
6   inquiry regarding the non-deployment incident, to which Hyundai responded.  From
7   March to June 2015, Hyundai attempted to download data from the ACU of the 2012
8   Kia Forte that was the basis of the March 2014 lawsuit, but was unable to
9   communicate with the ACU.  Hyundai requested assistance from ZF-TRW, who was
10  also unable to obtain any data.  During this time, Hyundai referred the issue to ZF-
11  TRW, which concluded that non-deployment occurred.  Hyundai, however, still
12  refused to issue recalls.

13      141.   In 2015, ZF-TRW analyzed data from a Hyundai Sonata and multiple
14  Kia Fortes that experienced similar airbag non-deployment.[51]  Again, ZF-TRW noted
15  ASIC damage consistent with EOS and again Hyundai/Kia pointed to commanded
16  non-deployment.[52]

17      142.   From 2015 through 2018, ZF-TRW and Hyundai/Kia continued to
18  investigate collisions involving Hyundai/Kia vehicles where airbags did not properly
19  deploy, inspected vehicles involved in the accidents, and communicated regarding
20  the results of their findings related to the ACU Defect.[53]

21      143.   In January 2016, ZF-TRW communicated with the Vehicle
22  Manufacturer Defendants regarding EOS and the contact ZF-TRW had with
23  NHTSA.[54]  Thereafter, in February 2016, ZF-TRW met with NHTSA "to discuss its

_____

[51] *See id.*

[52] *See id.*

[53] *Id.*

[54] *See id.*

- 38 -

1  investigation of EOS observed on its ACUs and incidents involving non[-
2  ]deployment of airbags."[55]

3      144.   In September 2016, ZF-TRW provided data to certain Vehicle
4  Manufacturer Defendants "pertaining to its supply of ACUs with particular ASICs"
5  and again communicated with the Vehicle Manufacturer Defendants regarding their
6  supply of ACU's and their ASIC research.[56]   However, ZF-TRW and the Vehicle
7  Manufacturer Defendants did not inform Plaintiffs or Class members of the existence
8  of the ACU Defect or associated safety risks.

9      145.   Upon information and belief, in August 2016, ZF-TRW disclosed to the
10  Vehicle Manufacturer Defendants that Chrysler had decided to recall certain models
11  containing ZF-TRW ACUs.   A month later, in September 2016, ZF-TRW
12  communicated again with each of the Vehicle Manufacturer Defendants about its
13  ongoing investigation of the ACU Defect and its investigation with NHTSA.  None
14  of the Vehicle Manufacturer Defendants issued a recall or informed the public and
15  its consumers of the defect.

16      146.   On September 6, 2016, Chrysler conducted a voluntary safety recall of
17  certain vehicles experiencing EOS in the ASIC of the ACUs, but did not recall the
18  Class Vehicles.  On September 13, 2016, Chrysler filed its first Part 573 Safety Recall
19  Report for vehicles that could experience a loss of airbag and seatbelt pretensioner
20  deployment capability due to damage to the ACU's ASIC.   This recall affected
21  approximately 1.5 million Chrysler vehicles.   Despite the significant number of
22  recalled vehicles, the remaining Vehicle Manufacturer Defendants continued to resist
23  implementing their own recalls or informing the general public of the ACU Defect.

24      147.  Throughout 2017 and 2018, ZF-TRW and Hyundai/Kia conducted
25  additional inspections of Hyundai/Kia vehicles experiencing airbag non-deployment

26  _____
27  [55]  *Id.*
28  [56]  *Id.*

as a result of the ACU Defect.   ZF-TRW continued to note damage to ASICs consistent with EOS.[57]

148.   Throughout 2018, ZF-TRW continued to discuss the ACU Defect with NHTSA and the Vehicle Manufacturer Defendants.

149.   On February 27, 2018, Hyundai recalled certain Hyundai vehicles suffering from the ACU Defect, but did not recall the Class Vehicles.

150.   In March 2018, ZF-TRW communicated with the Vehicle Manufacturer Defendants regarding the ACU Defect.[58]   However, ZF-TRW and the Vehicle Manufacturer Defendants concealed the ACU Defect and associated safety risks from the public, including Plaintiffs and Class members.[59]

151.   On June 1, 2018, Kia recalled certain Kia vehicles suffering from the ACU Defect, but did not recall the Class Vehicles.

152.   On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect involving ZF-TRW ACUs from a PE investigation to an Engineering Analysis, in order to "expand the scope of the investigation to include [ZF-TRW], the Tier-one supplier and any manufacturers who installed this unit in production vehicles."   NHTSA's upgrade to an Engineering Analysis only further confirmed what the Vehicle Manufacturer Defendants knew or should have known as to the severity of the ACU Defect and wide range of their vehicles affected.

153.   Notably, NHTSA's Engineering Analysis also disclosed that NHTSA ODI had recently identified two substantial front crash events involving airbag non-deployments in model year 2018 and model year 2019 Toyota Corollas.   NHTSA found that, following the collisions, the ACUs could not be read with an EDR, similar to the condition found in other incidents involving non-deployment of airbags in

---

[57]   *See id.*

[58]   *See id.*

[59]   *See id.*

other OEMs' vehicles caused by EOS.  NHTSA further concluded EOS was the likely cause of the non-deployments in the Toyota incidents.  One of these crash events resulted in a fatality.

154.  As discussed above, the Vehicle Manufacturer Defendants were aware of the ACU Defect, not only pursuant to their knowledge of the recalls issued by Chrysler, Hyundai, and Kia, as well as ZF-TRW's communications advising them of NHTSA's investigation into the ACU Defect, but also as a result of customer complaints involving the ACU Defect in their own vehicles.

155.  Defendants fraudulently, intentionally, negligently, and/or recklessly omitted and concealed from Plaintiffs and members of the Class the ACU Defect, even though Defendants knew or should have known of design and/or manufacturing defects in the airbag systems in the Class Vehicles.

156.  Defendants knew, or should have known, that the ACU Defect and associated safety risks were material to owners and lessees of the Class Vehicles and were not known to or reasonably discoverable by Plaintiffs and members of the Class before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

157.  Defendants gained their knowledge of the ACU Defect through sources not available to Plaintiffs and members of the Class.  Notwithstanding Defendants' exclusive and superior knowledge of the ACU Defect, the Vehicle Manufacturer Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the ACU Defect.

**D.    The Vehicle Manufacturer Defendants Sold Their Vehicles as "Safe" and "Reliable"**

158.  As discussed above, at all relevant times, in advertisements and promotional materials, Defendants continuously maintained that their products were

safe and reliable, and uniformly concealed the ACU Defect.  Plaintiffs, directly or indirectly, were exposed to these advertisements or promotional materials prior to purchasing or leasing Class Vehicles.   These misleading statements about Class Vehicles' safety in Defendants' advertisements and promotional materials were material to decisions to purchase or lease Class Vehicles.

159.   Examples of Honda's safety and reliability representations include the following:

(a)   In 2015, Honda represented on its website that "Honda is committed to providing safety for everyone—that means crash protection not only for our own drivers and passengers, but also for the occupants of other vehicles, and injury mitigation for pedestrians." "As a leader, Honda looks beyond government regulations, studying real world situations to develop new safety technologies for everyone."

(b)   In 2015, Honda represented on its website: "Acura believes driving a luxury car should be a highly enjoyable experience. And while we tend to dwell on the more exhilarating aspects of our vehicles, we consider your safety a top priority . . . . Safety has been top of mind with Acura engineers since day one . . . . Over the years, we've added many advanced safety technologies to the list, and the vast majority of them are now standard on every model."

(c)   In 2019, Honda represented on Acura's website that "Acura was the first luxury brand awarded top safety ratings across its entire model line. ★★★★★ NHTSA 5-STAR OVERALL VEHICLE SCORE."

(d) In 2019, Honda also represented on Acura's website: "Our unrelenting mission to help keep you safe inspires technologies as innovative as they are effective. Protection is at the heart of Acura design. After all, an Acura can be replaced. Your family cannot."

160. Examples of Hyundai's safety and reliability representations include the following:

(a) In 2017, Hyundai represented on its website: The Hyundai "SONATA [was] named a 2017 IIHS Top Safety Pick+."

(b) In 2019, Hyundai also represented on its website: "It's always been our aim to engineer the safest cars in the industry[.]"

(c) In 2019, Hyundai also represented on its website that "[y]ou can't overstate the importance of keeping the people you love safe, which is why we can't overstate the importance of always striving to make our safety features more advanced and innovative."

(d) Similarly, in 2019, Hyundai represented on Kia's website that "[a]t Kia, we work tirelessly to ensure that every passive safety system on our vehicles is designed to help you handle the unexpected.  And that every active safety system is designed to help you avoid trouble whenever possible."

(e) Hyundai also represented on Kia's website in 2019 that Kia vehicles were: "Built with your safety as our top priority, Kia's vehicle lineup has collected numerous top safety awards."

(f) In 2019, Hyundai also represented on Kia's website that its ACU "system monitors the severity of the impact, the presence of a

front passenger, and seat-belt use, and then controls airbag inflation accordingly whenever possible."

161. Examples of Toyota's safety and reliability representations include the following:

    (a) In 2015, Toyota represented on its website that "[f]or us, the journey towards a safe road never ends. This belief, along with our collaborative research efforts, drives us to create advancements and innovations in safety that have helped (and continue to help) prevent crashes and protect people."

    (b) In 2018, Toyota represented on its website that the "2018 Toyota Corolla [i]s an IIHS [Top Safety Pick]."

    (c) In 2019, Toyota represented in its brochure that "[s]afety is always in style. So we made it standard."

    (d) In 2019, Toyota also represented in its brochure that "[a] driver and front passenger Advance Airbag System, driver and front passenger seat-mounted side airbags, front and rear side curtain airbags, and driver knee and front passenger seat-cushion airbags come standard on Corolla. It's all part of a system designed to help keep you safe."

162. Examples of Chrysler's safety and reliability representations include the following:

    (a) In 2019, Chrysler represented on its website that: "The 2019 Compass builds on the Jeep Brand tradition of safety and security. Equipped with over 70 standard and available safety and security features, it provides peace of mind wherever the road takes you."

      (b)    In 2019, Chrysler represented on its website that "[t]he All-New 2018 Jeep® Wrangler is equipped with the latest state-of-the-art active safety features to that keep you aware of your surroundings, as well as time-tested passive safety systems that will bolster your protection when necessary."  According to Chrysler, "[t]he 2018 Jeep® Wrangler builds on a proven tradition of smart design combined with preventative features to help keep you safe and secure.  From an advanced front and side airbag system, to high-strength steel beams that improve side-impact performance and vehicle stiffness, Wrangler has your back, your front and your sides."

163.   Examples of Mitsubishi's safety and reliability representations include the following:

      (a)    In 2019, Mitsubishi claimed on its website that "[w]ith every passing year few brands have added and expanded their safety features as much as Mitsubishi Motors."

      (b)    In 2019, Mitsubishi also stated on its website that "[w]hen you get into the car, you are worried about where you are going and what time you need to be there, not safety.  It is our job to worry about safety, so that you don't have to. Mitsubishi safety technology is top-of-the-line so that we give you peace of mind when you are behind the wheel."

164.   Contrary to these representations and countless others like them, the Vehicle Manufacturer Defendants failed to equip the Class Vehicles with ACUs that would meet safety standards and failed to disclose to consumers that their vehicles actually contained dangerous and defective ACUs.

## V.  TOLLING OF THE STATUTE OF LIMITATIONS

### A.  Fraudulent Concealment

165.   Upon information and belief, Defendants have known or should have known about the ACU Defect since 2011.  Any applicable statute of limitations has been tolled by Defendants' knowledge and active concealment of the ACU Defect and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Class were deceived regarding the Class Vehicles and could not reasonably discover the ACU Defect or Defendants' deception with respect to the ACU Defect.

166.   Plaintiffs and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or that the Class Vehicles contained an ACU Defect and corresponding safety risk.  As alleged herein, the existence of the ACU Defect was material to Plaintiffs and members of the Class at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the ACU Defect, the associated safety risk, or that Defendants were concealing the defect.

167.   Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### B.  Estoppel

168.   Defendants were, and are, under a continuous duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the Class Vehicles.  They actively concealed the true character, quality, and nature of the vehicles, and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles.  Plaintiffs and proposed Class

members reasonably relied upon Defendants' knowing, and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

### C. Discovery Rule

169. The causes of action alleged here did not accrue until Plaintiffs and members of the Class discovered that their vehicles contained the ACU Defect.

170. Plaintiffs and members of the Class, however, had no realistic ability to discern that their vehicles were defective, until after either the defective ACUs failed, or their vehicles were recalled. Even then, Plaintiffs and members of the Class would have had no reason to discover their causes of action, because of Defendants' active concealment of the true nature of the ACU Defect.

## VI. CLASS ACTION ALLEGATIONS

### A. The Class

171. Plaintiffs bring this lawsuit, and seek to certify and maintain as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3) and/or (b)(2), on behalf of themselves and a Nationwide Consumer Class defined as follows:

> All persons in the United States who purchased or leased a Class
> Vehicle (the "Class").

172. Excluded from the Class are (a) Defendants, their employees, officers, directors, legal representatives, heirs, successors, wholly or partly owned subsidiaries, or affiliates; (b) Class Counsel and their employees; and (c) the judicial officers, their immediate family members, and associated court staff assigned to this case.

**B.     Numerosity**

173.    This action satisfies the requirements of Rule 23(a)(1) of the Federal Rules of Civil Procedure.   There are millions of Class Vehicles nationwide. Individual joinder of all Class members is impracticable.

174.    The Class is ascertainable because its members can be readily identified using vehicle registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their control.  Plaintiffs anticipate providing appropriate notice to the Class in compliance with Federal Rules of Civil Procedure 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Rule 23(d).

**C.     Predominance of Common Issues**

175.    This action satisfies the requirements of Federal Rules of Civil Procedure 23(a)(2) and (b)(3), because questions of law and fact that have common answer and predominate over questions affecting only individual Class members. These include, but are not limited to, the following:

> (a)     whether the Class Vehicles contain the ACU Defect;
>
> (b)     whether Defendants violated the MMWA, 15 U.S.C. §2301, *et seq.*;
>
> (c)     whether Defendants' alleged conduct constitutes the use or employment of an unconscionable commercial practice, deception, fraud, false pretense, false promise, and/or misrepresentation within the meaning of the applicable state consumer fraud statutes;
>
> (d)     whether the Vehicle Manufacturer Defendants were unjustly enriched by their conduct;

(e)    whether the ACU Defect is a design defect and/or a defect in material, manufacturing, and/or workmanship;

(f)    whether the ACU Defect in the Class Vehicles presents a safety risk;

(g)    whether and when Defendants knew or should have known about the ACU Defect;

(h)    whether Defendants knew or should have known that the ACU Defect in Class Vehicles presents a safety risk;

(i)    whether Defendants had a duty to disclose the ACU Defect;

(j)    whether Defendants breached their duty to disclose the ACU Defect;

(k)    whether Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the standard, quality, or grade of the Class Vehicles and/or the ACU Defect;

(l)    whether Defendants made material omissions concerning the standard, quality, or grade of the Class Vehicles and/or the ACU Defect;

(m)    whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

(n)    whether Defendants actively concealed material facts from Plaintiffs and members of the Class;

(o)    whether Defendants breached their implied warranties to Plaintiffs and members of the Class;

(p)    whether the Vehicle Manufacturer Defendants breached their express warranties to Plaintiffs and members of the Class;

- 49 -

(q)     whether members of the Class would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks;

(r)     whether members of the Class would have purchased or leased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the ACU Defect and/or associated safety risks; and

(s)     whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

**D.     Typicality**

176.    This action satisfies the requirements of Rule 23(a)(3) of the Federal Rules of Civil Procedure, because Plaintiffs' claims are typical of the claims of members of the Class, and arise from the same course of conduct by Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**E.     Adequate Representation**

177.    Plaintiffs are willing and prepared to serve the Class in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have no interests adverse to or in conflict with the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

178.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**F.     Superiority**

179.    Plaintiffs and Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.

- 50 -

A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

180.   Absent a class action, most members of the class would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims, it is likely that only a few Class members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class members will continue to incur damages, and Defendants' misconduct will continue without remedy.

181.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

182.   Defendants have acted in a uniform manner with respect to the Plaintiffs and members of the Class, as all Class members have been sent, for all intents and purposes, the same recall letter to purchasers of the vehicles Defendants manufactured, in accordance with the National Traffic and Motor Vehicle Safety Act.

183.   Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

184.   The Class may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class and inconsistent adjudications with respect to the Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class members to protect their interests.  Classwide relief assures fair, consistent, and equitable treatment and protection of all Class members, and uniformity and consistency in Defendants' discharge of their duties to perform corrective action regarding the ACU Defect,

1     thereby making it appropriate to award final injunctive relief or corresponding

2     declaratory relief with respect to the Class.

3          185.    The interests of members of the Class in individually controlling the

4     prosecution of separate actions is theoretical and not practical.  The Class has a high

5     degree of similarity and is cohesive, and Plaintiffs anticipate no difficulty in the

6     management of this matter as a class action.

7          186.    Rule 23 of the Federal Rules of Civil Procedure provides the Court with

8     the authority and flexibility to maximize the efficiencies and benefits of the class

9     mechanism, and reduce management challenges.  The Court may, on motion of

10     Plaintiffs, or on its own determination, certify nationwide, statewide, and/or

11     multistate classes for claims sharing common legal questions; utilize the provisions

12     of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact

13     or law for class- wide adjudication; certify and adjudicate bellwether class claims;

14     and utilize Rule 23(c)(5) to divide any Class into subclasses.

15          187.    The Class expressly disclaims any recovery in this action for physical

16     injury resulting from the ASIC Defect without waiving or dismissing such claims.

17     Plaintiffs are informed and believe that injuries suffered in crashes as a result of

18     defective ACUs implicate the Class Vehicles; constitute evidence supporting various

19     claims, including diminution of value; and are continuing to occur because of

20     Defendants' delays and inaction regarding the commencement and completion of

21     recalls.  The increased risk of injury from the ACU Defect serves as an independent

22     justification for the relief sought by Plaintiffs and the Class.

23 **VII.   CLAIMS FOR RELIEF**

24          188.    Plaintiffs reallege and incorporate by reference all of the preceding

25     paragraphs and allegations of this Complaint, including those within the sections

26     titled Nature of the Action, Factual Allegations, Tolling of the Statute of Limitations,

27

28

and Class Action Allegations, as though fully set forth in each of the following Claims for Relief asserted on behalf of the Class.

### A.   Nationwide Claims

#### 1.   Federal Statutory Claim

#### COUNT I

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. §2301, *ET SEQ.* AGAINST ALL DEFENDANTS**

189.   Plaintiffs bring this count on behalf of themselves and the members of the Class against all Defendants.

190.   Plaintiffs satisfy the MMWA jurisdictional requirement because they allege diversity jurisdiction under CAFA, 28 U.S.C. §1332(d)(2).

191.   Plaintiffs and members of the Class are "consumers" within the meaning of the MMWA, 15 U.S.C. §2301(3).

192.   Defendants are "suppliers" and "warrantors" within the meaning of the MMWA, 15 U.S.C. §2301(4)-(5).

193.   The ACUs and Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. §2301(1).

194.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. §2310(d)(1).

195.   Pursuant to 15 U.S.C. §2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

196.   The Vehicle Manufacturer Defendants provided Plaintiffs and members of the Class with one or more express warranties, which are covered under 15 U.S.C. §2301(6).   Under warranties provided to members of the Class, the Vehicle

Manufacturer Defendants promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the ACU Defect, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, the Vehicle Manufacturer Defendants breached these warranties.

197. Defendants provided Plaintiffs and Class members with implied warranties, including an implied warranty of merchantability, in connection with the purchase or lease of the Class Vehicles, whereby Defendants warranted that the ACUs and Class Vehicles were fit for their ordinary purpose as safe vehicle components and safe vehicles.  The Class Vehicles' implied warranties are covered under 15 U.S.C. §2301(7).

198. Defendants breached these implied warranties by failing to disclose and fraudulently concealing information regarding the standard, quality, or grade of the Class Vehicles and/or the presence of the ACU Defect and corresponding safety risks. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing, and/or workmanship that fails to operate as represented by Defendants and presents a safety risk, and therefore, the Class Vehicles are not fit for their ordinary purpose.

199. Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew, or were reckless in not knowing, of the material omissions concerning the standard, quality, or grade of the Class Vehicles and the presence of the ACU Defect and corresponding safety risks, but failed to repair or replace the ACU Defect and/or disclose the defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

200.   Plaintiffs and members of the Class experienced the ACU Defect within the warranty periods but Defendants failed to inform Plaintiffs and members of the Class of the existence of the ACU Defect and associated safety risk, and failed to provide a suitable remedy or repair of the ACU Defect free of charge within a reasonable time.

201.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, Plaintiffs and members of the Class did not determine these time limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Defendant and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

202.   Plaintiffs and each member of the Class have had sufficient direct dealings with either the Vehicle Manufacturer Defendants or their agents (dealerships) to establish privity of contract.

203.   Nonetheless, privity is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between the ACU Manufacturer Defendants and the Vehicle Manufacturer Defendants, and between the Vehicle Manufacturer Defendants and their dealers, and specifically, of the implied warranties.   The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to

benefit consumers.  Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the ACU Defect.

204.  Plaintiffs and members of the Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs and members of the Class have not re-accepted their Class Vehicles by retaining them.

205.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

206.  Plaintiffs, individually and on behalf of members of the Class, seek equitable relief, restitution, and all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

207.  In addition, pursuant to 15 U.S.C. §2310(d)(2), Plaintiffs and the other members of the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members, in connection with the commencement and prosecution of this action.

208.  Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the ACU Defect in their vehicles.  Such expenses and losses will continue as Plaintiffs and members of the Class must take time off from work, pay for rental cars or other transportation arrangements, secure child care, and incur the myriad expenses involved in going through the recall process.

209.  The right of Class members to recover these expenses as an equitable matter – to put them in the place they would have been but for the Defendants'

conduct – presents common questions of law.  Equity and fairness requires the establishment by Court decree, and administration under Court supervision, of a program funded by the Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## 2.    Common Law Claims

### COUNT II

### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT AGAINST THE ACU MANUFACTURER DEFENDANTS

210.   Plaintiffs bring this count on behalf of themselves and the members of the Class against the ACU Manufacturer Defendants under the common law of fraud, as there are no true conflicts among various states' laws of fraud.  In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class members reside and/or purchased or leased their Class Vehicles.

211.   The ACU Manufacturer Defendants concealed and suppressed material facts regarding the defective airbag systems – most importantly, the ACU Defect – which causes, among other things, the defective airbag systems and seatbelt pretensioners to fail to deploy during an accident.

212.   The ACU Manufacturer Defendants had a duty to disclose the ACU Defect because they:

(a)    had exclusive and/or far superior knowledge and access to the facts regarding the ACU Defect than Plaintiffs and members of the Class, and the ACU Manufacturer Defendants knew the facts were not known to, or reasonably discoverable by, Plaintiffs and members of the Class;

(b)    intentionally concealed the foregoing from Plaintiffs and members of the Class; and

(c)     made incomplete representations about the safety and reliability of the defective ACUs and airbag systems and, by extension, the Class Vehicles, while purposefully withholding material facts from Plaintiffs and members of the Class that contradicted these representations.

213.   These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and members of the Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

214.   The ACU Manufacturer Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that its ACUs were capable of performing safely, as represented by the ACU Manufacturer Defendants and reasonably expected by consumers.

215.   The ACU Manufacturer Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt the brand's image and cost the ACU Manufacturer Defendants money.  The ACU Manufacturer Defendants concealed these facts at the expense of Plaintiffs and members of the Class.

216.   Plaintiffs and members of the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

217.   Had they been aware of the defective ACUs and airbag systems and the ACU Manufacturer Defendants' callous disregard for safety, Plaintiffs and members of the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  Plaintiffs and members of the Classes did not receive

the benefit of their bargain as a result of the ACU Manufacturer Defendants' fraudulent concealment.

218. Because of the concealment and/or suppression of material facts, Plaintiffs and members of the Class sustained damage because they own vehicles that diminished in value as a result of the ACU Manufacturer Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in millions of Class Vehicles and the serious safety and quality issues caused by the ACU Manufacturer Defendants' conduct.

219. The value of all Class members' vehicles has diminished as a result of the ACU Manufacturer Defendants' fraudulent concealment of the defective ACUs. The ACU Defect has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

220. Accordingly, the ACU Manufacturer Defendants are liable to Plaintiffs and the Class for their damages in an amount to be proven at trial.

221. The ACU Manufacturer Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Class' rights and well-being, and with the aim of enriching the ACU Manufacturer Defendants. The ACU Manufacturer Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

222.   Plaintiffs bring this count on behalf of themselves and the members of the Class against the Vehicle Manufacturer Defendants under the common law of fraud, as there are no true conflicts among various states' laws of fraud.   In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class members reside and/or purchased or leased their Class Vehicles.

223.   The Vehicle Manufacturer Defendants concealed and suppressed material facts regarding the Class Vehicles – most importantly, the fact that they were equipped with defective airbag systems containing the ACU Defect which, among other things causes airbags to fail to deploy during an accident.

224.   The Vehicle Manufacturer Defendants had a duty to disclose the ACU Defect because they:

    (a)   had exclusive and/or far superior knowledge and access to the facts regarding the ACU Defect than Plaintiffs and members of the Class, and the Vehicle Manufacturer Defendants knew the facts regarding the ACU Defect were not known to, or reasonably discoverable by, Plaintiffs and members of the Class;

    (b)   intentionally concealed the foregoing from Plaintiffs and members of the Class; and

    (c)   made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts regarding the ACU Defect from Plaintiffs and members of the Class that contradicted these representations.

225.   These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor

vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and members of the Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.  Plaintiffs and members of the Class trusted the Vehicle Manufacturer Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

226.   The Vehicle Manufacturer Defendants concealed and suppressed these material facts to falsely assure consumers that their Class Vehicles containing the defective airbag systems were capable of performing safely, as represented by the Vehicle Manufacturer Defendants and reasonably expected by consumers.

227.   The Vehicle Manufacturer Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and to avoid recalls that would hurt their brands' images and cost the Vehicle Manufacturer Defendants money.  The Vehicle Manufacturer Defendants concealed these facts at the expense of Plaintiffs and members of the Class.

228.   Plaintiffs and members of the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

229.   Had they been aware of the ACU Defect and the Vehicle Manufacturer Defendants' callous disregard for safety, Plaintiffs and members of the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  Plaintiffs and members of the Class did not receive the benefit of their bargain as a result of the Vehicle Manufacturer Defendants' fraudulent concealment.

230.   Because of the concealment and/or suppression of the facts, Plaintiffs and members of the Class sustained damage because they own vehicles that diminished in value as a result of the Vehicle Manufacturer Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in the Class Vehicles and

the serious safety and quality issues caused by the Vehicle Manufacturer Defendants' conduct.

231.   The value of Plaintiffs' all Class members' Class Vehicles has diminished as a result of the Vehicle Manufacturer Defendants' fraudulent concealment of the ACU Defect.  Any reasonable consumer would be reluctant to purchase any of the Class Vehicles as a result of the ACU Defect, let alone pay what otherwise would have been fair market value for the vehicles.

232.   Accordingly, the Vehicle Manufacturer Defendants are liable to Plaintiffs and members of the Class for damages in an amount to be proven at trial.

233.   The Vehicle Manufacturer Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and the Class' rights and well-being, and with the aim of enriching the Vehicle Manufacturer Defendants.  The Vehicle Manufacturer Defendants' conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**

**UNJUST ENRICHMENT**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

234.   Plaintiffs bring this count on behalf of themselves and the members of the Class against the Vehicle Manufacturer Defendants under the common law of unjust enrichment, as there are no true conflicts among various states' laws of unjust enrichment.  In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class members reside and/or purchased or leased their Class Vehicles.

235. The Vehicle Manufacturer Defendants have received and retained a benefit from the Plaintiffs and members of the Class and inequity has resulted.

236. The Vehicle Manufacturer Defendants benefitted through their unjust conduct, by selling Class Vehicles that contain defective airbag systems with the ACU Defect and a concealed safety-and-reliability related defect, at a profit, for more than the Class Vehicles were worth, to Plaintiffs and members of the Class, who overpaid for these defective airbag systems by overpaying for their Class Vehicles, and/or would not have purchased Class Vehicles at all, and who have been forced to pay other costs.

237. It is inequitable for the Vehicle Manufacturer Defendants to retain these benefits.

238. Plaintiffs and members of the Class do not have an adequate remedy at law.

239. As a result of the Vehicle Manufacturer Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount to be proven at trial.

**B.    State Statutory Claims[60]**

**1.    Alabama**

**ALABAMA COUNT I**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(ALA. CODE §§7-2-314, 7-2A-103, AND 7-2A-212)**
**AGAINST ALL DEFENDANTS**

240. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Alabama, against all Defendants.

---

[60]  Plaintiffs also include in this section claims under the statutes of the District of Columbia.

241. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under ALA. CODE §§7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles and/or ACUs under §7-2-103(1)(d).

242. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ALA. CODE §7-2A-103(1)(p).

243. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of ALA. CODE §§7-2-105(1) and 7-2A-103(1)(h).

244. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to ALA. CODE §§7-2-314 and 7-2A-212.

245. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

246. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

247. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ALABAMA COUNT II

## BREACH OF EXPRESS WARRANTY
### (ALA. CODE §§7-2-313, 7-2A-103, AND 7-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

248. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Alabama, against the Vehicle Manufacturer Defendants.

249. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under ALA. CODE §7-2-104(1), and "sellers" of motor vehicles under §7-2-103(1)(d).

250. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ALA. CODE §7-2A-103(1)(p).

251. The Class Vehicles are and were at all relevant times "goods" within the meaning of ALA. CODE §7-2-105(1).

252. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or

replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

253.  In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

254.  Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

255.  The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

256.  Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

257.  The members of the Class could not have reasonably discovered the ACU Defect.

258. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

259. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

260. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

261. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

262.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

263.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

264.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

265.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

266.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

267.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

268.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

269.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**2.     Alaska**

**ALASKA COUNT I**

**BREACH OF IMPLIED WARRANTIES**
**(ALASKA STAT. §§45.02.314, 45.12.103, AND 45.12.212)**
**AGAINST ALL DEFENDANTS**

270.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Alaska, against all Defendants.

271.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under ALASKA STAT. §§45.02.104(a) and 45.12.103(c)(11), and "sellers" of motor vehicles and/or ACUs under §45.02.103(a)(4).

272.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ALASKA STAT. §45.12.103(a)(16).

273.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of ALASKA STAT. §§45.02.105(a) and 45.12.103(a)(8).

274.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to ALASKA STAT. §45.02.314 and 45.12.212.

275.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to ALASKA STAT. §45.02.315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

276.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt

1  pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe

2  and reduces their value.

3     277.  Defendants were provided notice of these issues by the numerous

4  consumer complaints against them regarding the ACU Defect, by, *inter alia*,

5  numerous individual letters and communications sent by Plaintiffs and others within

6  a reasonable amount of time after the allegations of the ACU Defect became public,

7  and by internal and NHTSA investigations.

8     278.  As a direct and proximate result of Defendants' breach of the implied

9  warranty of merchantability, the members of the Class have been damaged in an

10  amount to be proven at trial.

11  **ALASKA COUNT II**

12  **BREACH OF EXPRESS WARRANTY**
**(ALASKA STAT. §§45.02.313, 45.12.103, AND 45.12.210)**

13  **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

14     279.  Plaintiffs bring this claim on behalf of all members of the Class, or

15  alternatively the members of the Class that reside and/or purchased or leased their

16  Class Vehicles in Alaska, against the Vehicle Manufacturer Defendants.

17     280.  Vehicle Manufacturer Defendants are and were at all relevant times

18  "merchants" with respect to of motor vehicles under ALASKA STAT. §§45.02.104(a)

19  and 45.12.103(c)(11), and "sellers" of motor vehicles under §45.02.103(a)(4).

20     281.  With respect to leases, Vehicle Manufacturer Defendants are and were

21  at all relevant times "lessors" of motor vehicles under ALASKA STAT.

22  §45.12.103(a)(16).

23     282.  The Class Vehicles are and were at all relevant times "goods" within the

24  meaning of ALASKA STAT. §§45.02.105(a) and 45.12.103(a)(8).

25     283.  In connection with the purchase of all Class Vehicles, Vehicle

26  Manufacturer Defendants provided express warranties.  Kia provides a limited basic

27  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

28

repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

284.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

285.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

286.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and

concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

287. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

288. The members of the Class could not have reasonably discovered the ACU Defect.

289. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

290. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

291. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in materials that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith;

1   and (d) supplying products and materials that failed to conform to the representations

2   made by Vehicle Manufacturer Defendants.

3       292.   The Class has given Vehicle Manufacturer Defendants a reasonable

4   opportunity to cure their breach of express warranty or, alternatively, were not

5   required to do so because such an opportunity would be unnecessary and futile given

6   that the repairs or replacements offered by Vehicle Manufacturer Defendants can

7   neither cure the defect in the Class Vehicles nor resolve the incidental and

8   consequential damages flowing therefrom.

9       293.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their

10  essential purpose and the recovery of the members of the Class is not limited to the

11  warranties' remedies.

12      294.   The Vehicle Manufacturer Defendants were provided notice of the ACU

13  Defect in the defective airbag systems by numerous consumer complaints made to

14  their authorized dealers nationwide, complaints to NHTSA, and through their own

15  testing.   Affording Defendants a reasonable opportunity to cure their breach of

16  written warranties would be unnecessary and futile here because the Vehicle

17  Manufacturer Defendants have known of and concealed the ACU Defect and, on

18  information and belief, have refused to repair or replace the defective airbag systems

19  in the Class Vehicles free of charge within or outside of the warranty periods despite

20  the defect's existence at the time of sale or lease of the Class Vehicles, and within the

21  applicable warranty periods.

22      295.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or

23  limit recovery to the terms of the express warranties is unconscionable and

24  unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty

25  limitations are unenforceable because they knowingly sold or leased a defective

26  product without informing consumers about the defect.   The time limits contained in

27  the Vehicle Manufacturer Defendants' warranty periods were also unconscionable

28

and inadequate to protect Plaintiffs and members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

296.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

297.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

298.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

299.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

300.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 3.    Arizona

## ARIZONA COUNT I

### VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. ANN. §44-1521, *ET SEQ.*) AGAINST ALL DEFENDANTS

301.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Arizona, against all Defendants.

302.   The members of the Class and Defendants are "persons" within the meaning of ARIZ. REV. STAT. ANN. §44-1521(6).

303.   The Class Vehicles and defective ACUs are "merchandise" within the meaning of ARIZ. REV. STAT. ANN. §44-1521(5).

304.   The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  ARIZ. REV. STAT. ANN. §44-1522(A).

305.   In the course of Defendants' business, Defendants violated the Arizona CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in deceptive acts or practices, as outlined in ARIZ. REV. STAT. ANN. §44-1522(A), including using or employing deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in

connection with the advertisement and sale of the Class Vehicles and/or the defective airbag systems installed in them.

306.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

307.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Arizona CFA.   Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

308.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.   Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

309.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

- 77 -

310. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

311. Defendants knew or should have known that their conduct violated the Arizona CFA.

312. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

313. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

314. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

    (a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    (b)   intentionally concealed the foregoing from the Class; and/or

    (c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

315. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the

1   Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of
2   the stigma attached to Class Vehicles by Defendants' conduct, they are now worth
3   significantly less than they otherwise would be.

4   316.   Defendants' failure to disclose and active concealment of the dangers
5   and risks posed by the defective airbag systems in Class Vehicles were material to
6   the members of the Class.  A vehicle made by a reputable manufacturer of safe
7   vehicles is worth more than an otherwise comparable vehicle made by a disreputable
8   manufacturer of unsafe vehicles that conceals defects rather than promptly remedies
9   them.

10   317.   The members of the Class suffered ascertainable loss caused by
11   Defendants' misrepresentations and their failure to disclose material information.
12   Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the
13   defective airbag systems installed in them, and Defendants' complete disregard for
14   safety, the members of the Class either would have paid less for their vehicles or
15   would not have purchased or leased them at all.  The members of the Class had no
16   way of discerning that Defendants' representations were false and misleading, or
17   otherwise learning the facts that Defendants had concealed or failed to disclose.

18   318.   The members of the Class did not receive the benefit of their bargain as
19   a result of Defendants' misconduct.

20   319.   As a direct and proximate result of Defendants' violations of the
21   Arizona CFA, the members of the Class have suffered injury-in-fact and/or actual
22   damage.

23   320.   The Class seeks an order awarding damages and any other just and
24   proper relief available under the Arizona CFA.

25

26

27

28

**ARIZONA COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(ARIZ. REV. STAT. ANN. §§47-2313, 47-2A103, AND 47-2A212)**
**AGAINST ALL DEFENDANTS**

321. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Arizona, against all Defendants.

322. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under ARIZ. REV. STAT. ANN. §§47-2104(A) and 47-2A103(C)(11), and "sellers" of motor vehicles and/or ACUs under §47-2103(A)(4).

323. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ARIZ. REV. STAT. ANN. §47-2A103(A)(16).

324. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. ANN. §§47-2105(A) and 47-2A103(A)(8).

325. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to ARIZ. REV. STAT. ANN. §§47-2314 and 47-2A212.

326. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to ARIZ. REV. STAT. ANN. §47-2315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

327.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

328.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

329.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### ARIZONA COUNT III

### BREACH OF EXPRESS WARRANTY
### (ARIZ. REV. STAT. ANN. §§47-2313, 47-2A103, AND 47-2A210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

330.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Arizona, against the Vehicle Manufacturer Defendants.

331.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under ARIZ. REV. STAT. ANN. §§47-2104(A) and 47-2A103(C)(11), and "sellers" of motor vehicles under §47-2103(A)(4).

332.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ARIZ. REV. STAT. ANN. §47-2a103(A)(16).

333.   The Class Vehicles are and were at all relevant times "goods" within the meaning of ARIZ. REV. STAT. ANN. §§47-2105(A) and 47-2A103(A)(8).

334.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.  Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

335.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

336.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

337.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

338.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

339.   The members of the Class could not have reasonably discovered the ACU Defect.

340.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

341.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

342.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in materials that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

343.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

344.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

345.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems

in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

346.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

347.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

348.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

349.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

350.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

351.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 4.   Arkansas

### ARKANSAS COUNT I

**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(ARK. CODE ANN. §§4-88-101, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

352.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Arkansas, against all Defendants.

353.   The members of the Class and Defendants are "persons" within the meaning of ARK. CODE ANN. §4-88-102(5).

354.   The Class Vehicles and defective ACUs are "goods" within the meaning of ARK. CODE ANN. §4-88-102(4).

355.   The Arkansas Deceptive Trade Practice Act ("Arkansas DTPA") makes unlawful "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including: "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." ARK. CODE ANN. §4-88-107(a)(10).   The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods:

"(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission."  ARK. CODE ANN. §4-88-108.

356.   In the course of Defendants' business, Defendants violated the Arkansas DTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in ARK. CODE ANN. §§4-88-107 – 108, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; and/or using or employing deception, fraud, false pretense, false promise, or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale of the Class Vehicles and/or the defective airbag systems installed in them, whether or not any person has in fact been misled, deceived, or damaged thereby.

357.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

358.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business

practices in violation of the Arkansas DTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

359. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

360. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

361. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

362. Defendants knew or should have known that their conduct violated the Arkansas DTPA.

363. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

364. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class

1   Vehicles and/or the defective airbag systems installed in them and their tragic

2   consequences, and allowed unsuspecting new and used car purchasers to continue to

3   buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous

4   vehicles.

5        365.   Defendants owed the members of the Class a duty to disclose the true

6   safety and reliability of the Class Vehicles and/or the defective airbag systems

7   installed in them because Defendants:

8                (a)   possessed exclusive knowledge of the dangers and risks posed

9                      by the foregoing;

10               (b)   intentionally concealed the foregoing from the Class; and/or

11               (c)   made incomplete representations about the safety and reliability

12                     of the foregoing generally, while purposefully withholding

13                     material facts from the Class that contradicted these

14                     representations.

15       366.   Because Defendants fraudulently concealed the ACU Defect in Class

16   Vehicles and/or the defective airbag systems installed in them, and disclosure of the

17   ACU Defect would cause a reasonable consumer to be deterred from purchasing the

18   Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of

19   the stigma attached to Class Vehicles by Defendants' conduct, they are now worth

20   significantly less than they otherwise would be.

21       367.   Defendants' failure to disclose and active concealment of the dangers

22   and risks posed by the defective airbag systems in Class Vehicles were material to

23   the members of the Class.  A vehicle made by a reputable manufacturer of safe

24   vehicles is worth more than an otherwise comparable vehicle made by a disreputable

25   manufacturer of unsafe vehicles that conceals defects rather than promptly remedies

26   them.

27

28

368.   The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

369.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

370.   As a direct and proximate result of Defendants' violations of the Arkansas DTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

371.   The Class seeks an order awarding damages pursuant to ARK. CODE ANN. §4-88-113(f), and any other just and proper relief under the Arkansas DTPA.

## ARKANSAS COUNT II

### BREACH OF IMPLIED WARRANTIES
### (ARK. CODE ANN. §§4-2-314, 4-2A-103, AND 4-2A-212)
### AGAINST ALL DEFENDANTS

372.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Arkansas, against all Defendants.

373.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under ARK. CODE ANN. §§4-2-104(1) and 4-2A-103(3), and "sellers" of motor vehicles and/or ACUs under §4-2-103(1)(d).

374.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ARK. CODE ANN. §4-2A-103(1)(p).

- 90 -

375.    The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of ARK. CODE ANN. §§4-2-105(1) and 4-2A-103(1)(h).

376.    A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to ARK. CODE ANN. §§4-2-314 and 4-2A-212.

377.    In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to ARK. CODE ANN. §4-2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

378.    The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

379.    Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

380.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## ARKANSAS COUNT III

### BREACH OF EXPRESS WARRANTY
### (ARK. CODE ANN. §§4-2-313, 4-2A-103, AND 4-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

381.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Arkansas, against the Vehicle Manufacturer Defendants.

382.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under ARK. CODE ANN. §§4-2-104(1) and 4-2A-103(3), and "sellers" of motor vehicles under §4-2-103(1)(d).

383.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ARK. CODE ANN. §4-2A-103(1)(p).

384.   The Class Vehicles are and were at all relevant times "goods" within the meaning of ARK. CODE ANN. §§4-2-105(1) and 4-2A-103(1)(h).

385.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited

warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

386.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

387.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

388.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the ACU Defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

389.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe, reliable transportation.

390.   The members of the Class could not have reasonably discovered the ACU Defect.

391.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

392.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as expected and warranted.

393.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in materials that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

394.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given

that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

395.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

396.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

397.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should

have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

398.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

399.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

400.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

401.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

402.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 5.   California

### CALIFORNIA COUNT I

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §17200, *ET SEQ.*) AGAINST ALL DEFENDANTS**

403.   Plaintiffs William Bell, Billy Blaylock, Jason Janson, Richard Narez, Alejandra Renteria, and Remi Rundzio (for the purposes of this section, "Plaintiffs")

1    bring this claim on behalf of themselves and all members of the Class, or alternatively

2    the members of the Class that reside and/or purchased or leased their Class Vehicles

3    in California, against all Defendants.

4        404.   California's Unfair Competition Law ("California UCL"), California

5    Business and Professions Code §17200, prohibits any "unlawful, unfair or fraudulent

6    business act or practices."

7        405.   In the course of their business, Defendants violated the California UCL

8    by engaging in the following unlawful, fraudulent, and unfair business acts and

9    practices:

10               (a)    knowingly and intentionally concealing from Plaintiffs and

11                      members of the Class that the Class Vehicles and/or the defective

12                      airbag systems installed in them suffer from a defect while

13                      obtaining money from Plaintiffs and members of the Class;

14               (b)    marketing the Class Vehicles and/or the defective airbag systems

15                      installed in them as safe, durable, and defect-free; and

16               (c)    violating California statutory and common law prohibiting false

17                      advertising, fraudulent concealment, and breach of implied

18                      warranty.

19       406.   Defendants' scheme and concealment of the true characteristics of the

20   Class Vehicles were material to Plaintiffs and the Class, and Defendants

21   misrepresented, concealed, or failed to disclose the truth with the intention that

22   Plaintiffs and the members of the Class would rely on the misrepresentations,

23   concealments, and omissions.

24       407.   Had they known the truth, Plaintiffs and the members of the Class would

25   not have purchased the Class Vehicles, or would have paid significantly less for them.

26

27

28

408.   Plaintiffs and the Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

409.   Pursuant to CAL. BUS. & PROF. CODE §17200, Plaintiffs and the Class seek any such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§17203 and 3345, and any other just and proper relief available under the California UCL.

**CALIFORNIA COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(CAL. COM. CODE §§2314, 10103, AND 10212)**
**AGAINST ALL DEFENDANTS**

410.   Plaintiffs William Bell, Billy Blaylock, Jason Janson, Richard Narez, Alejandra Renteria, and Remi Rundzio (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in California, against all Defendants.

411.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under CAL. COM. CODE §§2104(1) and 10103(c), and "sellers" of motor vehicles and/or ACUs under §2103(1)(d).

412.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under CAL. COM. CODE §10103(a)(16).

413.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

414.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which

such goods are used is implied by law pursuant to CAL. COM. CODE §§2314 and 10212.

415.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to CAL. COM. CODE §2315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiffs and the members of the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiffs and the members of the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

416.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

417.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by, *inter alia*, numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations.

418.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## CALIFORNIA COUNT III

### BREACH OF EXPRESS WARRANTY
### (CAL. COM. CODE §§2313, 10103, AND 10210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

419.   Plaintiffs William Bell, Billy Blaylock, Jason Janson, Richard Narez, Alejandra Renteria, and Remi Rundzio (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in California, against the Vehicle Manufacturer Defendants.

420.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under CAL. COM. CODE §§2104(1) and 10103(c),  and "sellers" of motor vehicles under §2103(1)(d).

421.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under CAL. COM. CODE §10103(a)(16).

422.   The Class Vehicles are and were at all relevant times "goods" within the meaning of CAL. COM. CODE §§2105(1) and 10103(a)(8).

423.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

424.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

425.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

426.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

427.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

428.   Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

429.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

430.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

431.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the members of the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

432.   Plaintiffs and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were

not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

433. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

434. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

435. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants

and Plaintiffs and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

436.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

437.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

438.   Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

439.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

440.   Accordingly, Plaintiffs and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and  the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**CALIFORNIA COUNT IV**

**VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT
FOR BREACH OF IMPLIED WARRANTIES
(CAL. CIV. CODE §§1791.1 AND 1792)
AGAINST ALL DEFENDANTS**

441.   Plaintiffs William Bell, Billy Blaylock, Jason Janson, Richard Narez, Alejandra Renteria, and Remi Rundzio (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in California, against all Defendants.

442.   The Class Vehicles and defective ACUs are "consumer goods" within the meaning of CAL. CIV. CODE §1791(a).

443.   Defendants are "manufacturers" of the Class Vehicles and/or defective ACUs within the meaning of CAL. CIV. CODE §1791(j).

444.   Defendants impliedly warranted to Plaintiffs and the Class members that the Class Vehicles and/or the defective ACUs were "merchantable" within the meaning of CAL. CIV. CODE §§1791.1(a) and 1792; however, the Class Vehicles and/or the defective ACUs do not have the quality that a buyer would reasonably expect.

445.   CAL. CIV. CODE §1791.1(a) states: "'Implied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label."

- 105 -

446.   The Class Vehicles would not pass without objection in the automotive trade because they are equipped with a defective ACU that was designed, manufactured, and/or installed in such a way that it prevents the airbags and seat belt pretensioners equipped in the Class Vehicles from deploying.   The ACU Defect renders the Class Vehicles unsafe, and thus, not fit for ordinary purposes.

447.   The Class Vehicles and/or defective ACUs are not adequately labeled because the labeling fails to disclose the ACU Defect.

448.   In the various channels of information through which Defendants sold the Class Vehicles and/or defective ACUs, Defendants failed to disclose material information concerning these products, which they had a duty to disclose. Defendants owed Plaintiffs and the Class members a duty to disclose all the material facts concerning the Class Vehicles and/or defective ACUs because Defendants possessed exclusive knowledge, they intentionally concealed such material facts from Plaintiffs and the Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

449.   Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with a defective ACU. Furthermore, this defect has caused Plaintiffs and the Class members to not receive the benefit of their bargain and has caused the Class Vehicles to diminish in value.

450.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class received goods whose dangerous condition substantially impairs their value.

451.   Plaintiffs and the Class members have been damaged as a result of the diminished value of Defendants' products.

452.   Under CAL. CIV. CODE §§1791.1(d) and 1794, Plaintiffs and the Class members are entitled to damages and other legal and equitable relief including, at

1    their election, the purchase price of their Class Vehicles, or the overpayment or

2    diminution in value of their Class Vehicles.

3        453.   Under CAL. CIV. CODE §1794, Plaintiffs and the Class members are

4    entitled to costs and attorneys' fees.

**CALIFORNIA COUNT V**

**VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF EXPRESS WARRANTIES**
**(CAL. CIV. CODE §§1791.2 AND 1793.2)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

9        454.   Plaintiffs William Bell, Billy Blaylock, Jason Janson, Richard Narez,

10   Alejandra Renteria, and Remi Rundzio (for the purposes of this section, "Plaintiffs")

11   bring this claim on behalf of themselves and all members of the Class, or alternatively

12   the members of the Class that reside and/or purchased or leased their Class Vehicles

13   in California, against the Vehicle Manufacturer Defendants.

14       455.   Plaintiffs and the Class members who purchased or leased the Class

15   Vehicles in California are "buyers" within the meaning of CAL. CIV. CODE §1791(b).

16       456.   The Class Vehicles are "consumer goods" within the meaning of CAL.

17   CIV. CODE §1791(a).

18       457.   Vehicle Manufacturer Defendants are "manufacturers" of the Class

19   Vehicles within the meaning of CAL. CIV. CODE §1791(j).

20       458.   Plaintiffs and the Class members bought or leased new motor vehicles

21   manufactured by Vehicle Manufacturer Defendants.

22       459.   Vehicle Manufacturer Defendants made express warranties to Plaintiffs

23   and the Class members within the meaning of CAL. CIV. CODE §§1791.2 and 1793.2,

24   as described above.

25       460.   As set forth above in detail, the Class Vehicles are inherently defective

26   in that they are equipped with defective ACUs that substantially impair the use, value,

27   and safety of the Class Vehicles to reasonable consumers.

28

- 107 -

461.   As a result of Vehicle Manufacturer Defendants' breach of their express warranties, Plaintiffs and the Class members received goods whose dangerous condition substantially impairs their value to them.  Plaintiffs and the members of the Class have been damaged as a result of, *inter alia*, the diminished value of Vehicle Manufacturer Defendants' products, the products' malfunctioning, and the nonuse of their Class Vehicles.

462.   Pursuant to CAL. CIV. CODE §§1793.2 and 1794, Plaintiffs and the Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

463.   Pursuant to CAL. CIV. CODE §1794, Plaintiffs and the Class members are entitled to costs and attorneys' fees.

### 6.   Colorado

### COLORADO COUNT I

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
(COLO. REV. STAT. §6-1-101, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

464.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Colorado, against all Defendants.

465.   The members of the Class and Defendants are "persons" within the meaning of §6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COLO. REV. STAT. §6-1-101, *et seq*.   The members of the Class are "consumers" within the meaning of COLO. REV. STAT. §6-1-113(1)(a).

466.   The Colorado CPA makes unlawful deceptive trade practices in the course of a person's business.  COLO. REV. STAT. §6-1-105.

467.   In the course of Defendants' business, Defendants violated the Colorado CPA by failing to disclose and actively concealing the dangers and risks posed by the

Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in COLO. REV. STAT. §6-1-105, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; and/or failing to disclose material information concerning the Class Vehicles and/or defective ACUs known to Defendants at the time of advertisement or sale, with the intention of inducing the Class members to purchase Class Vehicles.

468.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

469.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Colorado CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

470.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them

were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

471.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

472.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

473.   Defendants knew or should have known that their conduct violated the Colorado CPA.

474.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

475.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

476.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)   intentionally concealed the foregoing from the Class; and/or

(c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

477.  Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

478.  Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

479.  The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

480.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

481.   As a direct and proximate result of Defendants' violations of the Colorado CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

482.   Pursuant to COLO. REV. STAT. §6-1-113, the Class seeks an order awarding damages, treble or punitive damages, and any other just and proper relief available under the Colorado CPA.

## COLORADO COUNT II

### BREACH OF IMPLIED WARRANTIES
### (COLO. REV. STAT. §§4-2-313, 4-2.5-103, AND 4-2.5-212)
### AGAINST ALL DEFENDANTS

483.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Colorado, against all Defendants.

484.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under COLO. REV. STAT. §§4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles and/or ACUs under §4-2-103(1)(d).

485.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under COLO. REV. STAT. §4-2.5-103(1)(p).

486.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§4-2-105(1) and 4-2.5-103(1)(h).

487.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to COLO. REV. STAT. §4-2-314.

488.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to COLO. REV. STAT. §4-2-315.   Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

489.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.   Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

490.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by, *inter alia*, numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations.

491.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## COLORADO COUNT III

### BREACH OF EXPRESS WARRANTY
### (COLO. REV. STAT. §§4-2-313, 4-2.5-103, AND 4-2.5-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

492.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Colorado, against the Vehicle Manufacturer Defendants.

493.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under COLO. REV. STAT. §§4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under §4-2-103(1)(d).

494.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under COLO. REV. STAT. §4-2.5-103(1)(p).

495.   The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§4-2-105(1) and 4-2.5-103(1)(h).

496.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period

of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

497.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

498.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

499.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

500.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

501.   The members of the Class could not have reasonably discovered the ACU Defect.

502. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

503. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

504. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

505. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

506.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

507.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

508.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

509.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

510.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

511.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

512.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

513.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 7.   Connecticut

### CONNECTICUT COUNT I

### VIOLATIONS OF THE CONNECTICUT UNLAWFUL TRADE PRACTICES ACT
### (CONN. GEN. STAT. §42-110A, *ET SEQ.*)
### AGAINST ALL DEFENDANTS

514.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Connecticut, against all Defendants.

515.   The members of the Class and Defendants are "persons" within the meaning of CONN. GEN. STAT. §42-110a(3) of the Connecticut Unfair Trade Practices Act ("Connecticut UTPA").

516.   Defendants are engaged in "trade" or "commerce" within the meaning of CONN. GEN. STAT. §42-110a(4).

517.   The Connecticut UTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. §42-110b(a).

518.   In the course of Defendants' business, Defendants violated the Connecticut UTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of CONN. GEN. STAT. §42-110b(a), including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or using or employing deception, fraud false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and the sale of the Class Vehicles and/or the defective airbag systems installed in them, whether or not any person has in fact been misled, deceived or damaged thereby.

519.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

520.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Connecticut UTPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

521.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

522.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

523.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

524.   Defendants knew or should have known that their conduct violated the Connecticut UTPA.

525.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

526.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

527.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)   intentionally concealed the foregoing from the Class; and/or

(c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

528.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

- 121 -

529.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

530.   The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.   The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

531.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

532.   As a direct and proximate result of Defendants' violations of the Connecticut UTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

533.   Pursuant to CONN. GEN. STAT. §42-110g, the Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Connecticut UTPA.

## CONNECTICUT COUNT II

### BREACH OF IMPLIED WARRANTIES
### (CONN. GEN. STAT. ANN. §§42A-2-314 AND 42A-2-315)
### AGAINST ALL DEFENDANTS

534.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Connecticut, against all Defendants.

535.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under CONN. GEN. STAT. ANN. §42a-2-104(1)(c), and "sellers" of motor vehicles and/or ACUs under §42a-2-103(1)

536.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of CONN. GEN. STAT. ANN. §42a-2-105(1).

537.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to CONN. GEN. STAT. ANN. §42a-2-314.

538.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to CONN. GEN. STAT. ANN. §42a-2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

539.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently

1    defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt

2    pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe

3    and reduces their value.

4         540.   Defendants were provided notice of these issues by the numerous

5    consumer complaints against them regarding the ACU Defect, by numerous

6    individual letters and communications sent by Plaintiffs and others within a

7    reasonable amount of time after the allegations of the ACU Defect became public,

8    and by internal and NHTSA investigations, *inter alia*.

9         541.   As a direct and proximate result of Defendants' breach of the implied

10   warranty of merchantability, the members of the Class have been damaged in an

11   amount to be proven at trial.

12                              **CONNECTICUT COUNT III**

13                        **BREACH OF EXPRESS WARRANTY**
                       **(CONN. GEN. STAT. ANN. §42A-2-313)**
14            **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

15        542.   Plaintiffs bring this claim on behalf of all members of the Class, or

16   alternatively the members of the Class that reside and/or purchased or leased their

17   Class Vehicles in Connecticut, against the Vehicle Manufacturer Defendants.

18        543.   Vehicle Manufacturer Defendants are and were at all relevant times

19   "merchants" with respect of motor vehicles under CONN. GEN. STAT. ANN. §42a-2-

20   104(1), and "sellers" of motor vehicles under §42a-2-103(1)(c).

21        544.   The Class Vehicles are and were at all relevant times "goods" within the

22   meaning of CONN. GEN. STAT. ANN. §42a-2-105(1).

23        545.   In connection with the purchase of all Class Vehicles, Vehicle

24   Manufacturer Defendants provided express warranties.  Kia provides a limited basic

25   warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

26   repairs to vehicles that fail to function properly during normal use.  Honda provides

27   a New Vehicle Limited Warranty for a period of three years or 36,000 miles,

28

                                        - 124 -

whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

546.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

547.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

548.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the

- 125 -

Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

549.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

550.   The members of the Class could not have reasonably discovered the ACU Defect.

551.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

552.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

553.  Specifically,  on  information  and  belief,  Vehicle  Manufacturer Defendants breached their express warranties (including the implied covenant of good  faith  and  fair  dealing)  by:  (a)  knowingly  providing  the  Class  with  Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

554.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

555.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

556.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

557.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which

unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

558. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

559. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

560. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

561. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

562. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 8.   Delaware

### DELAWARE COUNT I

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT**
**(DEL. CODE ANN. TIT. 6, §2513, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

563.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Delaware, against all Defendants.

564.   The members of the Class and Defendants are "persons" within the meaning of DEL. CODE ANN. tit. 6, §2511(7).

565.   The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 DEL. CODE ANN. tit. 6, §2513(a).

566.   In the course of Defendants' business, Defendants violated the Delaware CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants used or employed deception, fraud, false pretense, false promise or misrepresentations, and the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale of the Class Vehicles and/or the defective airbag systems installed in them.

567.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

568.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Delaware CFA.   Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

569.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.   Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

570.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

571.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

572.   Defendants knew or should have known that their conduct violated the Delaware CFA.

573.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

574.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

575.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

    (a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    (b)   intentionally concealed the foregoing from the Class; and/or

    (c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

576.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

577.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

578.   The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.   The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

579.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

580.   As a direct and proximate result of Defendants' violations of the Delaware CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

581.   Pursuant to DEL. CODE ANN. tit. 6, §2525, the Class seeks an order awarding damages, punitive or treble damages, and any other just and proper relief under the Delaware CFA.

# DELAWARE COUNT II

## VIOLATIONS OF THE DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (DEL, CODE ANN. TIT. 6, §2531, *ET SEQ.*)
### AGAINST ALL DEFENDANTS

582.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Delaware, against all Defendants.

583.   The members of the Class and Defendants are "persons" within the meaning DEL. CODE ANN. tit. 6, §2531(5).

584.   The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes unlawful deceptive trade practices in the course of a person's business.

585.   In the course of Defendants' business, Defendants violated the Delaware DTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in DEL. CODE ANN. tit. 6, §2532(a), including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; and/or engaging in other conduct which created a likelihood of confusion or of misunderstanding.

586.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

587. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Delaware DTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

588. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

589. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

590. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

591. Defendants knew or should have known that their conduct violated the Delaware DTPA.

592.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

593.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

594.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)   intentionally concealed the foregoing from the Class; and/or

(c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

595.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

596.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to

the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

597.  The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

598.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

599.  As a direct and proximate result of Defendants' violations of the Delaware DTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

600.  Pursuant to DEL. CODE ANN. tit. 6, §2533, the Class seeks an order awarding damages, punitive or treble damages, and any other just and proper relief under the Delaware DTPA.

### DELAWARE COUNT III

**BREACH OF IMPLIED WARRANTIES**
**(DEL, CODE ANN. TIT. 6, §§2-314, 2A-103 AND 2A-212)**
**AGAINST ALL DEFENDANTS**

601.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Delaware, against all Defendants.

602.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under DEL. CODE ANN. tit. 6, §§2-104(1) and 2A-103(3), and "sellers" of motor vehicles and/or ACUs under §2-103(1)(d).

603.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under DEL. CODE ANN. tit. 6, §2A-103(1)(p).

604.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of DEL. CODE ANN. tit. 6, §§2-105(1) and 2A-103(1)(h).

605.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to DEL. CODE ANN. tit. 6, §2-314 and 2A-212.

606.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to DEL. CODE ANN. tit. 6, §2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

607.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

608. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

609. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### DELAWARE COUNT IV

**BREACH OF EXPRESS WARRANTY**
**(DEL. CODE ANN. TIT. 6, §§2-313, 2A-103, AND 2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

610. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Delaware, against the Vehicle Manufacturer Defendants.

611. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under DEL. CODE ANN. tit. 6, §§2-104(1) and 2A-103(3), and "sellers" of motor vehicles under §2-103(1)(d).

612. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under DEL. CODE ANN. tit. 6, §2A-103(1)(p).

613. The Class Vehicles are and were at all relevant times "goods" within the meaning of DEL. CODE ANN. tit. 6, §§2-105(1) and 2A-103(1)(h).

614. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles,

whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

615.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

616.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

617.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the

1   Class that the Class Vehicles contained the ACU Defect during the warranty periods
2   in order to wrongfully transfer the costs of repair or replacement of the defective
3   airbag systems to the members of the Class.

4       618.   Because of the ACU Defect, the Class Vehicles are not safe and reliable
5   and owners and lessees of these vehicles have lost confidence in the ability of Class
6   Vehicles to perform the function of safe reliable transportation.

7       619.   The members of the Class could not have reasonably discovered the
8   ACU Defect.

9       620.   The Vehicle Manufacturer Defendants breached their express
10  warranties promising to repair and correct a manufacturing defect or defects in
11  materials or workmanship of any parts they supplied.

12      621.   The Vehicle Manufacturer Defendants further breached their express
13  warranties by selling Class Vehicles that were defective with respect to materials,
14  workmanship, and manufacture when the Vehicle Manufacturer Defendants knew
15  the defective airbag systems contained the ACU Defect and had an associated safety
16  risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary
17  purposes for which passenger vehicles are used because of materials, workmanship,
18  and manufacture defects preventing airbags and seatbelt pretensioners from
19  performing as warranted.

20      622.   Specifically, on information and belief, Vehicle Manufacturer
21  Defendants breached their express warranties (including the implied covenant of
22  good faith and fair dealing) by: (a) knowingly providing the Class with Class
23  Vehicles containing defects in material that were never disclosed to the Class; (b)
24  failing to repair or replace the defective Class Vehicles at no cost within the warranty
25  period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith;
26  and (d) supplying products and materials that failed to conform to the representations
27  made by Vehicle Manufacturer Defendants.

28

623.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

624.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

625.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

626.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which

unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

627. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

628. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

629. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

630. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

631. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**9. District of Columbia**

**DISTRICT OF COLUMBIA COUNT I**

**VIOLATIONS OF THE CONSUMER PROTECTION PROCEDURES ACT**
**(D.C. CODE §28-3901, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

632. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in District of Columbia, against all Defendants.

633. The members of the Class and Defendants are "persons" within the meaning of D.C. CODE §28-3901(a)(1). The Class members are "consumers" within the meaning of D.C. CODE §28-3901(a)(2).

634. Defendants were and are engaged in "trade practices" within the meaning of D.C. CODE §28-3901(a)(6).

635. The District of Columbia Consumer Protection Procedures Act ("District of Columbia CPPA") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. D.C. CODE §28-3901, *et seq.*

636. In the course of Defendants' business, Defendants violated the District of Columbia CPPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in D.C. CODE §28-3901, *et seq.*, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

637.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

638.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the District of Columbia CPPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

639.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

640.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

641.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

642.   Defendants knew or should have known that their conduct violated the District of Columbia CPPA.

643.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

644.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

645.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

    (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    (b)    intentionally concealed the foregoing from the Class; and/or

    (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

646.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

647.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

648.   The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.   The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

649.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

650.   Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.

651.   Defendants' unlawful acts and practices complained of herein affect the public interest.

652.   As a direct and proximate result of Defendants' violations of the District of Columbia CPPA, the members of the Class have suffered injury-in-fact and/or actual damage.

653.   Pursuant to D.C. CODE §28-3901, the Class seeks an order awarding damages, treble and/or punitive damages, and any other just and proper relief available under the District of Columbia CPPA.

# DISTRICT OF COLUMBIA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (D.C. CODE §§28:2-314, 28:2A-103, AND 28:2A-212)
### AGAINST ALL DEFENDANTS

654.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in District of Columbia, against all Defendants.

655.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under D.C. CODE §28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles and/or ACUs under §28:2-103(1)(d).

656.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. CODE §28:2A-103(a)(16).

657.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of D.C. CODE §§28:2-105(1) and 28:2A-103(a)(8).

658.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to D.C. CODE §§28:2-314 and 28:2A-212.

659.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to D.C. CODE §28:2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

660.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable

1   condition, not fit for the ordinary purpose, and not fit for their particular purpose as
2   a result of their inherent defects, as detailed above.  Specifically, they are inherently
3   defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt
4   pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe
5   and reduces their value.

6       661.   Defendants were provided notice of these issues by the numerous
7   consumer complaints against them regarding the ACU Defect, by numerous
8   individual letters and communications sent by Plaintiffs and others within a
9   reasonable amount of time after the allegations of the ACU Defect became public,
10  and by internal and NHTSA investigations, *inter alia*.

11      662.   As a direct and proximate result of Defendants' breach of the implied
12  warranty of merchantability, the members of the Class have been damaged in an
13  amount to be proven at trial.

14                     **DISTRICT OF COLUMBIA COUNT III**

15                        **BREACH OF EXPRESS WARRANTY**
                  **(D.C. CODE §§28:2-313, 28:2A-103, AND 28:2A-210)**
16              **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

17      663.   Plaintiffs bring this claim on behalf of all members of the Class, or
18  alternatively the members of the Class that reside and/or purchased or leased their
19  Class Vehicles in District of Columbia, against the Vehicle Manufacturer
20  Defendants.

21      664.   Vehicle Manufacturer Defendants are and were at all relevant times
22  "merchants" with respect to of motor vehicles under D.C. CODE §§28:2-104(1) and
23  28:2A-103(a)(20), and "sellers" of motor vehicles under §28:2-103(1)(d)

24      665.   With respect to leases, Vehicle Manufacturer Defendants are and were
25  at all relevant times "lessors" of motor vehicles under D.C. CODE §28:2A-103(a)(16).

26      666.   The Class Vehicles are and were at all relevant times "goods" within the
27  meaning of D.C. CODE §§28:2-105(1) and 28:2A-103(a)(8).

28
                                    - 148 -

667.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

668.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

669.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

670.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

671.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

672.   The members of the Class could not have reasonably discovered the ACU Defect.

673.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

674.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

675.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class

Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

676.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

677.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

678.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

679.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty

limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

680.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

681.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

682.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

683.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

684.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class

of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 10.   Florida

### FLORIDA COUNT I

**VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**(FLA. STAT. §501.201, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

685.   Plaintiffs Maximillian Accetta, Jan Freyman, Maureen Heiner, Jessica Kelly, Fredericka McPherson, Pedro Sepulveda Ramirez, Curtis Resta, Moises Senti, Vania Silva, and Gerald Strauss (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Florida, against all Defendants.

686.   Plaintiffs and the members of the Class are "consumers" within the meaning of FLA. STAT. §501.203(7).

687.   Defendants were and are engaged in "trade" or "commerce" within the meaning of FLA. STAT. §501.203(8).

688.   The Florida Deceptive and Unfair Trade Practices Act ("Florida DUTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. §501.204(1).

689.   In the course of Defendants' business, Defendants violated the Florida DUTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by

FLA. STAT. §501.204(1), including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or using or employing deception, fraud false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and the sale of the Class Vehicles and/or the defective airbag systems installed in them.

690.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

691.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Florida DUTPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

692.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

693.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

694.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiffs and the members of the Class.

695.   Defendants knew or should have known that their conduct violated the Florida DUTPA.

696.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

697.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

698.   Defendants owed Plaintiffs and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)     intentionally concealed the foregoing from Plaintiffs and the Class; and/or

(c)     made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

699.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

700.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiffs and the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

701.   Plaintiffs and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiffs and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

702.   Plaintiffs and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

703.   As a direct and proximate result of Defendants' violations of the Florida DUTPA, Plaintiffs and the members of the Class have suffered injury-in-fact and/or actual damage.

### FLORIDA COUNT II

**BREACH OF IMPLIED WARRANTIES
(FLA. STAT. §§672.314, 672.315, 680.212, AND 680.1031)
AGAINST ALL DEFENDANTS**

704.   Plaintiffs Maximillian Accetta, Jan Freyman, Maureen Heiner, Jessica Kelly, Fredericka McPherson, Pedro Sepulveda Ramirez, Curtis Resta, Moises Senti, Vania Silva, and Gerald Strauss (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Florida, against all Defendants.

705.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under FLA. STAT. §§672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles and/or ACUs under §672.103(1)(d).

706.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. §680.1031(1)(p).

707.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

708.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to FLA. STAT. §672.314.

709.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law

pursuant to FLA. STAT. §672.315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiffs and the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiffs and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

710.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

711.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

712.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## FLORIDA COUNT III

### BREACH OF EXPRESS WARRANTY
### (FLA. STAT. §672.313, 680.21, AND 680.1031)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

713.   Plaintiffs Maximillian Accetta, Jan Freyman, Maureen Heiner, Jessica Kelly, Fredericka McPherson, Pedro Sepulveda Ramirez, Curtis Resta, Moises Senti, and Vania Silva, and Gerald Strauss (for the purposes of this section, "Plaintiffs")

1  bring this claim on behalf of themselves and all members of the Class, or alternatively
2  the members of the Class that reside and/or purchased or leased their Class Vehicles
3  in Florida, against the Vehicle Manufacturer Defendants.

4  714.   Vehicle Manufacturer Defendants are and were at all relevant times
5  "merchants" with respect to of motor vehicles under FLA. STAT. §§672.104(1) and
6  680.1031(3)(k), and "sellers" of motor vehicles under §672.103(1)(d).

7  715.   With respect to leases, Vehicle Manufacturer Defendants are and were
8  at all relevant times "lessors" of motor vehicles under FLA. STAT. §680.1031(1)(p).

9  716.   The Class Vehicles are and were at all relevant times "goods" within the
10  meaning of FLA. STAT. §§672.105(1) and 680.1031(1)(h).

11  717.   In connection with the purchase of all Class Vehicles, Vehicle
12  Manufacturer Defendants provided express warranties.  Kia provides a limited basic
13  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers
14  repairs to vehicles that fail to function properly during normal use.  Honda provides
15  a New Vehicle Limited Warranty for a period of three years or 36,000 miles,
16  whichever occurs first, and covers any repair or replacement of any part that is
17  defective in material or workmanship under normal use.  Toyota provides a New
18  Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever
19  occurs first, and covers repairs and adjustments needed to correct defects in materials
20  or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited
21  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers
22  the repair of any item on a vehicle that is defective in material, workmanship, or
23  factory preparation.  Hyundai provides a new vehicle limited warranty for a period
24  of five years or 60,000 miles, whichever occurs first, and covers the repair or
25  replacement of any component manufactured or originally installed by Hyundai that
26  is defective in material or factory workmanship, under normal use and maintenance.
27  Mitsubishi provides a new vehicle limited warranty and a restraint system warranty
28

- 159 -

for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

718.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiffs and the Class.

719.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

720.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

721.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

722.   Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

723.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

724.    The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

725.    Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiffs and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

726.    Plaintiffs and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

727.    Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

728.    The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to

their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

729.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and the members of the Class. Among other things, Plaintiffs and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiffs and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

730.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

731.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

732.   Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

733.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

734.   Accordingly, Plaintiffs and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

**11.   Georgia**

**GEORGIA COUNT I**

**VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN. §10-1-370, *ET SEQ.*) AGAINST ALL DEFENDANTS**

735.   Plaintiff Ann Marie Gray (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Georgia, against all Defendants.

736.   Plaintiff, the members of the Class, and Defendants are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE ANN. §10-1-371(5)

737.   The Georgia UDTPA prohibits any "deceptive trade practice," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE ANN. §10-1-372(a).

738.   In the course of Defendants' business, Defendants violated the Georgia UDTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following deceptive trade practices, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; and/or engaging in other conduct which created a likelihood of confusion or of misunderstanding.

739.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

740.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Georgia UDTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

741.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

742.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

743.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff and the members of the Class.

744.   Defendants knew or should have known that their conduct violated the Georgia UDTPA.

745.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

746.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

747.   Defendants owed Plaintiff and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from Plaintiff and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

748.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

749.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff and the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

750.   Plaintiff and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for

safety, Plaintiff and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

751.   Plaintiff and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

752.   As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiff and the members of the Class have suffered injury-in-fact and/or actual damage.

753.   Pursuant to GA. CODE ANN. §10-1-373, Plaintiff and the members of the Class seek any such orders or judgments as may be necessary to restore to Plaintiff and the members of the Class any money acquired by deceptive trade practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Georgia UDTPA.

## GEORGIA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (GA. CODE ANN. §§11-2A-103, 11-2A-212, 11-2-314, AND 11-2-315) AGAINST ALL DEFENDANTS

754.   Plaintiff Ann Marie Gray (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Georgia, against all Defendants.

755.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under GA. CODE ANN. §§11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles and/or ACUs under §11-2-103(1)(d).

756.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under GA. CODE ANN. §11-2A-103(1)(p).

757.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of GA. CODE ANN. §§11-2-105(1) and 11-2A-103(1)(h).

758.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to GA. CODE ANN. §§11-2-314 and 11-2A-212.

759.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to GA. CODE ANN. §11-2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiff and the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

760.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

761.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous

individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

762.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

**GEORGIA COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(GA. CODE ANN. §§11-2-313, 11-2A-103, AND 11-2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

763.   Plaintiff Ann Marie Gray (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Georgia, against the Vehicle Manufacturer Defendants.

764.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under GA. CODE ANN. §§11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under §11-2-103(1)(d).

765.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under GA. CODE ANN. §11-2A-103(1)(p).

766.   The Class Vehicles are and were at all relevant times "goods" within the meaning of GA. CODE ANN. §§11-2-105(1) and 11-2A-103(1)(h).

767.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is

defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

768.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiff and the Class.

769.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

770.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect

during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

771. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

772. Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

773. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

774. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

775. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

776. Plaintiff and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

777. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff and the members of the Class is not limited to the warranties' remedies.

778. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

779. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the members of the Class. Among other things, Plaintiff and the members of the Class did not determine these time

limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

780. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

781. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

782. Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

783. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

784. Accordingly, Plaintiff and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 12.   Hawaii

### HAWAII COUNT I

**UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW
(HAW. REV. STAT. §480, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

785.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Hawaii, against all Defendants.

786.   Defendants are "persons" within the meaning of HAW. REV. STAT. §480-1.   The members of the Class are "consumers" within the meaning of HAW. REV. STAT. §480-1.

787.   Defendants' actions as set forth above occurred in the conduct of trade or commerce.

788.   HAW. REV. STAT. §480-2(a) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

789.   In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described above, and otherwise engaged in activities with a tendency or capacity to deceive.   Accordingly, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be

- 174 -

1  other than it actually is; and/or failing to reveal facts that are material to the
2  transaction in light of representations of fact made in a positive manner.

3  790.  Defendants have known of the ACU Defect in their defective airbag
4  systems and failed to disclose and actively concealed the dangers and risks posed by
5  the Class Vehicles and/or the defective airbag systems installed in them.

6  791.  By failing to disclose and by actively concealing the ACU Defect in the
7  Class Vehicles and/or the defective airbag systems installed in them, by marketing
8  them as safe, reliable, and of high quality, and by presenting themselves as reputable
9  manufacturers that value safety, Defendants engaged in unfair or deceptive business
10  practices in violation of HAW. REV. STAT. §480, *et seq.*  Defendants deliberately
11  withheld the information about the propensity of the defective airbag systems to fail
12  to deploy during an accident, in order to ensure that consumers would purchase the
13  Class Vehicles.

14  792.  In the course of Defendants' business, they willfully failed to disclose
15  and actively concealed the dangerous risks posed by the many safety issues and
16  serious defect discussed above.  Defendants compounded the deception by repeatedly
17  asserting that the Class Vehicles and/or the defective airbag systems installed in them
18  were safe, reliable, and of high quality, and by claiming to be reputable manufacturers
19  that value safety.

20  793.  Defendants' unfair or deceptive acts or practices, including these
21  concealments, omissions, and suppressions of material facts, had a tendency or
22  capacity to mislead, tended to create a false impression in consumers, were likely to
23  and did in fact deceive reasonable consumers, including the members of the Class,
24  about the true safety and reliability of Class Vehicles and/or the defective airbag
25  systems installed in them, the quality of Defendants' brands, and the true value of the
26  Class Vehicles.

27
28

794. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

795. Defendants knew or should have known that their conduct violated HAW. REV. STAT. §480, *et seq.*

796. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

797. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

798. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

799. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the

Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

800.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

801.   The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

802.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

803.   Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.

804.   Defendants' unlawful acts and practices complained of herein affect the public interest.

805.   As a direct and proximate result of Defendants' violations of HAW. REV. STAT. §480, *et seq.*, the members of the Class have suffered injury-in-fact and/or actual damage.

806.   Pursuant to HAW. REV. STAT. §480-13, the Class seeks monetary relief against Defendants measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

807.   Under HAW. REV. STAT. §480-13.5, the Class seeks an additional award against Defendants of up to $10,000 for each violation directed at a Hawaiian elder. Defendants knew or should have known that their conduct was directed to one or more Class members who are elders.  Defendants' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  One or more Class members who are elders are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

**HAWAII COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(HAW. REV. STAT. §§490:2-314, 490:2A-103, 490:2A-212, AND 490:2-315)**
**AGAINST ALL DEFENDANTS**

808.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Hawaii, against all Defendants.

809.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under HAW. REV. STAT. §§490:2-104(1) and 490:2A-103(c), and "sellers" of motor vehicles and/or ACUs under §490:2-103(1)(d).

810.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under HAW. REV. STAT. §490:2A-103(a)(16).

811.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of HAW. REV. STAT. §§490:2-105(1) and 490:2A-103(a)(8).

812.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to HAW. REV. STAT. §§490:2-314 and 490:2A-212.

813.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to HAW. REV. STAT. §490:2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

814.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

815.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

816.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## HAWAII COUNT III

### BREACH OF EXPRESS WARRANTY
### (HAW. REV. STAT. §§490:2-13, 490:2A-103, AND 490:2A-212)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

817.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Hawaii, against the Vehicle Manufacturer Defendants.

818.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under HAW. REV. STAT. §§490:2-104(1) and 490:2A-103(c), and "sellers" of motor vehicles under §490:2-103(1)(d).

819.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under HAW. REV. STAT. §490:2A-103(a)(16).

820.   The Class Vehicles are and were at all relevant times "goods" within the meaning of HAW. REV. STAT. §§490:2-105(1) and 490:2A-103(a)(8).

821.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited

- 180 -

warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

822. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

823. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

824. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

825.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

826.   The members of the Class could not have reasonably discovered the ACU Defect.

827.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

828.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

829.  Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

830.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given

that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

831.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

832.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

833.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should

1   have known that the Class Vehicles were defective at the time of sale or lease and

2   that the defective airbag systems would fail to deploy during an accident.

3       834.    Further, the limited warranties promising to repair and/or correct a

4   manufacturing defect fail in their essential purpose because the contractual remedies

5   are insufficient to make the members of the Class whole because, on information and

6   belief, the Vehicle Manufacturer Defendants have failed and/or have refused to

7   adequately provide the promised remedies within a reasonable time.

8       835.    The Vehicle Manufacturer Defendants knew that the Class Vehicles

9   were inherently defective and did not conform to their warranties and the members

10  of the Class were induced to purchase or lease the Class Vehicles under false and/or

11  fraudulent pretenses.

12      836.    The members of the Class have been excused from performance of any

13  warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct

14  described herein.

15      837.    As a direct and proximate result of Vehicle Manufacturer Defendants'

16  breach of express warranties, the members of the Class have been damaged in an

17  amount to be determined at trial.

18      838.    Accordingly, the Class asserts as additional and/or alternative remedies,

19  the revocation of acceptance of the goods and the return to the members of the Class

20  of the purchase price of all Class Vehicles currently owned or leased, and for such

21  other incidental and consequential damages as allowed.

22

23

24

25

26

27

28

1

2

3

4

**13.   Idaho**

**IDAHO COUNT I**

**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
(IDAHO CODE §48-601, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

5      839.   Plaintiffs bring this claim on behalf of all members of the Class, or

6   alternatively the members of the Class that reside and/or purchased or leased their

7   Class Vehicles in Idaho, against all Defendants.

8      840.   Defendants and the members of the Class are "persons" within the

9   meaning of IDAHO CODE §48-602(1).

10      841.   Defendants are engaged in "trade" or "commerce" within the meaning

11   of IDAHO CODE §48-602(2).

12      842.   The Class Vehicles are "goods" within the meaning of IDAHO CODE §48-

13   602(6).

14      843.   The Idaho Consumer Protection Act ("Idaho CPA") makes unlawful

15   misleading, false, or deceptive acts.  IDAHO CODE §48-601, *et seq.*

16      844.   In the course of Defendants' business, Defendants violated the Idaho

17   CPA by failing to disclose and actively concealing the dangers and risks posed by the

18   Class Vehicles and/or the defective airbag systems installed in them, as described

19   above.  Specifically, in marketing, offering for sale, and selling the defective Class

20   Vehicles and/or the defective airbag systems installed in them, Defendants engaged

21   in one or more of the following unfair or deceptive acts or practices proscribed by

22   IDAHO CODE §48-603, including: representing that the Class Vehicles and/or the

23   defective airbag systems installed in them have characteristics or benefits that they

24   do not have; representing that they are of a particular standard and quality when they

25   are not; advertising them with the intent not to sell them as advertised; and/or

26   engaging in other conduct which created a likelihood of confusion or of

27   misunderstanding.

28

845.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

846.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Idaho CPA.   Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

847.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

848.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

849.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

850.   Defendants knew or should have known that their conduct violated the Idaho CPA.

851.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

852.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

853.   Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)    intentionally concealed the foregoing from the Class; and/or

(c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

854.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

855.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

856.    The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.   The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

857.    The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

858.    As a direct and proximate result of Defendants' violations of the Idaho CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

859.    Pursuant to IDAHO CODE §48-608, the Class seeks an order awarding damages, punitive damages, and any other just and proper relief available under the Idaho CPA.

## IDAHO COUNT II

### BREACH OF IMPLIED WARRANTIES
### (IDAHO CODE §§28-2-314, 28-12-103, 28-12-212, AND 28-2-315)
### AGAINST ALL DEFENDANTS

860.    Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Idaho, against all Defendants.

861.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under IDAHO CODE §§28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles and/or ACUs under §28-2-103(1)(d).

862.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under IDAHO CODE §28-12-103(1)(p).

863.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of IDAHO CODE §§28-2-105(1) and 28-12-103(1)(h).

864.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to IDAHO CODE §28-2-314.

865.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to IDAHO CODE §28-2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

866.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

867.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous

individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

868.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## IDAHO COUNT III

### BREACH OF EXPRESS WARRANTY
### (IDAHO CODE §§28-2-313, 28-12-103, AND 28-12-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

869.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Idaho, against the Vehicle Manufacturer Defendants.

870.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under IDAHO CODE §§28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under §28-2-103(1)(d).

871.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under IDAHO CODE §28-12-103(1)(p).

872.   The Class Vehicles are and were at all relevant times "goods" within the meaning of IDAHO CODE §§28-2-105(1) and 28-12-103(1)(h).

873.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever

occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

874.   In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

875.   Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

876.   The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

877.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

878.   The members of the Class could not have reasonably discovered the ACU Defect.

879.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

880.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

881.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

882.   The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given

that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

883.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

884.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

885.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should

have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

886.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

887.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

888.   The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

889.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

890.   Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 14.   Illinois

### ILLINOIS COUNT I

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. §§505/1, *ET SEQ.* AND 510/2) AGAINST ALL DEFENDANTS**

891.   Plaintiff Lynn Cox (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the

1  members of the Class that reside and/or purchased or leased their Class Vehicles in
2  Illinois, against all Defendants.

3      892.   Defendants, Plaintiff, and the members of the Class are "persons" within
4  the meaning of 815 ILL. COMP. STAT. §§505/1(c) and 510/1(5).   Plaintiff and the
5  members of the Class are "consumers" within the meaning of 815 ILL. COMP. STAT.
6  §505/1(e).

7      893.   The Illinois Consumer Fraud and Deceptive Practices Act ("Illinois
8  CFA") makes unlawful "unfair or deceptive acts or practices, including, but not
9  limited to, the use or employment of any deception, fraud, false pretense, false
10 promise, misrepresentation or the concealment, suppression or omission of any
11 material fact, with intent that others rely upon the concealment, suppression or
12 omission of such material fact …in the conduct of trade or commerce …whether any
13 person has in fact been misled, deceived or damaged thereby." 815 ILL. COMP. STAT.
14 §505/2.   The Illinois CFA further makes unlawful deceptive trade practices
15 undertaken in the course of business.  815 ILL. COMP. STAT. §510/2.

16     894.   In the course of Defendants' business, Defendants violated the Illinois
17 CFA by failing to disclose and actively concealing the dangers and risks posed by the
18 Class Vehicles and/or the defective airbag systems installed in them, as described
19 above.  Specifically, in marketing, offering for sale, and selling the defective Class
20 Vehicles and/or the defective airbag systems installed in them, Defendants engaged
21 in one or more of the following unfair or deceptive acts or practices prohibited by
22 815 ILL. COMP. STAT. §§505/2 and 510/2, including: representing that the Class
23 Vehicles and/or the defective airbag systems installed in them have characteristics or
24 benefits that they do not have; representing that they are of a particular standard and
25 quality when they are not; advertising them with the intent not to sell them as
26 advertised; engaging in other conduct which created a likelihood of confusion or of
27 misunderstanding; and/or using or employing deception, fraud, false pretense, false

28

promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and the sale of the Class Vehicles and/or the defective airbag systems installed in them, whether or not any person has in fact been misled, deceived or damaged thereby.

895.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

896.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Illinois CFA.   Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

897.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.   Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

898.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective

1    airbag systems installed in them, the quality of Defendants' brands, and the true value

2    of the Class Vehicles.

3    899.   Defendants intentionally and knowingly misrepresented material facts

4    regarding the Class Vehicles and/or the defective airbag systems installed in them

5    with an intent to mislead Plaintiff and the members of the Class.

6    900.   Defendants knew or should have known that their conduct violated the

7    Illinois CFA.

8    901.   As alleged above, Defendants made material statements about the safety

9    and reliability of the Class Vehicles and/or the defective airbag systems installed in

10   them that were either false or misleading.

11   902.   To protect their profits and to avoid remediation costs and a public

12   relations nightmare, Defendants concealed the dangers and risks posed by the Class

13   Vehicles and/or the defective airbag systems installed in them and their tragic

14   consequences, and allowed unsuspecting new and used car purchasers to continue to

15   buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous

16   vehicles.

17   903.   Defendants owed Plaintiff and the members of the Class a duty to

18   disclose the true safety and reliability of the Class Vehicles and/or the defective

19   airbag systems installed in them because Defendants:

20          (a)   possessed exclusive knowledge of the dangers and risks posed
21                by the foregoing;

22          (b)   intentionally concealed the foregoing from Plaintiff and the
23                Class; and/or

24          (c)   made incomplete representations about the safety and reliability
25                of the foregoing generally, while purposefully withholding
26                material facts from Plaintiff and the Class that contradicted these
27                representations.

28

904.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

905.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff and the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

906.   Plaintiff and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

907.   Plaintiff and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

908.   Defendants' violations present a continuing risk to Plaintiff and the members of the Class, as well as to the general public.

909.   Defendants' unlawful acts and practices complained of herein affect the public interest.

910.   As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff and the members of the Class have suffered injury-in-fact and/or actual damage.

911.   Pursuant to 815 ILL. COMP. STAT. §§505/10a(a) and 510/3, Plaintiff, and the Class seek an order awarding damages, punitive damages, and any other just and proper relief available under the Illinois CFA.

**ILLINOIS COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(810 ILL. COMP. STAT. §§5/2-314, 5/2A-103, 5/2A-212, AND 5/2-315)**
**AGAINST ALL DEFENDANTS**

912.   Plaintiff Lynn Cox (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Illinois, against all Defendants.

913.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under 810 ILL. COMP. STAT. §§5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles and/or ACUs under §5/2-103(1)(d).

914.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILL. COMP. STAT. §5/2A-103(1)(p).

915.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. §§5/2-105(1) and 5/2A-103(1)(h).

916.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILL. COMP. STAT. §5/2-314.

917.   In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law

1  pursuant to 810 ILL. COMP. STAT. §5/2-315.  Defendants knew at the time of sale of
2  the Class Vehicles and/or the defective ACUs installed in them, that Plaintiff and the
3  Class intended to use the vehicles in a manner requiring a particular standard of
4  performance and durability, and that Plaintiff and the Class were relying on
5  Defendants' skill and judgment to furnish suitable products for this particular
6  purpose.

7       918.   The Class Vehicles and/or the defective ACUs installed in them, when
8  sold or leased (if applicable) and at all times thereafter, were not in merchantable
9  condition, not fit for the ordinary purpose, and not fit for their particular purpose as
10  a result of their inherent defects, as detailed above.  Specifically, they are inherently
11  defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt
12  pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe
13  and reduces their value.

14       919.   Defendants were provided notice of these issues by the numerous
15  consumer complaints against them regarding the ACU Defect, by numerous
16  individual letters and communications sent by Plaintiffs and others within a
17  reasonable amount of time after the allegations of the ACU Defect became public,
18  and by internal and NHTSA investigations, *inter alia*.

19       920.   As a direct and proximate result of Defendants' breach of the implied
20  warranty of merchantability, Plaintiff and the members of the Class have been
21  damaged in an amount to be proven at trial.

22                          **ILLINOIS COUNT III**

23                  **BREACH OF EXPRESS WARRANTY**
    **(810 ILL. COMP. STAT. §§5/2-313, 5/2A-103, AND 5/2A-210)**
24          **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

25       921.   Plaintiff Lynn Cox (for the purposes of this section, "Plaintiff") brings
26  this claim on behalf of herself and all members of the Class, or alternatively the

27

28

members of the Class that reside and/or purchased or leased their Class Vehicles in Illinois, against the Vehicle Manufacturer Defendants.

922.   Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under 810 ILL. COMP. STAT. §§5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under §5/2-103(1)(d).

923.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILL. COMP. STAT. §5/2A-103(1)(p).

924.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. §§5/2-105(1) and 5/2A-103(1)(h).

925.   In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty

for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

926. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

927. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

928. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known to and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

929. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

930. Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

931. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

932.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which prevent airbags and seatbelt pretensioners from performing as warranted.

933.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

934.   Plaintiff and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

935.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff and the members of the Class is not limited to the warranties' remedies.

936.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to

their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the ACU Defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

937. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

938. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

939.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

940.   Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

941.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

942.   Accordingly, Plaintiff and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

## 15.   Indiana

### INDIANA COUNT I

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(IND. CODE §§26-1-2.1-103, 26-1-2.1-212, AND 26-1-2-314)**
**AGAINST ALL DEFENDANTS**

943.   Plaintiffs Tonya Skinner and Cause 4 Paws, Inc., by and through Eric Munson, (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Indiana, against all Defendants.

944.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under IND. CODE §§26-1-2.1-103(3) and 26-1-2-104(1), and "sellers" of motor vehicles and/or ACUs under §26-1-2-103(1)(d).

945.   With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under IND. CODE §26-1-2.1-103(1)(p).

946.   The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of IND. CODE §§26-1-2.1-103(1)(h) and 26-1-2-105(1).

947.   A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to IND. CODE §§26-1-2.1-212 and 26-1-2-314.

948.   The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

949.   Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

950.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## INDIANA COUNT II

### BREACH OF EXPRESS WARRANTY
### (IND. CODE §§26-1-2.1-103, 26-1-2.1-210, AND 26-1-2-313)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

951.    Plaintiffs Tonya Skinner and Cause 4 Paws, Inc., by and through Eric Munson, (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Indiana, against the Vehicle Manufacturer Defendants.

952.    Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under IND. CODE §§26-1-2.1-103(3) and 26-1-2-104(1), and "sellers" of motor vehicles under §26-1-2-103(1)(d).

953.    With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under IND. CODE §26-1-2.1-103(1)(p).

954.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IND. CODE §§26-1-2.1-103(1)(h) and 26-1-2-105(1).

955.    In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

956. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiffs and the Class.

957. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

958. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

959.   Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

960.   Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

961.   The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

962.   The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which prevent airbags and seatbelt pretensioners from performing as warranted.

963.   Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiffs and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

964.   Plaintiffs and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile

given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

965.   Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

966.   The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

967.   Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.   Among other things, Plaintiffs and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiffs and the members of the Class, and the Vehicle Manufacturer

Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

968.   Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

969.   The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

970.   Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

971.   As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

972.   Accordingly, Plaintiffs and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**16.   Iowa**

**IOWA COUNT I**

**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR
CONSUMER FRAUDS ACT
(IOWA CODE §714H.1, *ET SEQ*.)
AGAINST ALL DEFENDANTS**

973.   Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Iowa, against all Defendants.

974.   The members of the Class are "consumers" within the meaning of IOWA CODE §714H.2(3).

975.   The members of the Class and Defendants are "persons" within the meaning of IOWA CODE §714H.2(7).

976.   Defendants were and are engaged in the conduct of trade or commerce.

977.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."   IOWA CODE §714H.3.

978.   In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.   Accordingly, Defendants engaged in unfair or deceptive acts or practices, including: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a

particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

979.   Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

980.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Iowa CFA.   Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers, including members of the Class, would purchase the Class Vehicles.

981.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.   Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

982.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to

and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

983.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

984.   Defendants knew or should have known that their conduct violated the Iowa CFA.

985.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

986.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers, including members of the Class, to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

987.   Defendants owed Plaintiffs and the members of the Iowa Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)   intentionally concealed the foregoing from the Class; and/or

(c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding

material facts from the Class that contradicted these representations.

988.   Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.   In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

989.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

990.   The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all.   The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

991.   The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

992.   Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.

993.    Defendants' unlawful acts and practices complained of herein affect the public interest.

994.    As a direct and proximate result of Defendants' violations of the Iowa CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

995.    Pursuant to IOWA CODE §714H.5, the members of the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages, court costs and attorneys' fees, and any other just and proper relief available under the Iowa CFA.  Because Defendants' conduct was committed willfully, the members of the Class also seek treble damages as provided in IOWA CODE §714H.5(4).

**IOWA COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(IOWA CODE §§554.2314, 554.2315, 554.13103, AND 554.13212)**
**AGAINST ALL DEFENDANTS**

996.    Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Iowa, against all Defendants.

997.    Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under IOWA CODE §§554.2104(1) and 554.13103(3), and "sellers" of the  Class Vehicles  and/or the defective airbag systems installed in them under §554.2103(1)(d).

998.    With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under IOWA CODE §554.13103(1)(p).

999.    The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the  meaning of IOWA CODE §§554.2105(1) and 554.13103(1)(h).

1000. A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to IOWA CODE §§554.2314 and 554.13212.

1001. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to IOWA CODE §554.2315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1002. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1003. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1004. As a direct and proximate result of Defendants' breach of their implied warranties, the members of the Class have been damaged in an amount to be determined at trial.

1

## IOWA COUNT III

2

### BREACH OF EXPRESS WARRANTY
### (IOWA CODE §§554.2313, 554.13103, AND 554.13210)

3

### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

4     1005. Plaintiffs bring this claim on behalf of all members of the Class, or

5  alternatively the members of the Class that reside and/or purchased or leased their

6  Class Vehicles in Iowa, against the Vehicle Manufacturer Defendants.

7     1006. Vehicle Manufacturer Defendants are and were at all relevant times

8  "merchants" with respect to the Class Vehicles and/or defective ACUs under IOWA

9  CODE §§554.2104(1) and 554.13103(3), and "sellers" of the  Class Vehicles and/or

10  defective ACUs under §554.2103(1)(d).

11     1007. With respect to leases, Vehicle Manufacturer Defendants are and were

12  at all relevant times "lessors" of motor vehicles under IOWA CODE §554.13103(1)(p).

13     1008. The Class Vehicles  and/or the defective airbag systems installed in

14  them are and were at all relevant times "goods" within the  meaning of IOWA CODE

15  §§554.2105(1) and 554.13103(1)(h).

16     1009. In connection with the purchase of all Class Vehicles, Vehicle

17  Manufacturer Defendants provided express warranties.  Kia provides a limited basic

18  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

19  repairs to vehicles that fail to function properly during normal use.  Honda provides

20  a New Vehicle Limited Warranty for a period of three years or 36,000  miles,

21  whichever occurs first, and covers any repair or replacement of any part that is

22  defective in material or workmanship under normal use.  Toyota provides a New

23  Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever

24  occurs first, and covers repairs and adjustments needed to correct defects in materials

25  or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited

26  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

27  the repair of any item on a vehicle that is defective in material, workmanship, or

28

factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1010. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1011. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1012. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1013. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1014. The members of the Class could not have reasonably discovered the ACU Defect.

1015. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1016. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1017. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1018. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1019. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1020. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1021. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1022. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1023. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1024. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1025. As a direct and proximate result of Defendants' breach of its express warranty, the members of the Class have been damaged in an amount to be determined at trial.

1026. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

### 17.   Kansas

### KANSAS COUNT I

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**(KAN. STAT. ANN. §50-623, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

1027. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Kansas, against all Defendants.

1028. The members of the Class are "consumers," within the meaning of KAN. STAT. ANN. §50-624(b).

1029. Defendants are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), KAN. STAT. ANN. §50-624(l).

1030. Each sale of the Class Vehicles to a Class member was a "consumer transaction" within the meaning of KAN. STAT. ANN. §50-624(c).

1031. Defendants' actions as set forth herein occurred in the conduct of trade or commerce.

1032. The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," KAN. STAT. ANN. §50-626(a), and that deceptive acts or practices include, but are not limited to: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have"; and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation"; "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact"; and "(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." KAN. STAT. ANN. §50-627(a).

1033. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including: representing that the Class Vehicles

and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1034. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1035. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Kansas CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1036. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1037. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1038. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1039. Defendants knew or should have known that their conduct violated the Kansas CPA.

1040. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1041. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1042. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

(c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1043. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1044. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1045. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1046. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1047. Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1048.  The repairs instituted by Defendants, if any, have not been adequate.

1049.  As a direct and proximate result of Defendants' violations of the Kansas CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1050.  Pursuant to KAN. STAT. ANN. §50-634, the members of the Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Class member, in addition to treble damages.

1051.  The Class also seeks declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, as well as any other just and proper relief available under KAN. STAT. ANN. §50-623, *et seq.*

## KANSAS COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (KAN. STAT. ANN. §§84-2-314, 84-2A-103, AND 84-2A-212)
### AGAINST ALL DEFENDANTS

1052.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Kansas, against all Defendants.

1053.  Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under KAN. STAT. ANN. §§84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles and/or ACUs under §84-2-103(1)(d).

1054.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under KAN. STAT. ANN. §84-2A-103(1)(p).

1055.  The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of KAN. STAT. ANN. §§84-2-105(1) and 84-2A-103(1)(h).

1056.  A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to KAN. STAT. ANN. §§84-2-314 and 84-2A-212.

1057.  The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1058.  Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1059.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## KANSAS COUNT III

### BREACH OF EXPRESS WARRANTY
### (KAN. STAT. ANN. §§84-2-313, 84-2A-103, AND 84-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1060.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Kansas, against the Vehicle Manufacturer Defendants.

1061. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under KAN. STAT. ANN. §§84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under §84-2-103(1)(d).

1062. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under KAN. STAT. ANN. §84-2A-103(1)(p).

1063. The Class Vehicles are and were at all relevant times "goods" within the meaning of KAN. STAT. ANN. §§84-2-105(1) and 84-2A-103(1)(h).

1064. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by

Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1065. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1066. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1067. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1068. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe, reliable transportation.

1069. The members of the Class could not have reasonably discovered the ACU Defect.

1070. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1071. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew

the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1072. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1073. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1074. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1075. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle

Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1076. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1077. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1078. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1079. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1080. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1081. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 18.   Kentucky

### KENTUCKY COUNT I

### VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. §367.110, *ET SEQ.*) AGAINST ALL DEFENDANTS

1082. Plaintiffs Ryan Frazier, Bridget Miller, and Christy Sullivan (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Kentucky, against all Defendants.

1083. Plaintiffs, the members of the Class, and Defendants are "persons," within the meaning of KY. REV. STAT. §367.110(1).

1084. Defendants are engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. §367.110(2).

1085. The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KY. REV. STAT. §367.170(1).

1086. In the course of Defendants' business, Defendants violated the Kentucky CPA by failing to disclose and actively concealing the dangers and risks

posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of KY. REV. STAT. §367.170(1): representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell them as advertised; engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and the sale of the Class Vehicles and/or the defective airbag systems installed in them.

1087. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1088. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Kentucky CPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1089. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and

serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1090. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1091. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiffs and the members of the Class.

1092. Defendants knew or should have known that their conduct violated the Kentucky CPA.

1093. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1094. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1095. Defendants owed Plaintiffs and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from Plaintiffs and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1096. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1097. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiffs and the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1098. Plaintiffs and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants'

1   complete disregard for safety, Plaintiffs and the members of the Class either would
2   have paid less for their Class Vehicles or would not have purchased or leased them
3   at all.   Plaintiffs and the members of the Class had no way of discerning that
4   Defendants' representations were false and misleading, or otherwise learning the
5   facts that Defendants had concealed or failed to disclose.

6       1099.  Plaintiffs and the members of the Class did not receive the benefit of
7   their bargain as a result of Defendants' misconduct.

8       1100.  As a direct and proximate result of Defendants' violations of the
9   Kentucky CPA, Plaintiffs and the members of the Class have suffered injury-in-fact
10  and/or actual damage.

11      1101.  Pursuant to KY. REV. STAT. §367.220, Plaintiffs and the members of the
12  Class seek an order awarding damages, punitive damages, and any other just and
13  proper relief available under Kentucky CPA.

## KENTUCKY COUNT II

### BREACH OF IMPLIED WARRANTIES
### (KY. REV. STAT. §§355.2-314, 355.2-315, 355.2A-103, AND 355.2A-212)
### AGAINST ALL DEFENDANTS

17      1102.  Plaintiffs Ryan Frazier, Bridget Miller, and Christy Sullivan (for the
18  purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all
19  members of the Class, or alternatively the members of the Class that reside and/or
20  purchased or leased their Class Vehicles in Kentucky, against all Defendants.

21      1103.  Defendants are and were at all relevant times "merchants" with respect
22  to motor vehicles and/or ACUs under KY. REV. STAT. §§355.2-104(1) and 355.2A-
23  103(3), and "sellers" of motor vehicles and/or ACUs under §355.2-103(1)(d).

24      1104.  With respect to leases, Defendants are and were at all relevant times
25  "lessors" of motor vehicles under KY. REV. STAT. §355.2A-103(1)(p).

1105. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of KY. REV. STAT. §§355.2-105(1) and 355.2A-103(1)(h).

1106. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to KY. REV. STAT. §§355.2-314 and 355.2A-212.

1107. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to KY. REV. STAT. §355.2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiffs and the members of the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiffs and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1108. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1109. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1110. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## KENTUCKY COUNT III

### BREACH OF EXPRESS WARRANTY
### (KY. REV. STAT. §§355.2-313, 355.2A-103, AND 355.2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1111. Plaintiffs Ryan Frazier, Bridget Miller, and Christy Sullivan (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Kentucky, against the Vehicle Manufacturer Defendants.

1112. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under KY. REV. STAT. §§355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under §355.2-103(1)(d).

1113. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under KY. REV. STAT. §355.2A-103(1)(p).

1114. The Class Vehicles are and were at all relevant times "goods" within the meaning of KY. REV. STAT. §§355.2-105(1) and 355.2A-103(1)(h).

1115. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever

occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1116. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiffs and the Class.

1117. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

1118. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair

or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

1119. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1120. Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

1121. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1122. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1123. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Class with Class Vehicles containing defects in materials that were never disclosed to Plaintiffs and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1124. Plaintiffs and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1125. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

1126. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1127. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and the members of the Class.  Among other things, Plaintiffs and the members of the Class did not determine these time

limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiffs and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1128. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole, because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1129. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1130. Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1131. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

1132. Accordingly, Plaintiffs and the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 19.    Louisiana

## LOUISIANA COUNT I

**VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(LA. STAT. ANN. §51:1401, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

1133. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Louisiana, against all Defendants.

1134. The members of the Class and Defendants are "persons," within the meaning of LA. STAT. ANN. §51:1402(8).

1135. The members of the Class are "consumers," within the meaning of LA. STAT. ANN. §51:1402(1).

1136. Defendants are engaged in "trade" or "commerce" within the meaning of LA. STAT. ANN. §51:1402(10).

1137. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. STAT. ANN. §51:1405(A). Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL.

1138. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, the

omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1139. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1140. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Louisiana CPL.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1141. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1142. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the members of the Class,

about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1143. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1144. Defendants knew or should have known that their conduct violated the Louisiana CPL.

1145. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1146. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1147. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)     possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)     intentionally concealed the foregoing from the Class; and/or

(c)     made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

- 246 -

1148. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1149. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1150. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1151. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1152. Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1153. The repairs instituted by Defendants, if any, have not been adequate.

1154. As a direct and proximate result of Defendants' violations of the Louisiana CPL, the members of the Class have suffered injury-in-fact and/or actual damage.

1155. Pursuant to LA. STAT. ANN. §51:1409, the members of the Class seek to recover actual damages in an amount to be determined at trial, treble damages for Defendants' knowing violations of the Louisiana CPL, other monetary relief, declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, and any other just and proper relief available.

**LOUISIANA COUNT II**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY/ WARRANTY AGAINST REDHIBITORY DEFECTS (LA. CIV. CODE ART. 2520, 2524) AGAINST ALL DEFENDANTS**

1156. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Louisiana, against all Defendants.

1157. Defendants are and were at all relevant times "sellers" with respect to motor vehicles under LA. CIV. CODE ART. 2520, 2524.

1158. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to LA. CIV. CODE ART. 2520, 2524.

1159. At the time members of the Class acquired their Class Vehicles, those vehicles had a redhibitory defect within the meaning of LA. CIV. CODE ART. 2520, in that (a) the Class Vehicles and/or the defective ACUs installed in them were rendered so inconvenient that members of the Class either would not have purchased the Class Vehicles had they known of the ACU Defect, or, because the defective ACUs so diminished the usefulness and/or value of the Class Vehicles such that it must be

presumed that the Class members would not have purchased the Class Vehicles, but for a lesser price.

1160. No notice of the defect is required under LA. CIV. CODE ART. 2520, since the Defendants had knowledge of the ACU Defect in the Class Vehicles and/or the defective ACUs installed in them at the time they were sold to members of the Class. Furthermore, on information and belief, the Defendants had notice of these issues by their knowledge of the issues, through customer complaints, numerous complaints filed against Defendants and/or others, internal investigations, and individual letters and communications sent by consumers before the Defendants issued recalls (if applicable) and after the allegations of the ACU Defect became public.

1161. Under LA. CIV. CODE ART. 2524, a warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition, or fit for ordinary use, was implied by law in the transactions when Class members purchased their Class Vehicles.

1162. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs may fail to deploy airbags and seat belt pretensioners in a crash event due to the ACUs being damaged by EOS, leading to an unreasonable likelihood of serious bodily injury or death to vehicle occupants, instead of protecting vehicle occupants from bodily injury during accidents.

1163. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## 20.   Maine

### MAINE COUNT I

### BREACH OF IMPLIED WARRANTIES
### (ME. REV. STAT. ANN. TIT. 11, §§2-314, 2-315, 2-1103, AND 2-1212)
### AGAINST ALL DEFENDANTS

1164. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Maine, against all Defendants.

1165. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under ME. REV. STAT. ANN. tit. 11, §§2-104(1) and 2-1103(3), and "sellers" of motor vehicles and/or ACUs under §2-103(1)(d).

1166. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ME. REV. STAT. ANN. tit. 11, §2-1103(1)(p).

1167. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of ME. REV. STAT. ANN. tit. 11, §§2-105(1) and 2-1103(1)(h).

1168. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to ME. REV. STAT. ANN. tit. 11, §§2-314 and 2-1212.

1169. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to ME. REV. STAT. ANN. tit. 11, §§2-315 and 2-1213.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1170. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1171. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1172. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### MAINE COUNT II

### BREACH OF EXPRESS WARRANTY
### (ME. REV. STAT. ANN. TIT. 11 §2-313, 2-1103, AND 2-1210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1173. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Maine, against the Vehicle Manufacturer Defendants.

1174. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect of motor vehicles under ME. REV. STAT. ANN. tit. 11, §§2-104(1) and 2-1103(3), and "sellers" of motor vehicles under §2-103(1)(d).

1175. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under ME. REV. STAT. ANN. tit. 11, §2-1103(1)(p).

1176. The Class Vehicles are and were at all relevant times "goods" within the meaning of ME. REV. STAT. ANN. tit. 11, §§2-105(1) and 2-1103(1)(h).

1177. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1178. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1179. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1180. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1181. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1182. The members of the Class could not have reasonably discovered the ACU Defect.

1183. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1184. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1185. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1186. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1187. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1188. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1189. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1190. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1191. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1192. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1193. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1194. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 21.   Maryland

### MARYLAND COUNT I

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE COM. LAW §13-101, *ET SEQ.*) AGAINST ALL DEFENDANTS**

1195. Plaintiff Donna Richards (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Maryland, against all Defendants.

1196. Defendants are "persons," within the meaning of MD. CODE COM. LAW §13-101(h).   Plaintiff and the members of the Class are "consumers," within the meaning of MD. CODE COM. LAW §13-101(c)(1)

1197. The Class Vehicles and defective ACUs are "consumer goods" within the meaning of MD. CODE COM. LAW §13-101(d)(1).

1198. The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good.   MD. CODE COM. LAW §13-303.   Unfair or deceptive trade practices are defined under MD. CODE COM. LAW §13-301.

1199. The Maryland CPA makes unlawful several specific acts, including, but not limited to: representing that "(2)(i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic,

ingredient, use, benefit, or quantity which they do not have"; "(iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not"; and "(3) Failure to state a material fact if the failure deceives or tends to deceive." MD. CODE COM. LAW §13-301.

1200. In the course of Defendants' business, Defendants violated the Maryland CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in MD. CODE COM. LAW §13-301: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1201. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1202. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Maryland CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1203. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1204. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1205. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff and the members of the Class.

1206. Defendants knew or should have known that their conduct violated the Maryland CPA.

1207. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1208. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1209. Defendants owed Plaintiff and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from Plaintiff and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

1210. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1211. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff and the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1212. Plaintiff and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for

1  safety, Plaintiff and the members of the Class either would have paid less for their

2  vehicles or would not have purchased or leased them at all.  Plaintiff and the members

3  of the Class had no way of discerning that Defendants' representations were false and

4  misleading, or otherwise learning the facts that Defendants had concealed or failed

5  to disclose.

6      1213.  Plaintiff and the members of the Class did not receive the benefit of their

7  bargain as a result of Defendants' misconduct.

8      1214.  As a direct and proximate result of Defendants' violations of the

9  Maryland CPA, Plaintiff and the members of the Class have suffered injury-in-fact

10  and/or actual damage.

11      1215.  Pursuant to MD. CODE COM. LAW §13-408, Plaintiff and the members

12  of the Class seek an order awarding damages, and any other just and proper relief

13  available under the Maryland CPA.

14                    **MARYLAND COUNT II**

15          **BREACH OF IMPLIED WARRANTIES**
    **(MD. CODE COM. LAW §§2-314, 2-315, 2A-103, AND 2A-212)**

16               **AGAINST ALL DEFENDANTS**

17      1216.  Plaintiff Donna Richards (for the purposes of this section, "Plaintiff")

18  brings this claim on behalf of herself and all members of the Class, or alternatively

19  the members of the Class that reside and/or purchased or leased their Class Vehicles

20  in Maryland, against all Defendants.

21      1217.  Defendants are and were at all relevant times "merchants" with respect

22  to motor vehicles and/or ACUs under MD. CODE COM. LAW §2-104(1), and "sellers"

23  of motor vehicles and/or ACUs under §2-103(1)(d).

24      1218.  With respect to leases, Vehicle Manufacturer Defendants are and were

25  at all relevant times "lessors" of motor vehicles under MD. CODE COM. LAW §2A-

26  103(1)(p).

27

28

1219. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of MD. CODE COM. LAW §§2-105(1) and 2A-103(1)(h).

1220. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MD. CODE COM. LAW §§2-314 and 2A-212.

1221. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to MD. CODE COM. LAW §§2-315 and 2a-213. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiff and the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1222. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1223. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiff and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1224. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

## MARYLAND COUNT III

### BREACH OF EXPRESS WARRANTY
### (MD. CODE COM. LAW §§2-313, 2A-103, AND 2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1225. Plaintiff Donna Richards (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Maryland, against the Vehicle Manufacturer Defendants.

1226. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" with respect of motor vehicles under MD. CODE COM. LAW §2-103(1)(d), and "merchants" of motor vehicles under §2-104(1).

1227. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MD. CODE COM. LAW §2A-103(1)(p).

1228. Plaintiff and the members of the Class are and were at all relevant times "buyers" of the Class Vehicles under MD. CODE COM. LAW §2-103(1)(a).

1229. The Class Vehicles are and were at all relevant times "goods" within the meaning of MD. CODE COM. LAW §§2-105(1) and 2A-103(1)(h).

1230. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New

Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1231. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiff and the Class.

1232. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

1233. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect

during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

1234. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1235. Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

1236. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1237. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1238. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1239. Plaintiff and the members of the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1240. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff and the members of the Class is not limited to the warranties' remedies.

1241. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1242. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the members of the Class.  Among other things, Plaintiff and the members of the Class did not determine these time

limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1243. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1244. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1245. Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1246. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

1247. Accordingly, Plaintiff and the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

## 22.   Massachusetts

### MASSACHUSETTS COUNT I

### BREACH OF IMPLIED WARRANTIES
### (MASS. GEN. LAWS CH. 106, §§2-314, 2-315, AND 2A-212)
### AGAINST ALL DEFENDANTS

1248. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Massachusetts, against all Defendants.

1249. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under MASS. GEN. LAWS ch. 106 §2-104(1), and "sellers" of motor vehicles and/or ACUs under MASS. GEN. LAWS ch. 106 §2-103(1)(d).

1250. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MASS. GEN. LAWS ch. 106 §2A-103(1)(p).

1251. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

1252. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MASS. GEN. LAWS ch. 106 §§2-314 and 2A-212.

1253. In addition, a warranty that the Class Vehicles and/or the defective ACUs were fit for their particular purpose is implied by law pursuant to MASS. GEN. LAWS ch. 106 §2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that

- 267 -

the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1254. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1255. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1256. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## MASSACHUSETTS COUNT II

### BREACH OF EXPRESS WARRANTY
### (MASS. GEN. LAWS CH. 106, §§2-313, 2A-103, AND 2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1257. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Massachusetts, against the Vehicle Manufacturer Defendants.

1258. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under MASS. GEN. LAWS ch. 106 §2-104(1), and "sellers" of motor vehicles under MASS. GEN. LAWS ch. 106 §2-103(1)(d).

1259. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MASS. GEN. LAWS ch. 106 §2A-103(1)(p).

1260. The Class members are and were at all relevant times "buyers" of the Class Vehicles under MASS. GEN. LAWS ch. 106 §2-103(1)(a).

1261. The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

1262. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by

Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1263. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1264. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1265. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1266. Because of the ACU Defect, the Class Vehicles are not safe and reliable, and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1267. The members of the Class could not have reasonably discovered the ACU Defect.

1268. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1269. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew

the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects that prevent airbags and seatbelt pretensioners from performing as warranted.

1270. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1271. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1272. Thus, Vehicle Manufacturer Defendants' written warranties fail their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1273. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle

Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1274. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1275. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1276. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1277. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1278. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1279. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

### 23.   Michigan

### MICHIGAN COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS §445.903, *ET SEQ.*) AGAINST ALL DEFENDANTS

1280. Plaintiffs Tommy Bentley, Alvin Duncan, and Kinyata Jones (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Michigan, against all Defendants.

1281. Plaintiffs, the members of the Class, and Defendants are "persons" within the meaning of MICH. COMP. LAWS §445.902(1)(d).

1282. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."   MICH. COMP. LAWS §445.903(1).   Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics … that they do not have"; "(e) Representing that goods or services are of a particular standard … if they are of another"; "(i) Making false or misleading

- 273 -

statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  MICH. COMP. LAWS §445.903(1).  By failing to disclose and actively concealing that the ACU Defect rendered the Class Vehicles unsafe, by marketing the Class Vehicles as safe and of high quality, and by presenting themselves as reputable manufacturers that valued safety and stood behind its vehicles after they were sold, Defendants engaged in deceptive business practices prohibited by the Michigan CPA.

1283. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or

1   failing to reveal facts that are material to the transaction in light of representations of

2   fact made in a positive manner.

3       1284. Defendants have known of the ACU Defect in their defective airbag

4   systems and failed to disclose and actively concealed the dangers and risks posed by

5   the Class Vehicles and/or the defective airbag systems installed in them.

6       1285. By failing to disclose and by actively concealing the ACU Defect in the

7   Class Vehicles and/or the defective airbag systems installed in them, by marketing

8   them as safe, reliable, and of high quality, and by presenting themselves as reputable

9   manufacturers that value safety, Defendants engaged in unfair or deceptive business

10  practices in violation of the Michigan CPA.  Defendants deliberately withheld the

11  information about the propensity of the defective airbag systems to fail to deploy

12  during an accident, in order to ensure that consumers would purchase the Class

13  Vehicles.

14      1286. In the course of Defendants' business, they willfully failed to disclose

15  and actively concealed the dangerous risks posed by the many safety issues and

16  serious defect discussed above.  Defendants compounded the deception by repeatedly

17  asserting that the Class Vehicles and/or the defective airbag systems installed in them

18  were safe, reliable, and of high quality, and by claiming to be reputable manufacturers

19  that value safety.

20      1287. Defendants' unfair or deceptive acts or practices, including these

21  concealments, omissions, and suppressions of material facts, had a tendency or

22  capacity to mislead, tended to create a false impression in consumers, were likely to

23  and did in fact deceive reasonable consumers, including Plaintiffs and the members

24  of the Class, about the true safety and reliability of Class Vehicles and/or the

25  defective airbag systems installed in them, the quality of Defendants' brands, and the

26  true value of the Class Vehicles.

27

28

1288. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiffs and the members of the Class.

1289. Defendants knew or should have known that their conduct violated the Michigan CPA.

1290. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1291. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1292. Defendants owed Plaintiffs and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from Plaintiffs and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Class that contradicted these representations.

1293. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the

ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1294. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiffs and the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1295. Plaintiffs and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiffs and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1296. Plaintiffs and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1297. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1298. The repairs instituted by Defendants, if any, have not been adequate.

1299. Defendants' violations present a continuing risk to Plaintiffs and the members of the Class, as well as to the general public.

1300. Defendants' unlawful acts and practices complained of herein affect the public interest.

1301. As a direct and proximate result of Defendants' violations of the Michigan CPA, Plaintiffs and the members of the Class have suffered injury-in-fact and/or actual damage.

1302. Pursuant to MICH. COMP. LAWS §445.911, Plaintiffs and the members of the Class seek injunctive relief to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) reasonable attorneys' fees; and (c) any other just and proper relief available under the Michigan CPA.

1303. Plaintiffs and the members of the Class also seek exemplary damages against Defendants because they carried out despicable conduct with willful and conscious disregard of the rights and safety of others.  Defendants intentionally failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, concealed material facts that only they knew, and repeatedly promised Plaintiffs and the Class members that all vehicles were safe – all to avoid the expense and public relations nightmare of correcting a noxious flaw in the Class Vehicles.  Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## MICHIGAN COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MICH. COMP. LAWS §§440.2314, 440.2315, AND 440.2860)
### AGAINST ALL DEFENDANTS

1304. Plaintiffs Tommy Bentley, Alvin Duncan, and Kinyata Jones (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Michigan, against all Defendants.

- 278 -

1305. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under Mich. Comp. Laws §440.2314(1), and "sellers" of motor vehicles and/or ACUs under § 440.2103(1)(d).

1306. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws §440.2803(1)(p).

1307. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of §§440.2105(1) and 440.2803(1)(h).

1308. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§440.2314 and 440.2862.

1309. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1310. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1311. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## MICHIGAN COUNT III

### BREACH OF EXPRESS WARRANTY
### (MICH. COMP. LAWS §§440.2313, 440.2803, AND 440.2860)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1312. Plaintiffs Tommy Bentley, Alvin Duncan, and Kinyata Jones (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Michigan, against all the Vehicle Manufacturer Defendants.

1313. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under MICH. COMP. LAWS §440.2104(1), and "sellers" of motor vehicles under §440.2103(1)(c).

1314. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MICH. COMP. LAWS §440.2803(1)(p).

1315. The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§440.2105(1) and 440.2803(1)(h).

1316. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1317. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiffs and the Class.

1318. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

1319. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

1320.  Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1321.  Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

1322.  The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1323.  The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1324.  Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiffs and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1325.  Plaintiffs and the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile

given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1326. Thus, Vehicle Manufacturer Defendants' written warranties fail their essential purpose and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

1327. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1328. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiffs and the members of the Class, and the Vehicle Manufacturer

Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1329. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1330. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1331. Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1332. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

1333. Accordingly, Plaintiffs and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

### 24.   Minnesota

### MINNESOTA COUNT I

### VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. §325F.68, *ET SEQ.*) AGAINST ALL DEFENDANTS

1334. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Minnesota, against all Defendants.

1335. The members of the Class and Defendants are "persons" within the meaning of MINN. STAT. §325F.69.

1336. The Class Vehicles and defective ACUs are "merchandise" within the meaning of MINN. STAT. §325F.69.

1337. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." MINN. STAT. §325F.69(1).

1338. In the course of Defendants' business, Defendants violated the Minnesota CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by the Minnesota CFA, including: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and

1  quality when they are not; and/or advertising them with the intent not to sell them as

2  advertised.

3      1339. Defendants have known of the ACU Defect in their defective airbag

4  systems and failed to disclose and actively concealed the dangers and risks posed by

5  the Class Vehicles and/or the defective airbag systems installed in them.

6      1340. By failing to disclose and by actively concealing the ACU Defect in the

7  Class Vehicles and/or the defective airbag systems installed in them, by marketing

8  them as safe, reliable, and of high quality, and by presenting themselves as reputable

9  manufacturers that value safety, Defendants engaged in unfair or deceptive business

10  practices in violation of the Minnesota CFA.  Defendants deliberately withheld the

11  information about the propensity of the defective airbag systems to fail to deploy

12  during an accident, in order to ensure that consumers would purchase the Class

13  Vehicles.

14      1341. In the course of Defendants' business, they willfully failed to disclose

15  and actively concealed the dangerous risks posed by the many safety issues and

16  serious defect discussed above.  Defendants compounded the deception by repeatedly

17  asserting that the Class Vehicles and/or the defective airbag systems installed in them

18  were safe, reliable, and of high quality, and by claiming to be reputable manufacturers

19  that value safety.

20      1342. Defendants' unfair or deceptive acts or practices, including these

21  concealments, omissions, and suppressions of material facts, had a tendency or

22  capacity to mislead, tended to create a false impression in consumers, were likely to

23  and did in fact deceive reasonable consumers, including the members of the Class,

24  about the true safety and reliability of Class Vehicles and/or the defective airbag

25  systems installed in them, the quality of Defendants' brands, and the true value of the

26  Class Vehicles.

27

28

1343. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1344. Defendants knew or should have known that their conduct violated the Minnesota CFA.

1345. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1346. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1347. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1348. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the

Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1349. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1350. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1351. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1352. As a direct and proximate result of Defendants' violations of the Minnesota CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

1353. Pursuant to the Minnesota CFA, and MINN. STAT. §8.31(3a), the Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Minnesota CFA.

**MINNESOTA COUNT II**

**VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
(MINN. STAT. §325D.43-48, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

1354. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Minnesota, against all Defendants.

1355. The members of the Class and Defendants are "persons" within the meaning of MINN. STAT. §325D.44.

1356. The Class Vehicles and defective ACUs are "goods" within the meaning of MINN. STAT. §325D.44.

1357. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertises goods or services with intent not to sell them as advertised." MINN. STAT. §325D.44.

1358. In the course of Defendants' business, Defendants violated the Minnesota DTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in MINN. STAT. §325D.44: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits

that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1359. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1360. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Minnesota DTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1361. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1362. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1363. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1364. Defendants knew or should have known that their conduct violated the Minnesota DTPA.

1365. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1366. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1367. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1368. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the

Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1369. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1370. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1371. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1372. As a direct and proximate result of Defendants' violations of the Minnesota DTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1373. Pursuant to MINN. STAT. §325D.45, the members of the Class seek injunctive relief, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

**MINNESOTA COUNT III**

**BREACH OF IMPLIED WARRANTIES**
**(MINN. STAT. §§336.2-31, 336.2-315, 336.2A-103, AND 336.2A-212)**
**AGAINST ALL DEFENDANTS**

1374. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Minnesota, against all Defendants.

1375. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under MINN. STAT. §336.2-104, and "sellers" of motor vehicles and/or ACUs under §336.2-103(1)(d).

1376. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MINN. STAT. §336.2A-103(1)(p).

1377. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of MINN. STAT. §§336.2-105(1) and 336.2A-103(1)(h).

1378. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MINN. STAT. §§336.2-314 and 336.2A-212.

1379. In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to MINN. STAT. §336.2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

- 293 -

1380. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1381. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1382. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### MINNESOTA COUNT IV

### BREACH OF EXPRESS WARRANTY
### (MINN. STAT. §§336.2-313, 336.2A-103, AND 336.2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1383. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Minnesota, against the Vehicle Manufacturer Defendants.

1384. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under MINN. STAT. §336.2-104, and "sellers" of motor vehicles under §336.2-103(1)(d).

1385. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MINN. STAT. §336.2A-103(1)(p).

1386. The Class Vehicles are and were at all relevant times "goods" within the meaning of MINN. STAT. §§336.2-105(1) and 336.2A-103(1)(h).

1387. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1388. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1389. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1390. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1391. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1392. The members of the Class could not have reasonably discovered the ACU Defect.

1393. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1394. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1395. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in materials that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1396. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, was not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1397. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1398. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1399. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1400. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1401. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1402. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1403. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1404. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

### 25.   Mississippi

### MISSISSIPPI COUNT I

**VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT (MISS. CODE. ANN. §75-24-1, *ET SEQ.*) AGAINST ALL DEFENDANTS**

1405. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Mississippi, against all Defendants.

1406. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1407. The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits any "unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. §75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have"; "(g) Representing that good or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(i) Advertising goods or services with intent not to sell them as advertised."

- 299 -

1408. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Defendants engaged in unfair or deceptive acts or practices, including: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1409. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1410. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Mississippi CPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1411. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and

serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1412. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1413. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1414. Defendants knew or should have known that their conduct violated the Mississippi CPA.

1415. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1416. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1417. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

       (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

       (b)    intentionally concealed the foregoing from the Class; and/or

       (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1418. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1419. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1420. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or

would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1421.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1422.  Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1423.  As a direct and proximate result of Defendants' violations of the Mississippi CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1424.  The members of the Class seek actual damages in an amount to be determined at trial and any other just and proper relief available under the Mississippi CPA.

**MISSISSIPPI COUNT II**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MISS. CODE. ANN. §§75-2-314, 75-2-315, 75-2A-103, AND 75-2A-212)**
**AGAINST ALL DEFENDANTS**

1425.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Mississippi, against all Defendants.

1426.  Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under MISS. CODE. ANN. §75-2-104(1), and "sellers" of motor vehicles and/or ACUs under §75-2-103(1)(d).

1427.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MISS. CODE. ANN. §75-2A-103(1)(p).

1428. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of MISS. CODE. ANN. §75-2A-103(1)(p).

1429. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MISS. CODE. ANN. §§75-2-314 and 75-2A-212.

1430. In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to MISS. CODE. ANN. §§75-2-315 and 75-2A-213. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1431. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for their ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1432. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1433. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

**MISSISSIPPI COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(MISS. CODE. ANN. §§75-2-313 75-2A-103, AND 75-2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

1434. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Mississippi, against the Vehicle Manufacturer Defendants.

1435. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under MISS. CODE. ANN. §75-2-104(1), and "sellers" of motor vehicles under §75-2-103(1)(d).

1436. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MISS. CODE. ANN. §75-2A-103(1)(p).

1437. The Class Vehicles are and were at all relevant times "goods" within the meaning of MISS. CODE. ANN. §§75-2-105(1) and 75-2A-103(1)(h).

1438. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited

warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1439. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1440. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1441. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1442. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1443. The members of the Class could not have reasonably discovered the ACU Defect.

1444. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1445. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1446. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1447. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, was not required to do so because such an opportunity would be unnecessary and futile given

that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1448. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1449. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1450. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should

have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1451. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1452. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1453. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1454. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1455. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and such other incidental and consequential damages as allowed.

26.     **Missouri**

**MISSOURI COUNT I**

**VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**(MO. REV. STAT. §407.010, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

1456. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Missouri, against all Defendants.

1457. The members of the Class and Defendants are "persons" within the meaning of MO. REV. STAT. §407.020.

1458. The Class Vehicles and defective ACUs are "merchandise" within the meaning of MO. REV. STAT. §407.010(4).

1459. Defendants were and are engaged in "trade" or "commerce" within the meaning of MO. REV. STAT. §407.010(7).

1460. The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. §407.020.

1461. In the course of Defendants' business, Defendants violated the Missouri MPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Missouri MPA, including: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have;

representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1462. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1463. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Missouri MPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1464. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1465. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1466. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1467. Defendants knew or should have known that their conduct violated the Missouri MPA.

1468. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1469. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1470. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1471. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the

Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1472. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1473. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1474. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1475. As a direct and proximate result of Defendants' violations of the Missouri MPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1476. Defendants are liable to the Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under MO. REV. STAT. §407.025.

## MISSOURI COUNT II

### BREACH OF IMPLIED WARRANTIES
### (MO. REV. STAT. §§400.2-314, 400.2-315, 400.2A-103, AND 400.2A-212)
### AGAINST ALL DEFENDANTS

1477. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Missouri, against all Defendants.

1478. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under MO. REV. STAT. §400.2-104(1), and "sellers" of motor vehicles and/or ACUs under §400.2-103(1)(d).

1479. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MO. REV. STAT. §400.2A-103(1)(p).

1480. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of MO. REV. STAT. §§400.2-105(1) and 400.2A-103(1)(h).

1481. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MO. REV. STAT. §§400.2-314 and 400.2A-212.

1482. In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to MO. REV. STAT. §§400.2-315 and 400.2A-213. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1483. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1484. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1485. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## MISSOURI COUNT III

### BREACH OF EXPRESS WARRANTY
### (MO. REV. STAT. §§400.2-313, 400.2A-103, AND 400.2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1486. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Missouri, against the Vehicle Manufacturer Defendants.

1487. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under MO. REV. STAT. §400.2-104(1), and "sellers" of motor vehicles under MO. REV. STAT. §400.2-103(1)(d).

1488. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MO. REV. STAT. §400.2A-103(1)(p).

1489. The Class Vehicles are and were at all relevant times "goods" within the meaning of MO. REV. STAT. §§400.2-105(1) and 400.2A-103(1)(h).

1490. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1491. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1492. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1493. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1494. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1495. The members of the Class could not have reasonably discovered the ACU Defect.

1496. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1497. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1498. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1499. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1500. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1501. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1502. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1503. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1504. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1505. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1506. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1507. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 27.  Montana

### MONTANA COUNT I

**VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. §30-14-101, *ET SEQ.*) AGAINST ALL DEFENDANTS**

1508. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Montana against all Defendants.

1509. The members of the Class are "consumers" within the meaning of MONT. CODE. ANN. §30-14-102(1).

1510. The members of the Class and Defendants are "persons" within the meaning of MONT. CODE. ANN. §30-14-102(6).

1511. Defendants were and are engaged in "trade or commerce" within the meaning of MONT. CODE. ANN. §30-14-102(8).

1512. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  MONT. CODE. ANN. §30-14-103.

1513. In the course of Defendants' business, Defendants violated the Montana CPA by failing to disclose and actively concealing the dangers and risks posed by the

Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Montana CPA: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1514. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1515. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Montana CPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1516. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1517. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or

capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1518. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1519. Defendants knew or should have known that their conduct violated the Montana CPA.

1520. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1521. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1522. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a)     possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)     intentionally concealed the foregoing from the Class; and/or

(c)     made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding

material facts from the Class that contradicted these representations.

1523. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1524. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1525. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1526. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1527. As a direct and proximate result of Defendants' violations of the Montana CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1528. Pursuant to MONT. CODE. ANN. §30-14-133, the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Montana CPA.

## MONTANA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (MONT. CODE. ANN. §§30-2A-103, 30-2-314, 30-2-315, AND 30-2A-212)
### AGAINST ALL DEFENDANTS

1529. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Montana, against all Defendants.

1530. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under MONT. CODE. ANN. §30-2-104(1), and "sellers" of motor vehicles and/or ACUs under §30-2-103(1)(d).

1531. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MONT. CODE. ANN. §30-2A-103(1)(p).

1532. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of MONT. CODE. ANN. §30-2-105(1) and 30-2A-103(1)(h).

1533. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MONT. CODE. ANN. §30-2-314.

1534. In addition, a warranty that the Class Vehicles and/or the defective ACUs were fit for their particular purpose is implied by law pursuant to §30-2-315 and 30-2A-212. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Montana Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that

the Montana Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1535. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1536. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1537. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

**MONTANA COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(MONT. CODE. ANN. §§30-2-31, 30-2A-103, AND 30-2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

1538. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Montana, against the Vehicle Manufacturer Defendants.

1539. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under MONT. CODE. ANN. §30-2-104(1), and "sellers" of motor vehicles under MONT. CODE. ANN. §30-2-103(1)(d).

1540. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under MONT. CODE. ANN. §30-2A-103(1)(p).

1541. The Class Vehicles are and were at all relevant times "goods" within the meaning of MONT. CODE. ANN. §§30-2-105(1) and 30-2A-103(1)(h).

1542. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1543. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1544. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1545. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1546. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1547. The members of the Class could not have reasonably discovered the ACU Defect.

1548. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1549. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1550. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1551. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1552. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1553. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems

in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1554. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1555. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1556. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1557. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1558. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1559. Accordingly, the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## 28.   Nebraska

### NEBRASKA COUNT I

### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB. REV. STAT. §59-1601, *ET SEQ.*) AGAINST ALL DEFENDANTS

1560. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Nebraska, against all Defendants.

1561. The members of the Class and Defendants are "persons" within the meaning of NEB. REV. STAT. §59-1601(1).

1562. Defendants were and are engaged in "trade or commerce" within the meaning of NEB. REV. STAT. §59-1601(2).

1563. The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." NEB. REV. STAT. §59-1602.

1564. In the course of Defendants' business, Defendants violated the Nebraska CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described

above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Nebraska CPA: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1565. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1566. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Nebraska CPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1567. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1568. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to

and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1569. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1570. Defendants knew or should have known that their conduct violated the Nebraska CPA.

1571. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1572. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1573. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding

material facts from the Class that contradicted these representations.

1574. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1575. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1576. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1577. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1578. As a direct and proximate result of Defendants' violations of the Nebraska CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1579. Pursuant to NEB. REV. STAT. §59-1609, the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Nebraska CPA.

### NEBRASKA COUNT II

**BREACH OF IMPLIED WARRANTIES**
**(NEB. REV. STAT. §§2-314, 2-315, 2A-103, AND 2A-212)**
**AGAINST ALL DEFENDANTS**

1580. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Nebraska, against all Defendants.

1581. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under NEB. REV. STAT. §2-104(1), and "sellers" of motor vehicles and/or ACUs under §2-103(1)(d).

1582. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under NEB. REV. STAT. §2A-103(1)(p).

1583. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of NEB. REV. STAT. §§2-105(1) and 2A-103(1)(h).

1584. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to NEB. REV. STAT. §2-314.

1585. In addition, a warranty that the Class Vehicles and/or the defective ACUs were fit for their particular purpose is implied by law pursuant to NEB. REV. STAT. §2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Montana Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that

the Montana Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1586. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1587. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1588. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### NEBRASKA COUNT III

**BREACH OF EXPRESS WARRANTY**
**(NEB. REV. STAT. §§2-314, 2A-103, AND 2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

1589. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Nebraska, against the Vehicle Manufacturer Defendants.

1590. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under NEB. REV. STAT. §2-104(1), and "sellers" of motor vehicles under §2-103(1)(d).

- 335 -

1591. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. Stat. §2A-103(1)(p).

1592. The Class Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. Stat. §§2-105(1) and 2A-103(1)(h).

1593. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.  Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1594. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1595. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1596. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1597. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1598. The members of the Class could not have reasonably discovered the ACU Defect.

1599. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1600. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1601. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1602. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1603. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1604. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems

in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1605. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1606. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1607. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1608.  The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1609.  As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1610.  Accordingly, the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 29.    Nevada

### NEVADA COUNT I

**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
(NEV. REV. STAT. §598.0903, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

1611.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Nevada against all Defendants.

1612.  The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), NEV. REV. STAT. §598.0903, *et seq.*, prohibits deceptive trade practices.  NEV. REV. STAT. §598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "[]Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith; … [] Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model; … []

Advertises goods or services with intent not to sell or lease them as advertised; … [or] Knowingly makes any other false representation in a transaction." *Id*. at 598.0915(5), (7), (9), (15).

1613. In the course of Defendants' business, Defendants violated the Nevada DTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Nevada DTPA: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1614. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1615. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Nevada DTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1616. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly

asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1617. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1618. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1619. Defendants knew or should have known that their conduct violated the Nevada DTPA.

1620. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1621. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1622. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a) possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b) intentionally concealed the foregoing from the Class; and/or

(c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1623. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1624. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1625. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1626.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1627.  As a direct and proximate result of Defendants' violations of the Nevada DTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1628.  Pursuant to NEV. REV. STAT. §41.600, the Class seeks an order awarding damages, treble damages, and any other just and proper relief available under the Nevada DTPA.

### NEVADA COUNT II

**BREACH OF IMPLIED WARRANTIES**
**(NEV. REV. STAT. §§104.2314, 104.2315, 104A.2103, AND 104A.2212)**
**AGAINST ALL DEFENDANTS**

1629. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Nevada, against all Defendants.

1630. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under NEV. REV. STAT. §104.2104(1), and "sellers" of motor vehicles and/or ACUs under §104.2103(1)(c).

1631. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under NEV. REV. STAT. §104A.2103(1)(p).

1632. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of NEV. REV. STAT. §§104.2105(1) and 104A.2103(1)(h).

1633. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to NEV. REV. STAT. §§104.2314 and 104A.2212.

1634. In addition, a warranty that the Class Vehicles and/or the defective ACUs were fit for their particular purpose is implied by law pursuant to NEV. REV. STAT. §104.2315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the Nevada Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Nevada Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1635. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1636. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1637. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## NEVADA COUNT III

### BREACH OF EXPRESS WARRANTY
### (NEV. REV. STAT. §§104.2313, 104A.2103, AND 104A.2210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1638.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Nevada, against the Vehicle Manufacturer Defendants.

1639.  Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under NEV. REV. STAT. §104.2104(1), and "sellers" of motor vehicles under §104.2103(1)(c).

1640.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under NEV. REV. STAT. §104A.2103(1)(p).

1641.  The Class Vehicles are and were at all relevant times "goods" within the meaning of NEV. REV. STAT. §§104.2105(1) and 104A.2103(1)(h).

1642.  In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period

of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1643. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1644. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1645. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1646. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1647. The members of the Class could not have reasonably discovered the ACU Defect.

1648. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1649. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1650. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1651. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1652. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1653. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1654. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1655. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1656. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1657. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1658. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1659. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 30.    New Hampshire

### NEW HAMPSHIRE COUNT I

### VIOLATION OF THE N.H. CONSUMER PROTECTION ACT
### (N.H. REV. STAT. ANN. §358-A:1, *ET SEQ.*)
### AGAINST ALL DEFENDANTS

1660. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Hampshire against all Defendants.

1661. The members of the Class and Defendants are "persons" within the meaning of N.H. REV. STAT. ANN. §358-A:1(I).

1662. Defendants were and are engaged in "trade or commerce" within the meaning of N.H. REV. STAT. ANN. §358-A:1(II).

1663. The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … [r]epresenting that goods or services have … characteristics, … uses, benefits, or quantities that they do not have; … [r]epresenting that goods or services are of a particular standard, quality, or grade, … if they are of   another; … [and] [] [a]dvertising goods or services with intent not to sell them as advertised." N.H. REV. STAT. ANN. §358A:2(V), (VII), and (IX).

1664. In the course of Defendants' business, Defendants violated the New Hampshire CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Hampshire CPA: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1665. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1666. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the New Hampshire CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1667. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1668. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1669. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1670. Defendants knew or should have known that their conduct violated the New Hampshire CPA.

1671. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1672. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1673. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1674. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1675. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to

the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1676. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1677.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1678.  As a direct and proximate result of Defendants' violations of the New Hampshire CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

1679.  Pursuant to N.H. REV. STAT. ANN. §358A:10, the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the New Hampshire CPA.

**NEW HAMPSHIRE COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(N.H. REV. STAT. ANN. §§382-A:2-314, 382-A:2-315, 382-A:2A-103,**
**AND 382-A:2A-212)**
**AGAINST ALL DEFENDANTS**

1680.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Hampshire, against all Defendants.

- 354 -

1681. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under N.H. Rev. Stat. Ann. §382-A:2-104(1), and "sellers" of motor vehicles and/or ACUs under §382-A:2-103(1)(d).

1682. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. Ann. §382-A:2A-103(1)(p).

1683. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. Ann. §§382-A:2-105(1) and 382-A:2A-103(1)(h).

1684. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.H. Rev. Stat. Ann. §§382-A:2-314 and 382-A:2A-212.

1685. In addition, a warranty that the Class Vehicles and/or the defective ACUs were fit for their particular purpose is implied by law pursuant to N.H. Rev. Stat. Ann. §382-A:2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them that the New Hampshire Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the New Hampshire Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1686. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1687. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1688. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### NEW HAMPSHIRE COUNT III

### BREACH OF EXPRESS WARRANTY
### (N.H. REV. STAT. ANN. §§382-A:2-313, 382-A:2A-103, AND 382-A:2A-210) AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1689. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Hampshire, against the Vehicle Manufacturer Defendants.

1690. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under N.H. REV. STAT. ANN. §382-A:2-104(1), and "sellers" of motor vehicles under §382-A:2-103(1)(d).

1691. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. REV. STAT. ANN. §382-A:2A-103(1)(p).

1692. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. REV. STAT. ANN. §§382-A:2-105(1) and 382-A:2A-103(1)(h).

1693. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles,

whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1694. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1695. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1696. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the

Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1697. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1698. The members of the Class could not have reasonably discovered the ACU Defect.

1699. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1700. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1701. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1702. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1703. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1704. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1705. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which

unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1706. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1707. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1708. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1709. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1710. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 31. New Jersey

### NEW JERSEY COUNT I

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. §56:8-1, *ET SEQ.*)
### AGAINST ALL DEFENDANTS

1711. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Jersey against all Defendants.

1712. The members of the Class and Defendants are "persons" within the meaning of N.J. STAT. ANN. §56:8-1(d).

1713. Defendants were and are engaged in "sales" of "merchandise" within the meaning of §56:8-1(c)-(d).

1714. The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. STAT. ANN. §56:8-2.

1715. In the course of Defendants' business, Defendants violated the New Jersey CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New Jersey CFA: representing that the Class

Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1716. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1717. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the New Jersey CFA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1718. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1719. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag

systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1720. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1721. Defendants knew or should have known that their conduct violated the New Jersey CFA.

1722. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1723. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1724. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

> (a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;
>
> (b)   intentionally concealed the foregoing from the Class; and/or
>
> (c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1725. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1726. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1727. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1728. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1729. As a direct and proximate result of Defendants' violations of the New Jersey CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

1    1730.  Pursuant to N.J. STAT. ANN. §56:8-19, the members of the Class seek an

2    order awarding damages, treble damages, and any other just and proper relief

3    available under the New Jersey CFA.

4                              **NEW JERSEY COUNT II**

5                    **BREACH OF IMPLIED WARRANTIES**
       **(N.J. STAT. ANN. §§12A:2-314, 12A:2-315, 12A:2A-103, AND 12A:2A-212)**
6                          **AGAINST ALL DEFENDANTS**

7    1731. Plaintiffs bring this claim on behalf of all members of the Class, or

8    alternatively the members of the Class that reside and/or purchased or leased their

9    Class Vehicles in New Jersey, against all Defendants.

10   1732. Defendants are and were at all relevant times "merchants" with respect

11   to motor vehicles and/or ACUs under N.J. STAT. ANN. §12A:2-104(1), and "sellers"

12   of motor vehicles and/or ACUs under §12A:2-103(1)(d).

13   1733. With respect to leases, Vehicle Manufacturer Defendants are and were

14   at all relevant times "lessors" of motor vehicles under N.J. STAT. ANN. §12A:2A-

15   103(1)(p).

16   1734.  The Class Vehicles and/or the defective ACUs installed in them are and

17   were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§12A:2-

18   105(1) and 2A-103(1)(h).

19   1735. A warranty that the Class Vehicles and/or the defective ACUs installed

20   in them were in merchantable condition and fit for the ordinary purpose for which

21   such goods are used is implied by law pursuant to N.J. STAT. ANN. §§12A:2-314 and

22   2A-212.

23   1736. In addition, a warranty that the Class Vehicles and/or the defective

24   ACUs were fit for their particular purpose is implied by law pursuant to N.J. STAT.

25   ANN. §§12A:2-315. Defendants knew at the time of sale of the Class Vehicles and/or

26   the defective ACUs installed in them that the New Jersey Class intended to use the

27   vehicles in a manner requiring a particular standard of performance and durability,

28

1    and that the New Jersey Class was relying on Defendants' skill and judgment to

2    furnish suitable products for this particular purpose.

3        1737. The Class Vehicles and/or the defective ACUs installed in them, when

4    sold or leased (if applicable) and at all times thereafter, were not in merchantable

5    condition, not fit for the ordinary purpose, and not fit for their particular purpose as

6    a result of their inherent defects, as detailed above.  Specifically, they are inherently

7    defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt

8    pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe

9    and reduces their value.

10       1738. Defendants were provided notice of these issues by the numerous

11   consumer complaints against them regarding the ACU Defect, by numerous

12   individual letters and communications sent by Plaintiffs and others within a

13   reasonable amount of time after the allegations of the ACU Defect became public,

14   and by internal and NHTSA investigations, *inter alia*.

15       1739. As a direct and proximate result of Defendants' breach of the implied

16   warranty of merchantability, the members of the Class have been damaged in an

17   amount to be proven at trial.

18                          **NEW JERSEY COUNT III**

19                    **BREACH OF EXPRESS WARRANTY**
     **(N.J. STAT. ANN. §§12A:2-314, 12A:2-315, 12A:2A-103, AND 12A:2A-210)**
20            **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

21       1740. Plaintiffs bring this claim on behalf of all members of the Class, or

22   alternatively the members of the Class that reside and/or purchased or leased their

23   Class Vehicles in New Jersey, against the Vehicle Manufacturer Defendants.

24       1741. Vehicle Manufacturer Defendants are and were at all relevant times

25   "merchants" with respect to of motor vehicles under N.J. STAT. ANN. §12A:2-104(1),

26   and "sellers" of motor vehicles under §12A:2-103(1)(d).

27

28

1742. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.J. STAT. ANN. §12A:2A-103(1)(p).

1743. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§12A:2-105(1) and 2A-103(1)(h).

1744. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1745. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1746. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1747. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1748. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1749. The members of the Class could not have reasonably discovered the ACU Defect.

1750. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1751. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1752. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1753. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1754. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1755. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems

in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1756. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1757. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1758. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1759. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1760. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1761. Accordingly, the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 32.    New Mexico

### NEW MEXICO COUNT I

### VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT (N.M. STAT. ANN. §57-12-1, *ET SEQ.*) AGAINST ALL DEFENDANTS

1762. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Mexico, against all Defendants.

1763. The members of the Class and Defendants are or were "person[s]" of under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. STAT. ANN. §57-12-2. 010549-11 816608 V1.

1764. Defendants' actions set forth herein occurred in the conduct of trade or commerce as defined under N.M. STAT. ANN. §57-12-2.

1765. The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or

- 371 -

does deceive or mislead any person," including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. STAT. ANN. §57-12-2(D).  Defendants' acts and omissions described herein constitute unfair or deceptive acts or  practices under N.M. STAT. ANN. §57-12-2(D).    In addition, Defendants; actions constitute unconscionable actions under N.M. STAT. ANN. §57-12-2(E), since  they  took  advantage  of  the  lack  of  knowledge,  ability,  experience,  and capacity of the members of the Class to a grossly unfair degree.

1766. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or defective ACUs installed in them as  described  herein,  and  otherwise  engaged  in  activities with a tendency or capacity to deceive.  Accordingly, Defendants engaged in unfair methods  of  competition,  unconscionable  acts  or  practices,  and  unfair  or  deceptive acts or  practices, including representing that the Class Vehicles and/or the defective airbag systems  installed in them  have  characteristics,  uses,  benefits,  and qualities which they do not have; representing that Class  Vehicles  and/or  defective  ACUs installed in them are of a  particular standard and quality when they are not; failing to reveal a material fact, the  omission of which tends to mislead or deceive the consumer, and  which  fact  could  not   reasonably  be  known  by  the  consumer;  making  a representation of fact or statement of  fact material to the transaction such that a person reasonably believes the represented  or suggested state of affairs to be other than it actually is; and/or failing to reveal facts  that are material to the transaction in light of representations of fact made in a positive  manner.

1767. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1768. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing

them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the New Mexico UTPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1769. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1770. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1771. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1772. Defendants knew or should have known that their conduct violated the New Mexico UTPA.

1773. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1774. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1775. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

      (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

      (b)    intentionally concealed the foregoing from the Class; and/or

      (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1776. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1777. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable

1   manufacturer of unsafe vehicles that conceals defects rather than promptly remedies

2   them.

3       1778. The members of the Class suffered ascertainable loss caused by

4   Defendants' misrepresentations and their failure to disclose material information.

5   Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the

6   defective airbag systems installed in them, and Defendants' complete disregard for

7   safety, the members of the Class either would have paid less for their vehicles or

8   would not have purchased or leased them at all.  The members of the Class had no

9   way of discerning that Defendants' representations were false and misleading, or

10  otherwise learning the facts that Defendants had concealed or failed to disclose.

11      1779. The members of the Class did not receive the benefit of their bargain as

12  a result of Defendants' misconduct.

13      1780. Defendants' violations present a continuing risk to the members of the

14  Class, as well as to the general public.

15      1781. Defendants' unlawful acts and practices complained of herein affect the

16  public interest.

17      1782. As a direct and proximate result of Defendant's violations of the New

18  Mexico  UTPA, the members of the Class have suffered injury-in-fact and/or actual

19  damage.

20      1783. Pursuant to N.M. STAT. ANN. §57-12-10, the members of the Class seek

21  monetary relief against Defendants for actual damages or $100, whichever is

22  greater, in addition to treble damages.

23      1784. The members of the Class also seek declaratory relief, punitive damages,

24  an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and

25  reasonable attorneys' fees and costs, as well as other proper and just relief under the

26  New Mexico UTPA.

27

28

**NEW MEXICO COUNT II**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.M. STAT. ANN. §§55-2-314, 55-2A-103, 55-2A-212)**
**AGAINST ALL DEFENDANTS**

1785. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Mexico, against all Defendants.

1786. Defendants are and were at all relevant times "merchants" with respect to motor vehicle sales under N.M. STAT. ANN. §55-2-104(1) and "sellers" of motor vehicles under §55-2-103(1)(d).

1787. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. STAT. ANN. §55-2A-103(1)(p).

1788. Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of N.M. STAT. ANN. §§55-2-105(1) and 55-2A-103(1)(h).

1789. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. STAT. ANN. §§55-2-314 and 55-2A-212.

1790. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1791. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous

individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1792. As a direct and proximate result of Defendants' breach of the implied warranty  of merchantability, the members of the Class have been damaged in  an amount to be proven at trial.

## NEW MEXICO COUNT III

### BREACH OF EXPRESS WARRANTY
### (N.M. STAT. ANN. §§55-2-314, 55-2A-103, AND 55-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

1793. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New Mexico, against the Vehicle Manufacturer Defendants.

1794. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or the defective airbag systems installed in them under N.M. STAT. ANN. §55-2-104(1), and "sellers" of the Class Vehicles and/or defective ACUs installed in them  under N.M. STAT. ANN. §55-2-103(1)(d).

1795. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of  motor vehicles under N.M. STAT. ANN. §55-2A-103(1)(p).

1796. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the  meaning of N.M. STAT. ANN. §§55-2-105(1) and 55-2A-103(1)(h).

1797. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides

a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1798. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1799. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1800. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable

warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1801. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1802. The members of the Class could not have reasonably discovered the ACU Defect.

1803. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1804. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1805. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith;

and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1806. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1807. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1808. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1809. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable

and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1810. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1811. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1812. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1813. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1814. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 33.   New York

### NEW YORK COUNT I

**DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF N.Y. LAW
(N.Y. GEN. BUS. LAW §349)
AGAINST ALL DEFENDANTS**

1815. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New York, against all Defendants.

1816.  The members of the Class are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. GEN. BUS. LAW §349(h).  Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW §349.

1817.  The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."   N.Y. GEN. BUS. LAW §349.

1818. In the course of Defendants' business, Defendants violated the New York GBL by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the New York GBL, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1819. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1820. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the New York GBL. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1821. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1822. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1823. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1824. Defendants knew or should have known that their conduct violated the New York GBL.

1825.  As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1826.  To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1827.  Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

    (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    (b)    intentionally concealed the foregoing from the Class; and/or

    (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1828.  Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1829. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to

the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1830. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1831.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1832.  As a direct and proximate result of Defendant's violations of the New York GBL, the Class members have suffered injury-in-fact and/or actual  damage.

1833.  Pursuant to N.Y. GEN. BUS. LAW §349, the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief under the  New York GBL.

## NEW YORK COUNT II

### BREACH OF IMPLIED WARRANTIES
### (N.Y. U.C.C. LAW §§2-314, 2-315, 2A-103, AND 2A-212)
### AGAINST ALL DEFENDANTS

1834. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in New York, against all Defendants.

1835. Defendants are and were at all relevant times  "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under N.Y. U.C.C. LAW

- 385 -

§2-104(1), and "sellers" of the Class Vehicles and/or the defective airbag systems installed in them under N.Y. U.C.C. LAW §2-103(1)(d).

1836. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.Y. U.C.C. LAW §2A-103(1)(p).

1837. Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§2-105(1) and 2A-103(1)(h).

1838. A warranty that the Class Vehicles and/or the defective airbag systems installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.Y. U.C.C. LAW §§2-314 and 2A-212.

1839. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to N.Y. U.C.C. LAW §2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

1840. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1841. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a

1   reasonable amount of time after the allegations of the ACU Defect became public,

2   and by internal and NHTSA investigations, *inter alia*.

3       1842. As a direct and proximate result of Defendants' breach of its implied

4   warranties, the Class members have been damaged in an amount to be determined

5   at trial.

6   ### NEW YORK COUNT III

7   **BREACH OF EXPRESS WARRANTY**
**(N.Y. U.C.C. LAW §§2-313, 2A-103, AND 2A-210)**

8   **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

9       1843. Plaintiffs bring this claim on behalf of all members of the Class, or

10   alternatively the members of the Class that reside and/or purchased or leased their

11   Class Vehicles in New York, against the Vehicle Manufacturer Defendants.

12       1844. Vehicle Manufacturer Defendants are and were at all relevant times

13   "merchants" with respect to the Class Vehicles and/or defective ACUs installed in

14   them under N.Y. U.C.C. LAW §2-104(1), and "sellers" of the Class Vehicles and/or

15   defective ACUs under §2-103(1)(d).

16       1845. With respect to leases, Vehicle Manufacturer Defendants are and were

17   at all relevant times "lessors" of motor vehicles under N.Y. U.C.C. LAW §2A-

18   103(1)(p).

19       1846. The Class Vehicles and/or defective ACUs installed in them are and

20   were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§2-

21   105(1) and 2A-103(1)(h).

22       1847. In connection with the purchase of all Class Vehicles, Vehicle

23   Manufacturer Defendants provided express warranties. Kia provides a limited basic

24   warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

25   repairs to vehicles that fail to function properly during normal use. Honda provides

26   a New Vehicle Limited Warranty for a period of three years or 36,000 miles,

27   whichever occurs first, and covers any repair or replacement of any part that is

28

defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1848. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1849. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1850. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods

in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1851. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1852. The members of the Class could not have reasonably discovered the ACU Defect.

1853. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1854. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1855. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1856. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1857. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1858. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1859. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which

unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1860. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1861. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1862. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1863. As a direct and proximate result of the Vehicle Manufacturer Defendants' breach of their express warranties, the Class members have been damaged in an amount to be determined at trial.

1864. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 34.   North Carolina

**NORTH CAROLINA COUNT I**

**VIOLATION OF NORTH CAROLINA'S UNFAIR AND DECEPTIVE
ACTS AND PRACTICES ACT
(N.C. GEN. STAT. §75-1.1, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

1865.   Plaintiffs Ann Marie Gray and Tonya McNeely (for the purposes of this section, "Plaintiffs") brings this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in North Carolina, against all Defendants.

1866.   North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. §75-1.1, *et seq.* ("North Carolina UDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]"  The North Carolina UDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the North Carolina UDTPA. N.C. GEN. STAT. §75-16.

1867.   Defendants' acts and practices complained of herein were performed in the course of Defendants' trades or businesses and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. §75-1.1(b).

1868.   In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a

particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1869. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1870. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the North Carolina UDTPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1871. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1872. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to

and did in fact deceive reasonable consumers, including Plaintiffs and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1873. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiffs and the members of the Class.

1874. Defendants knew or should have known that their conduct violated the North Carolina UDTPA.

1875. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1876. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1877. Defendants owed Plaintiffs and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from Plaintiffs and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding

material facts from Plaintiffs and the Class that contradicted these representations.

1878. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1879. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiffs and the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1880. Plaintiffs and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiffs and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1881. Plaintiffs and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1882. Defendants' violations present a continuing risk to Plaintiffs and the members of the Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1883.  The repairs instituted by Defendants, if any, have not been adequate.

1884.  As a direct and proximate result of Defendants' violations of the North Carolina UDTPA, Plaintiffs and the members of the Class have suffered injury-in-fact and/or actual damage.

1885.  Pursuant to N.C. GEN. STAT. §75-16, Plaintiffs and the members of the Class seek monetary relief against Defendants for actual damages, in addition to treble damages.  Plaintiffs and the members of the Class also seek declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs pursuant to N.C. GEN. STAT. 75-16.1, as well as other proper and just relief under the North Carolina UDTPA.

## NORTH CAROLINA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (N.C. GEN. STAT. §§25-2-314, 25-2-315, 25-2A-103, AND 252A-212)
### AGAINST ALL DEFENDANTS

1886. Plaintiffs Ann Marie Gray and Tonya McNeely (for the purposes of this section, "Plaintiffs") brings this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in North Carolina, against all Defendants.

1887. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under N.C. GEN. STAT. §25-2-104(1), and "sellers" of motor vehicles and/or ACUs under §25-2-103(1)(d).

1888. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.C. GEN. STAT. §25-2A-103(1)(p).

- 396 -

1889.  The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. §§25-2-105(1) and 25-2A-103(1)(h).

1890.  A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.C. GEN. STAT. §§25-2-314 and §25-2A-212.

1891.  The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

1892. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

1893.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

**NORTH CAROLINA COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(N.C. GEN. STAT. §§25-2-313 AND 25-2A-103)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

1894. Plaintiffs Ann Marie Gray and Tonya McNeely (for the purposes of this section, "Plaintiffs") brings this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or

leased their Class Vehicles in North Carolina, against the Vehicle Manufacturer Defendants.

1895. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to of motor vehicles under N.C. GEN. STAT. §25-2-104(1), and "sellers" of motor vehicles under §25-2-103(1)(d).

1896. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.C. GEN. STAT. §25-2A-103(1)(p).

1897. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. §§25-2-105(1) and 25-2A-103(1)(h).

1898. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty

for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1899. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiffs and the Class.

1900. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

1901. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

1902. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1903. Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

1904. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1905. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1906. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiffs and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1907. Plaintiffs and the members of the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1908. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

1909. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to

their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1910. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and the members of the Class.  Among other things, Plaintiffs and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiffs and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1911. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1912. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1913. Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1914. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

1915. Accordingly, Plaintiffs and the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 35. North Dakota

### NORTH DAKOTA COUNT I

**VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT (N.D. CENT. CODE §51-15-02) AGAINST ALL DEFENDANTS**

1916. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in North Dakota, against all Defendants.

1917. The members of the Class and Defendants are "persons" within the meaning of N.D. CENT. CODE §51-15-02(4).

1918. Defendants engaged in the "sale" of "merchandise" within the meaning of N.D. CENT. CODE §51-15-02(3), (5).

1919. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. CENT. CODE §51-15-02. As set forth above and below, Defendants committed deceptive acts or practices, with the intent that the Class members rely thereon in connection with their purchase of the Class Vehicles and/or defective ACUs.

1920. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or defective ACUs installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair or deceptive acts or practices, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles and/or defective ACUs installed in them are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1921. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1922. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable

manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the North Dakota CFA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1923. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1924. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1925. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1926. Defendants knew or should have known that their conduct violated the North Dakota CFA.

1927. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1928. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1929. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

    (a)    possessed exclusive knowledge regarding the durability, reliability, safety, and performance of the Class Vehicles and/or defective ACUs, as detailed above;

    (b)    intentionally concealed the foregoing from the Class; and/or

    (c)    made incomplete representations that it warranted defective components in the Class Vehicles and/or defective ACUs, while purposefully withholding material facts from the Class that contradicted these representations.

1930. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1931. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable

manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1932. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1933. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1934. Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.

1935. Defendants' unlawful acts and practices complained of herein affect the public interest.

1936. As a direct and proximate result of Defendant's violations of the North Dakota CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

1937. The Class members seek punitive damages against Defendants because their conduct was egregious. Defendants' egregious conduct warrants punitive damages.

1938. Further, Defendants knowingly committed the conduct described above, and thus, under N.D. CENT. CODE §51-15-09, Defendants are liable to the members of the Class for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. The members of the Class also seek declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful,

and/or deceptive practices, and  reasonable attorneys' fees and costs, as well as other proper and just relief under the  North Dakota CFA.

**NORTH DAKOTA COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(N.D. CENT. CODE §§41-02-31, 41-02-32, 41-02.1-03, AND 41-02.1-21)**
**AGAINST ALL DEFENDANTS**

1939. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in North Dakota, against all Defendants.

1940.  Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs under N.D. CENT. CODE §41-02-04(3), and "sellers" of the Class Vehicles and/or defective ACUs  under §41-02-03(1)(d).

1941.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of  motor vehicles under N.D. CENT. CODE §41-02.1-03(1)(p).

1942. Class Vehicles and/or defective ACUs installed in them were at all relevant times "goods" within the  meaning of N.D. CENT. CODE §§41-02-05(2) and 41-02.1-03(1)(h).5.

1943. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit  for the ordinary purpose  for  which vehicles are used is implied by law pursuant to N.D. CENT. CODE §§41-02-31  and 41-02.1-21.

1944. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to N.D. CENT. CODE §41-02-32.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and

1  durability, and that the Class was relying on Defendants' skill and judgment to
2  furnish suitable products for this particular purpose.

3  1945. The Class Vehicles and/or the defective ACUs installed in them, when
4  sold or leased (if applicable) and at all times thereafter, were not in merchantable
5  condition, not fit for the ordinary purpose, and not fit for their particular purpose as
6  a result of their inherent defects, as detailed above.  Specifically, they are inherently
7  defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt
8  pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe
9  and reduces their value.

10  1946. Defendants were provided notice of these issues by the numerous
11  consumer complaints against them regarding the ACU Defect, by numerous
12  individual letters and communications sent by Plaintiffs and others within a
13  reasonable amount of time after the allegations of the ACU Defect became public,
14  and by internal and NHTSA investigations, *inter alia*.

15  1947. As a direct and proximate result of Defendants' breach of the implied
16  warranty of merchantability, the Class members have been damaged in an amount to
17  be proven at trial.

18  **NORTH DAKOTA COUNT III**

19  **BREACH OF EXPRESS WARRANTY**
   **(N.D. CENT. CODE §§41-02-30, 41-02.1-03, AND 41-02.1-19)**
20  **AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

21  1948. Plaintiffs bring this claim on behalf of all members of the Class, or
22  alternatively the members of the Class that reside and/or purchased or leased their
23  Class Vehicles in North Dakota, against the Vehicle Manufacturer Defendants.

24  1949. Vehicle Manufacturer Defendants are and were at all relevant times
25  "merchants" with respect to the Class Vehicles and/or the defective airbag systems
26  installed in them under N.D. CENT. CODE §41-02.04(3), and "sellers" of the Class
27  Vehicles and/or defective ACUs installed in them under §41-02-03(1)(d).

28

- 408 -

1950. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. CENT. CODE §41-02.1-03(1)(p).

1951. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of N.D. CENT. CODE §41-02-05(2) and 41-02.1-03(1)(h).

1952. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

1953. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

1954. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

1955. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

1956. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1957. The members of the Class could not have reasonably discovered the ACU Defect.

1958. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

1959. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

1960. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

1961. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

1962. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

1963. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag

systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

1964. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

1965. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1966. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1967.  The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

1968.  As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

1969.  Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 36.   Ohio

### OHIO COUNT I

### VIOLATION OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE ANN. §1345.01, *ET SEQ.*) AGAINST ALL DEFENDANTS

1970.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Ohio, against all Defendants.

1971.  The Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, OHIO REV. CODE ANN. §1345.01 ("Ohio CSPA").  Defendants are "suppliers" as defined by the Ohio CSPA.  The Class members' purchases or leases of the Class Vehicles and/or defective ACUs installed in them were "consumer transactions" as  defined by the Ohio CSPA.

1972. By willfully failing to disclose and actively concealing the Class Vehicles and/or defective ACUs installed in them, Defendants engaged in deceptive business practices prohibited by the Ohio CSPA, including (a) representing that the Class Vehicles and/or defective ACUs installed in them have characteristics, uses,  benefits, and qualities which they do not have; (b) representing that the Class

Vehicles and/or defective ACUs are of a particular standard, quality, and grade when they are not; (c) advertising the Class Vehicles and/or defective ACUs with the intent not to sell them as advertised; and (d) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

1973. In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or defective ACUs installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles and/or defective ACUs installed in them are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1974. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

1975. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Ohio CSPA. Defendants deliberately withheld the

- 414 -

information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

1976. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1977. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1978. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

1979. Defendants knew or should have known that their conduct violated the Ohio CSPA.

1980. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

1981. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic

consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1982. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1983. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1984. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1985. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1986.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor implied warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the Ohio CSPA.   These cases include, but are not limited to, the following:

(i)      *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

(ii)     *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

(iii)    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

(iv)     *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

(v)      *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

(vi)     *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

(vii)    *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

(viii)   *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

(ix)     *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

(x)      *Khouri v. Don Lewis* (OPIF #100001995);

(xi)     *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

(xii)    *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

(xiii)   *Brown v. Spears* (OPIF #10000403).

1987. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1988.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

1989. Defendants' violations present a continuing risk to the members of the Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1990.  The repairs instituted by Defendants, if any, have not been adequate.

1991.  As a direct and proximate result of Defendant's violations of the Ohio CSPA, the Class members have suffered injury-in-fact and/or actual  damage.

1992.  The members of the Class seek monetary relief against Defendants for actual damages, in addition to treble damages.

1993. The members of the Class also seek declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and  reasonable attorneys' fees and costs pursuant to OHIO REV. CODE ANN. §1345.09, as well as  other proper and just relief under the Ohio CSPA.

## OHIO COUNT II

### BREACH OF IMPLIED WARRANTIES
### (OHIO REV. CODE ANN. §§1302.27, 1310.01, AND 1310.19)
### AGAINST ALL DEFENDANTS

1994. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Ohio, against all Defendants.

1995. Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs under OHIO REV. CODE ANN. §1302.1(A)(5) and "sellers" of the Class Vehicles and/or defective ACUs under §1302.1(A)(4).

1996. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under OHIO REV. CODE ANN. §1310.01(A)(20).

1997. Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§1302.1(A)(8) and 1310.01(A)(8).

1998. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to OHIO REV. CODE ANN. §§1302.27 and 1310.19.

1999. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2000. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2001. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Class members have been damaged in an amount to be proven at trial.

### OHIO COUNT III

**BREACH OF EXPRESS WARRANTY**
**(OHIO REV. CODE ANN. §§1302.26 AND 1310.01)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

2002. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Ohio, against the Vehicle Manufacturer Defendants.

2003. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs under OHIO REV. CODE ANN. §§1302.1(A)(5) and 1310.01(A)(20), and "sellers" of the Class Vehicles and/or defective ACUs under §1302.1(A)(4).

2004. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under OHIO REV. CODE ANN. §1310.01(A)(20).

2005. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§1302.1(A)(8) and 1310.01(A)(8).

2006. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2007. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2008. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2009. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and

concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2010. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2011. The members of the Class could not have reasonably discovered the ACU Defect.

2012. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2013. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2014. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith;

and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2015. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2016. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2017. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2018. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable

and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2019. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2020. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2021. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2022. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2023. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1      **37.   Oklahoma**

2                    **OKLAHOMA COUNT I**

3      **VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT**
       **(OKLA. STAT. TIT. 15 §751, *ET SEQ.*)**
4                **AGAINST ALL DEFENDANTS**

5      2024. Plaintiff Charles Williams (for the purposes of this section, "Plaintiff")

6      brings this claim on behalf of himself and all members of the Class, or alternatively

7      the members of the Class that reside and/or purchased or leased their Class Vehicles

8      in Oklahoma, against all Defendants.

9      2025. Plaintiff and the Members of the Class are "persons" under the

10     Oklahoma Consumer Protection Act ("Oklahoma CPA"), OKLA. STAT. tit. 15, §752.

11     2026. Defendants are "persons," "corporations," or "associations" within the

12     meaning of OKLA. STAT. tit. 15, §15-751(1).

13     2027. The sale of the Class Vehicles, and/or defective ACUs installed in

14     such vehicles, to Plaintiff and the Class members was a "consumer transaction"

15     within the meaning of OKLA. STAT. tit. 15, §752, and Defendants' actions as set

16     forth herein occurred in the conduct of trade or commerce.

17     2028. The Oklahoma CPA declares unlawful, *inter alia*, the following acts or

18     practices when committed in the course of business: "mak[ing] a false or misleading

19     representation, knowingly or with reason to know, as to the characteristics… uses, [or]

20     benefits, of the subject of a consumer transaction," or making a false representation,

21     "knowingly or with reason to know, that the subject of a consumer transaction is of a

22     particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or

23     with reason to know, the subject of a consumer transaction with intent not to sell it as

24     advertised"; and otherwise committing "an unfair or deceptive trade practice." *See*

25     OKLA. STAT. tit. 15, §753.

26     2029. In the course of Defendants' business, Defendants violated the

27     Oklahoma CPA by failing to disclose and actively concealing the dangers and risks

28

                                    - 425 -

posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Oklahoma CPA, including: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2030. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2031. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Oklahoma CPA.   Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2032. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.   Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2033. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2034. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff and the members of the Class.

2035. Defendants knew or should have known that their conduct violated the Oklahoma CPA.

2036. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2037. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2038. Defendants owed Plaintiff and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Plaintiff and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiff and the Class that contradicted these representations.

2039. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2040. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff and the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2041. Plaintiff and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2042.  Plaintiff and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2043.  As a direct and proximate result of Defendant's violations of the Oklahoma CPA, Plaintiff and the Class members have suffered injury-in-fact and/or actual damage.

2044.  Pursuant to OKLA. STAT. tit. 15, §761.1, Plaintiff and the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Oklahoma CPA.

## OKLAHOMA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (OKLA. STAT. ANN. TIT. 12A §§2-314, 2-315, 2A-103, AND 2A-212)
### AGAINST ALL DEFENDANTS

2045.  Plaintiff Charles Williams (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Oklahoma, against all Defendants.

2046.  Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under OKLA. STAT. ANN. tit. 12A, §§2-104(1) and 2-1103(3), and "sellers" of the Class Vehicles and/or defective ACUs under 12A, §2-103(1)(d).

2047.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under OKLA. STAT. ANN. tit. 12A, §2A-103(1)(p).

2048.  Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of OKLA. STAT. ANN. tit. 12A, §§2-105(1) and 2A-103(1)(h).

- 429 -

2049. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OKLA. STAT. ANN. tit. 12A, §2-314 and 2A-212.

2050. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to OKLA. STAT. ANN. tit. 12A, §2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiff and the members of the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2051. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2052. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2053. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the Class members have been damaged in an amount to be proven at trial.

## OKLAHOMA COUNT III

### BREACH OF EXPRESS WARRANTY
### (OKLA. STAT. ANN. TIT. 12A §2-313, 2A-103, AND 2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2054. Plaintiff Charles Williams (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Oklahoma, against the Vehicle Manufacturer Defendants.

2055. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under OKLA. STAT. ANN. tit. 12A, §§2-104(1) and 2-1103(3), and "sellers" of the Class Vehicles and/or defective ACUs installed in them under 12A, §2-103(1)(d).

2056. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under OKLA. STAT. ANN. tit. 12A, §2A-103(1)(p).

2057. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of OKLA. STAT. ANN. tit. 12A, §§2-105(1) and 2A-103(1)(h).

2058. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited

warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2059. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiff and the members of the Class.

2060. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

2061. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

2062.  Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2063.  Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

2064. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2065.  The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2066. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2067. Plaintiff and the Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile

given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2068. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff and the members of the Class are not limited to the warranties' remedies.

2069. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2070. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Class.  Among other things, Plaintiff and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants

knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2071. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2072. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2073. Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2074. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

2075. Accordingly, Plaintiff and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 38.   Oregon

### OREGON COUNT I

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
(OR. REV. STAT. §646.605, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

2076. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Oregon, against all Defendants.

2077. The members of the Class and Defendants are "persons" within the meaning of OR. REV. STAT. §646.605(4).

2078. The Class Vehicles and/or defective ACUs installed in them are "goods" obtained primarily for personal, family, or household purposes within the meaning of OR. REV. STAT. §646.605(6).

2079. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "[] [r]epresent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; … [] [r]epresent[ing] that … goods … are of a particular standard [or] quality … if they are of another; … [] [a]dvertis[ing] … goods or services with intent not to provide them as advertised; … [and] [] engag[ing] in any other unfair or deceptive conduct in trade or commerce." OR. REV. STAT. §646.608(1).

2080. In the course of Defendants' business, Defendants violated the Oregon UTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Oregon UTPA, including representing that the Class Vehicles

and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2081. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2082. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Oregon UTPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2083. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2084. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag

systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2085. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2086. Defendants knew or should have known that their conduct violated the Oregon UTPA.

2087. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2088. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2089. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2090. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2091. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2092. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2093.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2094.  As a direct and proximate result of Defendant's violations of the Oregon UTPA, the Class members have suffered injury-in-fact and/or actual  damage.

2095.  Pursuant to OR. REV. STAT. §646.638(1), the  members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Oregon UTPA.

**OREGON COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(OR. REV. STAT. §§72.3140, 72.3150, 72A.1030, AND 72A.2120)**
**AGAINST ALL DEFENDANTS**

2096. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Oregon, against all Defendants.

2097. Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under OR. REV. STAT. §§72.1040(1) and 72A.1030(1)(t), and "sellers" of the Class Vehicles and/or defective ACUs under §72.1030(1)(d).

2098. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under OR. REV. STAT. §72A.1030(1)(p).

2099. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of OR. REV. STAT. §§72.1050(1) and 72A.1030(1)(h).

2100. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OR. REV. STAT. §§72.3140 and 72A-2120.

2101. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to OR. REV. STAT. §§72.3140 and 72A-2120. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2102. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable

- 440 -

condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2103. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2104. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Class members have been damaged in an amount to be proven at trial.

## OREGON COUNT III

### BREACH OF EXPRESS WARRANTY
### (OR. REV. STAT. §72.3130, 72A.1030, AND 72A.2100)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2105. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Oregon, against the Vehicle Manufacturer Defendants.

2106. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under OR. REV. STAT. §§72.1040(1) and 72A.1030(1)(t), and "sellers" of the Class Vehicles and/or defective ACUs under §72.1030(1)(d).

2107. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under OR. REV. STAT. §72A.1030(1)(p).

1    2108. The Class Vehicles and/or defective ACUs installed in them are and

2    were at all relevant times "goods" within the  meaning of OR. REV. STAT.

3    §§72.1050(1) and 72A.1030(1)(h).

4    2109. In connection with the purchase of all Class Vehicles, Vehicle

5    Manufacturer Defendants provided express warranties.  Kia provides a limited basic

6    warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

7    repairs to vehicles that fail to function properly during normal use.  Honda provides

8    a New Vehicle Limited Warranty for a period of three years or 36,000 miles,

9    whichever occurs first, and covers any repair or replacement of any part that is

10   defective in material or workmanship under normal use.  Toyota provides a New

11   Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever

12   occurs first, and covers repairs and adjustments needed to correct defects in materials

13   or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited

14   warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

15   the repair of any item on a vehicle that is defective in material, workmanship, or

16   factory preparation.  Hyundai provides a new vehicle limited warranty for a period

17   of five years or 60,000 miles, whichever occurs first, and covers the repair or

18   replacement of any component manufactured or originally installed by Hyundai that

19   is defective in material or factory workmanship, under normal use and maintenance.

20   Mitsubishi provides a new vehicle limited warranty and a restraint system warranty

21   for a period of five years or 60,000 miles, whichever occurs first, and covers the

22   repair or replacement of any component manufactured or originally installed by

23   Mitsubishi that is defective in material or factory workmanship, under normal use

24   and maintenance.

25   2110. In addition, Vehicle Manufacturer Defendants' various oral and written

26   representations regarding the Class Vehicles' durability, safety, and performance

27   constituted express warranties to the Class.

28

2111. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2112. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2113. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2114. The members of the Class could not have reasonably discovered the ACU Defect.

2115. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2116. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2117. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2118. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2119. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2120. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2121. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2122. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2123. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2124. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2125. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2126. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 39.   Pennsylvania

### PENNSYLVANIA COUNT I

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
(73 PA. CONS. STAT §201-1, *ET SEQ.*)
AGAINST ALL DEFENDANTS**

2127. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Pennsylvania, against all Defendants.

2128. The members of the Class and Defendants are "persons" within the meaning of 73 PA. CONS. STAT. §201-2(2).

2129. The members of the Class purchased the Class Vehicles and/or the defective ACUs installed in them primarily for personal, family, or household purposes within the meaning of 73 PA. CONS. STAT. §201-9.2.

2130. All of the acts complained of herein were perpetrated by Defendants in the course of trade or commerce within the meaning of 73 PA. CONS. STAT. §201-2(3).

2131. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, … Benefits or qualities that they do not have"; (ii) "Representing that goods or services are of a particular

- 446 -

1  standard, quality or grade … if they are of another"; (iii) "Advertising goods or
2  services with intent not to sell them as advertised"; and (iv) "Engaging in any other
3  fraudulent or deceptive conduct which creates a likelihood of confusion or
4  misunderstanding."   73 PA. CONS. STAT. §201-2(4).

5      2132. In the course of Defendants' business, Defendants violated the
6  Pennsylvania CPL by failing to disclose and actively concealing the dangers and risks
7  posed by the Class Vehicles and/or the defective airbag systems installed in them, as
8  described above.   Specifically, in marketing, offering for sale, and selling the
9  defective Class Vehicles and/or the defective airbag systems installed in them,
10 Defendants engaged in one or more of the following unfair or deceptive acts or
11 practices which are proscribed by the Pennsylvania CPL, including representing that
12 the Class Vehicles and/or the defective airbag systems installed in them have
13 characteristics or benefits that they do not have; representing that they are of a
14 particular standard and quality when they are not; and/or advertising them with the
15 intent not to sell them as advertised.

16     2133. Defendants have known of the ACU Defect in their defective airbag
17 systems and failed to disclose and actively concealed the dangers and risks posed by
18 the Class Vehicles and/or the defective airbag systems installed in them.

19     2134. By failing to disclose and by actively concealing the ACU Defect in the
20 Class Vehicles and/or the defective airbag systems installed in them, by marketing
21 them as safe, reliable, and of high quality, and by presenting themselves as reputable
22 manufacturers that value safety, Defendants engaged in unfair or deceptive business
23 practices in violation of the Pennsylvania CPL.  Defendants deliberately withheld the
24 information about the propensity of the defective airbag systems to fail to deploy
25 during an accident, in order to ensure that consumers would purchase the Class
26 Vehicles.

27
28

2135. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2136. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2137. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2138. Defendants knew or should have known that their conduct violated the Pennsylvania CPL.

2139. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2140. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2141. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2142. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2143. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2144. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or

would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2145.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2146. As a direct and proximate result of Defendant's violations of the Pennsylvania CPL, the members of the Class have suffered injury-in-fact and/or actual damage.

2147.  Pursuant to 73 PA. CONS. STAT. § 201-9.2(a), the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Pennsylvania CPL.

### PENNSYLVANIA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (13 PA. CONS. STAT. ANN. §§2314, 2315, 2A103, AND 2A212) AGAINST ALL DEFENDANTS

2148.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Pennsylvania, against all Defendants.

2149.  Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under 13 PA. CONS. STAT. ANN. §§2104 and 2A103(a), and "sellers" of the  Class Vehicles and/or defective ACUs under §2103(a).

2150.  With respect to leases, the Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of  motor vehicles under 13 PA. CONS. STAT. ANN. §2A103(1)(p).

2151. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the  meaning of 13 PA. CONS. STAT. ANN. §2105(a) and 2A212.

2152.  A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 13 PA. CONS. STAT. ANN. §2314.

2153.  In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to 13 PA. CONS. STAT. ANN. §2315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2154.  The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2155.  Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2156.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Class members have been damaged in an amount to be proven at trial.

**PENNSYLVANIA COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(13 PA. CONS. STAT. ANN. §§2313, AND 2A103)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

2157. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Pennsylvania, against the Vehicle Manufacturer Defendants.

2158. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under 13 PA. CONS. STAT. ANN. §§2104 and 2A103(a), and "sellers" of the Class Vehicles and/or defective ACUs under §2103(a).

2159. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under 13 PA. CONS. STAT. ANN. §2A103(1)(p).

2160. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. ANN. §2105(a) and 2A103(a).

2161. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2162. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2163. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2164. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2165. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2166. The members of the Class could not have reasonably discovered the ACU Defect.

2167. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2168. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2169. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2170. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2171. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2172.  The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2173. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2174. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2175. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2176. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2177. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2178. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 40.   Rhode Island

### RHODE ISLAND COUNT I

**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (6 R.I. GEN. LAWS §6-13.1, *ET SEQ.*) AGAINST ALL DEFENDANTS**

2179. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Rhode Island, against all Defendants.

2180. Defendants and the Class members are persons within the meaning of 6 R.I. GEN. LAWS §6-13.1-1(3).   The sale of the Class Vehicles and/or defective ACUs installed in them occurred in the course  of "trade and commerce" within the meaning of 6 R.I. GEN. LAWS §6-13.1-1(5).

2181. Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "[] [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have[;]… [] [r]epresenting that goods or services are of a particular standard, quality, or grade …, if they are of another[;]… [] [a]dvertising goods or services with intent not to sell them as advertised[;]… [] [e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding[;] [] [e]ngaging in any act or practice that is unfair or deceptive to the consumer[;] [and] [] [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect."   6  R.I. GEN. LAWS §6-13.1-1(6)(v), (vii), (ix), and (xii)-(xiv).

2182. In the course of Defendants' business, Defendants violated the Rhode Island CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices proscribed by the Rhode Island CPA, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2183. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2184. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Rhode Island CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2185. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2186. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2187. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

- 458 -

2188. Defendants knew or should have known that their conduct violated the Rhode Island CPA.

2189. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2190. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2191. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

    (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    (b)    intentionally concealed the foregoing from the Class; and/or

    (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2192. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2193. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2194. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2195. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2196. As a direct and proximate result of Defendant's violations of the Rhode Island CPA, the members of the Class have suffered injury-in-fact and/or actual damage.

2197. Pursuant to 6 R.I. GEN. LAWS §6-13.1-5.2(a), the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Rhode Island CPA.

# RHODE ISLAND COUNT II

## BREACH OF IMPLIED WARRANTIES
### (6A R.I. GEN. LAWS §§6A-2-314, 6A-2-315, 6A-2.1-103, 6A-2.1-212) AGAINST ALL DEFENDANTS

2198. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Rhode Island, against all Defendants.

2199. Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under 6A R.I. GEN. LAWS §§6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of the Class Vehicles and/or defective ACUs under §6a-2-103(a)(4).

2200. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. GEN. LAWS §6A-2.1-103(1)(p).

2201. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of 6A R.I. GEN. LAWS §§6a-2-105(1) and 6A-2.1-103(1)(h).

2202. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 6A R.I. GEN. LAWS §§6a-2-314 and 6A-2.1-212.

2203. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to 6A R.I. GEN. LAWS §6a-2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2204. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2205. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2206. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Class members have been damaged in an amount to be proven at trial.

### RHODE ISLAND COUNT III

### BREACH OF EXPRESS WARRANTY
### (6A R.I. GEN. LAWS §§6A-2-313, AND 6A-2.1-103)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2207. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Rhode Island, against the Vehicle Manufacturer Defendants.

2208. Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under 6A R.I. GEN. LAWS §§6a-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of the Class Vehicles and/or defective ACUs installed in them under §6a-2-103(a)(4).

2209. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. GEN. LAWS §6A-2.1-103(1)(p).

2210. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of 6A R.I. GEN. LAWS §§6a-2-105(1) and 6A-2.1-103(1)(h).

2211. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2212. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2213. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2214. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2215. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2216. The members of the Class could not have reasonably discovered the ACU Defect.

2217. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2218. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary

purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2219. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2220. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2221. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2222. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems

in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2223. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2224. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2225. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2226. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2227. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2228. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 41.   South Carolina

### SOUTH CAROLINA COUNT I

### VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES (S.C. CODE ANN. §39-5-10, *ET SEQ.*) AGAINST ALL DEFENDANTS

2229. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in South Carolina, against all Defendants.

2230. The members of the Class and Defendants are "persons" under S.C. CODE ANN. §39-5-10.

2231. The sale of the Class Vehicles and/or defective ACUs installed in them is within the meaning of "trade" and "commerce" under S.C. CODE ANN. §39-5-10.

2232. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."   S.C. CODE ANN. §39-5-20(a).

2233. In the course of Defendants' business, Defendants violated the South Carolina UTPA by failing to disclose and actively concealing the dangers and risks

posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the South Carolina UTPA, including representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2234. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2235. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the South Carolina UTPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2236. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2237. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2238. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2239. Defendants knew or should have known that their conduct violated the South Carolina UTPA.

2240. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2241. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2242. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

(c)     made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2243. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2244. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2245. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2246. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2247. As a direct and proximate result of Defendant's violations of the South Carolina UTPA, the members of the Class have suffered injury-in-fact and/or actual damage.

2248. Pursuant to S.C. CODE ANN. §39-5-140(a), the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the South Carolina UTPA.

## SOUTH CAROLINA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (S.C. CODE ANN. §§36-2-314, 36-2-315, 36-2A-103, AND 36-2A-212) AGAINST ALL DEFENDANTS

2249. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in South Carolina, against all Defendants.

2250. Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under S.C. CODE ANN. §§36-2-104(1) and 36-2A-103(1)(t), and "sellers" of the Class Vehicles and/or defective ACUs under §36-2-103(1)(d).

2251. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of  motor vehicles under S.C. CODE ANN. §36-2A-103(1)(p).

2252. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the  meaning of S.C. CODE ANN. §§36-2-105(1).

2253. A warranty that the Class Vehicles and/or defective ACUs installed in them were in merchantable condition and fit  for their ordinary purpose is implied by law pursuant to S.C. CODE ANN. §§36-2-314  and 36-2A-212.

2254. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law

pursuant to S.C. CODE ANN. §36-2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2255. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2256. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2257. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Class members have been damaged in an amount to be proven at trial.

## SOUTH CAROLINA COUNT III

### BREACH OF EXPRESS WARRANTY
### (S.C. CODE ANN. §36-2-313, 36-2A-103, AND 36-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2258. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in South Carolina, against the Vehicle Manufacturer Defendants.

2259. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to the Class Vehicles and/or defective ACUs installed in them under S.C. CODE ANN. §§36-2-104(1) and 36-2A-103(1)(t), and "sellers" of the Class Vehicles and/or defective ACUs installed in them under § 36-2-103(1)(d).

2260. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of  motor vehicles under S.C. CODE ANN. §36-2A-103(1)(p).

2261. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the  meaning of S.C. CODE ANN. §36-2-105(1) and 36-2A-103(1)(h).

2262. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.  Mitsubishi provides a new vehicle limited warranty and a restraint system warranty

for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2263. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2264. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2265. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.   Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2266.  Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2267. The members of the Class could not have reasonably discovered the ACU Defect.

2268. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2269. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2270. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2271. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2272. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2273. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to

their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2274. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2275. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2276. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2277. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2278. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2279. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## 42.   South Dakota

### SOUTH DAKOTA COUNT I

**VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS §37-24-6) AGAINST ALL DEFENDANTS**

2280. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in South Dakota, against all Defendants.

2281. The members of the Class and Defendants are "persons" within the meaning S.D. CODIFIED LAWS §37-24-1(8).

2282. The sale of the Class Vehicles and defective ACUs is within the meaning of "trade" and "commerce" under S.D. CODIFIED LAWS §37-24-1(13).

2283. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."  S.D. CODIFIED LAWS §37-24-6(1).

2284. In the course of Defendants' business, Defendants violated the South Dakota CPL by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the South Dakota CPL: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2285. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2286. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the South Dakota CPL.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy

during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2287. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2288. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2289. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2290. Defendants knew or should have known that their conduct violated the South Dakota CPL.

2291. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2292. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to

buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2293. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2294. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2295. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2296. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the

1   defective airbag systems installed in them, and Defendants' complete disregard for

2   safety, the members of the Class either would have paid less for their vehicles or

3   would not have purchased or leased them at all.  The members of the Class had no

4   way of discerning that Defendants' representations were false and misleading, or

5   otherwise learning the facts that Defendants had concealed or failed to disclose.

6   2297.  The members of the Class did not receive the benefit of their bargain as

7   a result of Defendants' misconduct.

8   2298.  As a direct and proximate result of Defendants' violations of the South

9   Dakota CPL, the members of the Class have suffered injury-in-fact and/or actual

10   damage.

11   2299.  Pursuant to S.D. CODIFIED LAWS §37-24-31, the members of the Class

12   seek an order awarding damages, treble damages, and any other just and proper relief

13   available under the South Dakota CPL.

**SOUTH DAKOTA COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(S.D. CODIFIED LAWS §§57A-2-314, 57A-2-315, 57A-2A-103**
**AND 57A-2A-212)**
**AGAINST ALL DEFENDANTS**

18   2300.  Plaintiffs bring this claim on behalf of all members of the Class, or

19   alternatively the members of the Class that reside and/or purchased or leased their

20   Class Vehicles in South Dakota, against all Defendants.

21   2301.  Defendants are and were at all relevant times "merchants" with respect

22   to motor vehicles and/or ACUs under S.D. CODIFIED LAWS §57A-2-104(1) and 57A-

23   2A-103(1)(t), and "sellers" of motor vehicles and/or ACUs under §57A-2-103(1)(d).

24   2302.  With respect to leases, Vehicle Manufacturer Defendants are and were

25   at all relevant times "lessors" of motor vehicles under S.D. CODIFIED LAWS §57A-

26   2A-103(1)(p).

27

28

- 481 -

2303. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS §57A-2-105(1) and 57A-2A-103(1)(h).

2304. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to S.D. CODIFIED LAWS §57A-2-314.

2305. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to S.D. CODIFIED LAWS §57A-2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2306. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2307. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

- 482 -

2308. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## SOUTH DAKOTA COUNT III

### BREACH OF EXPRESS WARRANTY
### (S.D. CODIFIED LAWS §§57A-2-313, 57A-2A-103, AND 57A-2A-210) AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2309. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in South Dakota, against the Vehicle Manufacturer Defendants.

2310. Vehicle Manufacturer Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.D. CODIFIED LAWS §§57A-2-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under §57A-2-103(1)(d).

2311. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. CODIFIED LAWS §57A-2A-103(1)(p).

2312. The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS §§57A-2-105(1) and 57A-2A-103(1)(h).

2313. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials

- 483 -

or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2314. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2315. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2316. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2317.  Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2318.  The members of the Class could not have reasonably discovered the ACU Defect.

2319.  The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2320.  The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2321.  Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2322.  The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given

that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2323. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2324. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2325. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.   Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should

1  have known that the Class Vehicles were defective at the time of sale or lease and

2  that the defective airbag systems would fail to deploy during an accident.

3      2326. Further, the limited warranties promising to repair and/or correct a

4  manufacturing defect fail in their essential purpose because the contractual remedies

5  are insufficient to make the members of the Class whole because, on information and

6  belief, the Vehicle Manufacturer Defendants have failed and/or have refused to

7  adequately provide the promised remedies within a reasonable time.

8      2327. The Vehicle Manufacturer Defendants knew that the Class Vehicles

9  were inherently defective and did not conform to their warranties and the members

10  of the Class were induced to purchase or lease the Class Vehicles under false and/or

11  fraudulent pretenses.

12      2328. The members of the Class have been excused from performance of any

13  warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct

14  described herein.

15      2329. As a direct and proximate result of Vehicle Manufacturer Defendants'

16  breach of express warranties, the members of the Class have been damaged in an

17  amount to be determined at trial.

18      2330. Accordingly, the Class asserts as additional and/or alternative remedies,

19  the revocation of acceptance of the goods and the return to the members of the Class

20  of the purchase price of all Class Vehicles currently owned or leased, and for such

21  other incidental and consequential damages as allowed.

22  **43.   Tennessee**

23  **TENNESSEE COUNT I**

24  **VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
   **(TENN. CODE ANN. §47-18-101, *ET SEQ.*)**
25  **AGAINST ALL DEFENDANTS**

26      2331. Plaintiff Russell Steel (for the purposes of this section, "Plaintiff")

27  brings this claim on behalf of himself and all members of the Class, or alternatively

28

the members of the Class that reside and/or purchased or leased their Class Vehicles in Tennessee, against all Defendants.

2332.  Plaintiff, the members of the Class, and Defendants are "persons" within the meaning of TENN. CODE ANN. §47-18-103(2), and Plaintiff and the members of the Class are and were "consumers" within the meaning of §47-18-103(2).  Plaintiff and the members of the Class are and were "natural persons" within the meaning of TENN. CODE ANN. §47-18-103(2).

2333. Defendants' conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. §47-18-103(19).  The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of TENN. CODE ANN. §47-18-103(7).

2334. The Tennessee Consumer Protection Act ("Tennessee CPA") makes unlawful "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce" under TENN. CODE ANN. §47-18-104.  Without limitation, this includes:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not have;

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(9) advertising goods or services with intent not to sell them as advertised.

TENN. CODE ANN. §47-18-104.

2335. In the course of Defendants' business, Defendants violated the Tennessee CPA by failing to disclose and actively concealing the dangers and risks

- 488 -

posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of TENN. CODE ANN. §47-18-101, *et seq.*: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2336. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2337. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Tennessee CPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2338. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2339. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2340. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff and the members of the Class.

2341. Defendants knew or should have known that their conduct violated the Tennessee CPA.

2342. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2343. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2344. Defendants owed Plaintiff and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

(a) possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b) intentionally concealed the foregoing from Plaintiff and the Class; and/or

(c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

2345. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2346. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff and the members of the Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2347. Plaintiff and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and the members of the Class had no way of discerning that Defendants' representations were false and

1  misleading, or otherwise learning the facts that Defendants had concealed or failed
2  to disclose.

3      2348.  Plaintiff and the members of the Class did not receive the benefit of their
4  bargain as a result of Defendants' misconduct.

5      2349.  As a direct and proximate result of Defendants' violations of the
6  Tennessee CPA, Plaintiff and the members of the Class have suffered injury-in-fact
7  and/or actual damage.

8      2350.  Pursuant to TENN. CODE ANN. §47-18-109(a), Plaintiff and the members
9  of the Class seek an order awarding damages, treble damages, and any other just and
10  proper relief available under the Tennessee CPA.

11  **TENNESSEE COUNT II**

12  **BREACH OF IMPLIED WARRANTIES**
**(TENN. CODE ANN. §§47-2-314, 47-2-315, 47-2A-103, AND 47-2A-212)**
13  **AGAINST ALL DEFENDANTS**

14      2351.  Plaintiff Russell Steel (for the purposes of this section, "Plaintiff")
15  brings this claim on behalf of himself and all members of the Class, or alternatively
16  the members of the Class that reside and/or purchased or leased their Class Vehicles
17  in Tennessee, against all Defendants.

18      2352.  Defendants are and were at all relevant times "sellers" of motor vehicles
19  and/or ACUs under TENN. CODE ANN. §47-2-103(a)(d), and "merchants" with
20  respect to motor vehicles and/or ACUs within the meaning of §§47-2-104(1) and 47-
21  2A-103(1)(t).

22      2353.  With respect to leases, Vehicle Manufacturer Defendants are and were
23  at all relevant times "lessors" of motor vehicles under TENN. CODE ANN. §47-2A-
24  103(1)(p).

25      2354.  Plaintiff and the members of the Class are and were at all relevant times
26  "buyers" with respect to the Class Vehicles under TENN. CODE ANN. §47-2-313(1).

27

28

2355. The Class Vehicles and/or defective ACUs installed in them are and were at all relevant times "goods" within the meaning of TENN. CODE ANN. §§47-2-313(1)-(2) and 47-2A-103(1)(h).

2356. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to TENN. CODE ANN. §§47-2-314 and 47-2A-212.

2357. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to TENN. CODE ANN. §47-2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiff and the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the members of the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2358. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2359. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

- 493 -

2360. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

## TENNESSEE COUNT III

### BREACH OF EXPRESS WARRANTY
### (TENN. CODE ANN. §§47-2-313, 47-2A-103, AND 47-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2361. Plaintiff Russell Steel (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Tennessee, against the Vehicle Manufacturer Defendants.

2362. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under TENN. CODE ANN. §47-2-103(a)(d), and "merchants" with respect to motor vehicles within the meaning of §§47-2-104(1) and 47-2A-103(1)(t).

2363. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under TENN. CODE ANN. §47-2A-103(1)(p).

2364. Plaintiff and the Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under TENN. CODE ANN. §47-2-313(1).

2365. The Class Vehicles are and were at all relevant times "goods" within the meaning of TENN. CODE ANN. §§47-2-105(1) and 47-2A-103(1)(h).

2366. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is

defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.  Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2367. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiff and the members of the Class.

2368. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

2369. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect

during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

2370. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2371. Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

2372. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2373. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2374. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the members of the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2375. Plaintiff and the members of the Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2376. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of Plaintiff and the Class is not limited to the warranties' remedies.

2377. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2378. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the members of the Class. Among other things, Plaintiff and the members of the Class did not determine these time

limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2379. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2380. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2381. Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2382. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

2383. Accordingly, Plaintiff and the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 44.   Texas

### TEXAS COUNT I

### BREACH OF IMPLIED WARRANTIES
### (TEX. BUS. & COM. CODE §§2.314, 2.315, 2A.103, AND 2A.212)
### AGAINST ALL DEFENDANTS

2384. Plaintiffs Angela Bowens, Kathy Cleghorn, Brent DeRouen, Evan Green, and Felicia Jeffries (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Texas, against all Defendants.

2385. Defendants are and were at all relevant times "sellers" of motor vehicles and/or ACUs under TEX. BUS. & COM. CODE §2.103(a)(4), and "merchants" with respect to motor vehicles and/or ACUs within the meaning of §§2.104(a) and 2A.103(a)(20).

2386. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under TEX. BUS. & COM. CODE §2A.103(a)(16).

2387. Plaintiffs and the members of the Class are and were at all relevant times "buyers" with respect to the Class Vehicles under TEX. BUS. & COM. CODE §2.313(a).

2388. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE §§2.105(a) and 2.103(a)(8).

2389. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to TEX. BUS. & COM. CODE §§2.314 and 2A.212.

2390. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law

pursuant to Tex. Bus. & Com. Code §2.315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiffs and the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiffs and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2391. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2392. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2393. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

## TEXAS COUNT II

### BREACH OF EXPRESS WARRANTY
### (TEX. BUS. & COM. CODE §2.313, 2A.103, AND 2A.210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2394. Plaintiffs Angela Bowens, Kathy Cleghorn, Brent DeRouen, Evan Green, and Felicia Jeffries (for the purposes of this section, "Plaintiffs") bring this claim on behalf of themselves and all members of the Class, or alternatively the

members of the Class that reside and/or purchased or leased their Class Vehicles in Texas, against the Vehicle Manufacturer Defendants.

2395. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under TEX. BUS. & COM. CODE §2.103(a)(4), and "merchants" with respect to motor vehicles within the meaning of §§2.104(a) and 2A.103(a)(20).

2396. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under TEX. BUS. & COM. CODE §2A.103(a)(16).

2397. Plaintiffs and the members of the Class are and were at all relevant times "buyers" with respect to the Class Vehicles under TEX. BUS. & COM. CODE §2.313(a).

2398. The Class Vehicles are and were at all relevant times "goods" within the meaning of TEX. BUS. & COM. CODE §2.105(a) and 2A.103(a)(8).

2399. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or

replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2400. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiffs and the Class.

2401. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and the members of the Class purchased or leased their Class Vehicles.

2402. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiffs and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiffs and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiffs and the members of the Class.

2403. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2404. Plaintiffs and the members of the Class could not have reasonably discovered the ACU Defect.

2405. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2406. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2407. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiffs and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiffs and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2408. Plaintiffs and the members of the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2409. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose, and the recovery of Plaintiffs and the members of the Class is not limited to the warranties' remedies.

2410. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2411. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class.  Among other things, Plaintiffs and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiffs and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2412. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiffs and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2413. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiffs and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2414. Plaintiffs and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2415. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

2416. Accordingly, Plaintiffs and the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 45.   Utah

### UTAH COUNT I

**VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT**
**(UTAH CODE ANN. §13-11-1, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

2417. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Utah, against all Defendants.

2418. Defendants are "suppliers" within the meaning of UTAH CODE ANN. §13-11-3.  The Class members are "persons" within the meaning of § 13-11-3.  The sale of the Class Vehicles and/or the defective ACUs is and was at all relevant times a "consumer transaction" within the meaning of UTAH CODE ANN. §13-11-3.

2419. The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. §13-11-4.  Without limitation, this includes if the supplier knowingly or intentionally:

> (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not;
>
> (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not;

UTAH CODE ANN. §13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  UTAH CODE ANN. §13-11-5.

2420. In the course of Defendants' business, Defendants violated the Utah CSPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of UTAH CODE ANN. §13-11-1, *et seq.*: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality

1   when they are not; and/or advertising them with the intent not to sell them as
2   advertised.

3        2421. Defendants have known of the ACU Defect in their defective airbag
4   systems and failed to disclose and actively concealed the dangers and risks posed by
5   the Class Vehicles and/or the defective airbag systems installed in them.

6        2422. By failing to disclose and by actively concealing the ACU Defect in the
7   Class Vehicles and/or the defective airbag systems installed in them, by marketing
8   them as safe, reliable, and of high quality, and by presenting themselves as reputable
9   manufacturers that value safety, Defendants engaged in unfair or deceptive business
10  practices in violation of the Utah CSPA.  Defendants deliberately withheld the
11  information about the propensity of the defective airbag systems to fail to deploy
12  during an accident, in order to ensure that consumers would purchase the Class
13  Vehicles.

14       2423. In the course of Defendants' business, they willfully failed to disclose
15  and actively concealed the dangerous risks posed by the many safety issues and
16  serious defect discussed above.  Defendants compounded the deception by repeatedly
17  asserting that the Class Vehicles and/or the defective airbag systems installed in them
18  were safe, reliable, and of high quality, and by claiming to be reputable manufacturers
19  that value safety.

20       2424. Defendants' unfair or deceptive acts or practices, including these
21  concealments, omissions, and suppressions of material facts, had a tendency or
22  capacity to mislead, tended to create a false impression in consumers, were likely to
23  and did in fact deceive reasonable consumers, including the members of the Class,
24  about the true safety and reliability of Class Vehicles and/or the defective airbag
25  systems installed in them, the quality of Defendants' brands, and the true value of the
26  Class Vehicles.

27

28

2425. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2426. Defendants knew or should have known that their conduct violated the Utah CSPA.

2427. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2428. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2429. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

      (a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

      (b)   intentionally concealed the foregoing from the Class; and/or

      (c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2430. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the

Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2431. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2432. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2433. The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2434. As a direct and proximate result of Defendants' violations of the Utah CSPA, the members of the Class have suffered injury-in-fact and/or actual damage.

2435. Pursuant to UTAH CODE ANN. §13-11-1, *et seq.*, the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Utah CSPA.

**UTAH COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(UTAH CODE ANN. §§70A-2-314, 70A-2-315, 70A-2A-103,**
**AND 70A-2A-212)**
**AGAINST ALL DEFENDANTS**

2436. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Utah, against all Defendants.

2437. Defendants are and were at all relevant times "sellers" of motor vehicles and/or ACUs under UTAH CODE ANN. §70A-2-103(1)(d).

2438. The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under UTAH CODE ANN. §70A-2-313(1).

2439. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under UTAH CODE ANN. §§70A-2a-103(1)(p).

2440. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of UTAH CODE ANN. §§70A-2-313(1)-(2) and 70A-2a-103(1)(h).

2441. At all relevant times, Defendants also are and were "merchants" with respect to motor vehicles and/or ACUs within the meaning of UTAH CODE ANN. §§70A-2-104(1) and 70A-2a-103(1)(t).

2442. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to UTAH CODE ANN. §§70A-2-314 and 70A-2a-212.

2443. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to UTAH CODE ANN. §70A-2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class

intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2444. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2445. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2446. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## UTAH COUNT III

### BREACH OF EXPRESS WARRANTY
### (UTAH CODE ANN. §70A-2-313, 70A-2A-103, AND 70A-2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2447. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Utah, against the Vehicle Manufacturer Defendants.

2448. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under UTAH CODE ANN. §70A-2-103(1)(a), and

1  "merchants" with respect to motor vehicles within the meaning of §§70A-2-104(1)

2  and 70A-2a-103(1)(t).

3      2449. With respect to leases, Vehicle Manufacturer Defendants are and were

4  at all relevant times "lessors" of motor vehicles under UTAH CODE ANN. §§70A-2a-

5  103(1)(p).

6      2450. The Class members are and were at all relevant times "buyers" with

7  respect to the Class Vehicles under UTAH CODE ANN. §70A-2-313(1).

8      2451. The Class Vehicles are and were at all relevant times "goods" within the

9  meaning of UTAH CODE ANN. §§70A-2-105(1) and 70A-2a-103(1)(h).

10     2452. In connection with the purchase of all Class Vehicles, Vehicle

11  Manufacturer Defendants provided express warranties.  Kia provides a limited basic

12  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

13  repairs to vehicles that fail to function properly during normal use.  Honda provides

14  a New Vehicle Limited Warranty for a period of three years or 36,000 miles,

15  whichever occurs first, and covers any repair or replacement of any part that is

16  defective in material or workmanship under normal use.  Toyota provides a New

17  Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever

18  occurs first, and covers repairs and adjustments needed to correct defects in materials

19  or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited

20  warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

21  the repair of any item on a vehicle that is defective in material, workmanship, or

22  factory preparation.  Hyundai provides a new vehicle limited warranty for a period

23  of five years or 60,000 miles, whichever occurs first, and covers the repair or

24  replacement of any component manufactured or originally installed by Hyundai that

25  is defective in material or factory workmanship, under normal use and maintenance.

26  Mitsubishi provides a new vehicle limited warranty and a restraint system warranty

27  for a period of five years or 60,000 miles, whichever occurs first, and covers the

28

repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2453. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2454. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2455. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2456. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2457. The members of the Class could not have reasonably discovered the ACU Defect.

2458. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2459. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials,

workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2460. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2461. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2462. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2463. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of

written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2464. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2465. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2466. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members

of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2467. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2468. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2469. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 46.   Vermont

### VERMONT COUNT I

### VIOLATION OF THE VERMONT CONSUMER FRAUD ACT (VT. STAT. ANN. TIT. 9, §2451, *ET SEQ.*) AGAINST ALL DEFENDANTS

2470. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Vermont, against all Defendants.

2471. Defendants are "sellers" of motor vehicles and/or ACUs within the meaning of VT. STAT. ANN. tit. 9, §2451(c).  The Class members are "consumers" within the meaning of VT. STAT. ANN. tit. 9, §2451(a).

2472. The Class Vehicles are "goods" within the meaning of VT. STAT. ANN. tit. 9, §2451(b).

2473. The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce."  VT. STAT. ANN. tit. 9, §2453(a).

- 516 -

2474.  In the course of Defendants' business, Defendants violated the Vermont CFA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of VT. STAT. ANN. tit. 9, §2451, *et seq.*: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2475.  Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2476.  By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Vermont CFA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2477.  In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them

1   were safe, reliable, and of high quality, and by claiming to be reputable manufacturers
2   that value safety.

3       2478. Defendants' unfair or deceptive acts or practices, including these
4   concealments, omissions, and suppressions of material facts, had a tendency or
5   capacity to mislead, tended to create a false impression in consumers, were likely to
6   and did in fact deceive reasonable consumers, including the members of the Class,
7   about the true safety and reliability of Class Vehicles and/or the defective airbag
8   systems installed in them, the quality of Defendants' brands, and the true value of the
9   Class Vehicles.

10      2479. Defendants intentionally and knowingly misrepresented material facts
11  regarding the Class Vehicles and/or the defective airbag systems installed in them
12  with an intent to mislead the members of the Class.

13      2480. Defendants knew or should have known that their conduct violated the
14  Vermont CFA.

15      2481. As alleged above, Defendants made material statements about the safety
16  and reliability of the Class Vehicles and/or the defective airbag systems installed in
17  them that were either false or misleading.

18      2482. To protect their profits and to avoid remediation costs and a public
19  relations nightmare, Defendants concealed the dangers and risks posed by the Class
20  Vehicles and/or the defective airbag systems installed in them and their tragic
21  consequences, and allowed unsuspecting new and used car purchasers to continue to
22  buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous
23  vehicles.

24      2483. Defendants owed the members of the Class a duty to disclose the true
25  safety and reliability of the Class Vehicles and/or the defective airbag systems
26  installed in them because Defendants:

27

28

(a)   possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)   intentionally concealed the foregoing from the Class; and/or

(c)   made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2484. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2485. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2486. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2487.  The members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2488. As a direct and proximate result of Defendants' violations of the Vermont CFA, the members of the Class have suffered injury-in-fact and/or actual damage.

2489. Pursuant to VT. STAT. ANN. tit. 9, §2451, *et seq.*, the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Vermont CFA.

**VERMONT COUNT II**

**BREACH OF IMPLIED WARRANTIES**
**(VT. STAT. ANN. TIT. 9A, §§2-314, 2-315, 2A-103, AND 2A-212)**
**AGAINST ALL DEFENDANTS**

2490.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Vermont, against all Defendants.

2491.  Defendants are and were at all relevant times "sellers" of motor vehicles and/or ACUs under VT. STAT. ANN. tit. 9A, §2-313(1)-(2).  At all relevant times, Defendants also are and were "merchants" with respect to motor vehicles and/or ACUs within the meaning of VT. STAT. ANN. tit. 9A, §§2-104(1) and 2A-103(1)(t).

2492.  The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VT. STAT. ANN. tit. 9A, §2-313(1).

2493.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under VT. STAT. ANN. tit. 9A, §2A-103(1)(p).

2494.  The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of VT. STAT. ANN. tit. 9A, §§2-105(1) and 2A-103(1)(h).

2495. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to VT. STAT. ANN. tit. 9A, §2-314 and 2A-212.

2496. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to VT. STAT. ANN. tit. 9A, §2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2497. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2498. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2499. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## VERMONT COUNT III

### BREACH OF EXPRESS WARRANTY
### (VT. STAT. ANN. TIT. 9A, §2-313, 2A-103, AND 2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2500. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Vermont, against the Vehicle Manufacturer Defendants.

2501. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under VT. STAT. ANN. tit. 9A, §2-313 (1)-(2), and "merchants" with respect to motor vehicles within the meaning of 9A §§2- 104(1) and 2A-103(1)(t).

2502. The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VT. STAT. ANN. tit. 9A, §2-313 (1).

2503. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under VT. STAT. ANN. tit. 9A, §2A-103(1)(p).

2504. The Class Vehicles are and were at all relevant times "goods" within the meaning of VT. STAT. ANN. tit. 9A, §§2-105(1) and 2A-103(1)(h).

2505. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited

warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2506. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2507. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2508. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2509.  Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2510.  The members of the Class could not have reasonably discovered the ACU Defect.

2511. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2512. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2513. Specifically,  on  information  and  belief,  Vehicle  Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2514. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given

that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2515. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2516. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2517. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should

have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2518. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2519. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2520. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2521. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2522. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 47.   Virginia

### VIRGINIA COUNT I

**VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. §59.1-196, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

2523. Plaintiff Ann Harland (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively

the members of the Class that reside and/or purchased or leased their Class Vehicles in Virginia, against all Defendants.

2524. Plaintiff, the members of the Class, and Defendants are "persons" within the meaning of VA. CODE ANN. §59.1-198.

2525. Defendants are and were at all relevant times "suppliers" of motor vehicles and/or ACUs under VA. CODE ANN. §59.1-198.

2526. The sale of the Class Vehicles and/or defective ACUs installed in them is and was at all relevant times a "consumer transaction" within the meaning of VA. CODE ANN. §59.1-198.

2527. The Virginia Consumer Protection Act ("Virginia CPA") prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction" and lists prohibited practices which include:

> (5) Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;
>
> (6) Misrepresenting that goods or services are of a particular standard, quality, grade, style or model;
>
> (8) Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;
>
> (14) Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

VA. CODE ANN. §59.1-198.

2528. In the course of Defendants' business, Defendants violated the Virginia CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of VA. CODE ANN. §59.1-198, *et seq.*: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits

that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2529. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2530. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Virginia CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2531. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2532. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2533. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff and the members of the Class.

2534. Defendants knew or should have known that their conduct violated the Virginia CPA.

2535. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2536. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2537. Defendants owed Plaintiff and the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from Plaintiff and the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the Class that contradicted these representations.

2538. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the

ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2539. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff and the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2540.  Plaintiff and the members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, Plaintiff and the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff and the members of the Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

2541.  Plaintiff and the members of the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

2542. As a direct and proximate result of Defendants' violations of the Virginia CPA, Plaintiff and the members of the Class have suffered injury-in-fact and/or actual damage.

2543.  Pursuant to VA. CODE ANN. §59.1-204, Plaintiff and the members of the Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Virginia CPA.

## VIRGINIA COUNT II

### BREACH OF IMPLIED WARRANTIES
### (VA. CODE ANN. §§8.2-314, 8.2-315, AND 8.2A-212)
### AGAINST ALL DEFENDANTS

2544. Plaintiff Ann Harland (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Virginia, against all Defendants.

2545. Defendants are and were at all relevant times "sellers" of motor vehicles and/or ACUS under VA. CODE ANN. §8-2-313(1)-(2), and "merchants" with respect to motor vehicles and/or ACUs within the meaning of §§8-2-104(1) and 8.2A-103(1)(t).

2546. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under VA. CODE ANN. §8-2A-103(1)(p).

2547. Plaintiff and the members of the Class are and were at all relevant times "buyers" with respect to the Class Vehicles under VA. CODE ANN. §8-2-313(1).

2548. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning VA. CODE ANN. §§8-2-105(1) and 8.2A-103(1)(h).

2549. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to VA. CODE ANN. §§8.2-314 and 8.2A-212.

2550. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to VA. CODE ANN. §8.2-315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that Plaintiff and the

Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2551. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2552. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2553. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

**VIRGINIA COUNT III**

**BREACH OF EXPRESS WARRANTY**
**(VA. CODE ANN. §§8-2-313, 8-2A-103, AND 8.2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

2554. Plaintiff Ann Harland (for the purposes of this section, "Plaintiff") brings this claim on behalf of herself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Virginia, against the Vehicle Manufacturer Defendants.

2555. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under VA. CODE ANN. §8-2-313(1)-(2), and "merchants" with respect to motor vehicles within the meaning of §§8-2-104(1) and 8.2A-103(1)(t).

2556. Plaintiff and the Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under VA. CODE ANN. §8-2-313(1).

2557. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under VA. CODE ANN. §8-2A-103(1)(p).

2558. The Class Vehicles are and were at all relevant times "goods" within the meaning VA. CODE ANN. §§8.2-105(1) and 8.2A-103(1)(h).

2559. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2560. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiff and the Class.

2561. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

2562. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

2563. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2564. Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

2565. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2566. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2567. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2568. Plaintiff and the members of the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2569. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff and the members of the Class is not limited to the warranties' remedies.

2570. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to

their authorized dealers nationwide, complaints to NHTSA, and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2571. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.   The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the members of the Class.   Among other things, Plaintiff and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.   A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2572. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2573. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2574. Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2575. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

2576. Accordingly, Plaintiff and the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 48.   Washington

### WASHINGTON COUNT I

**VIOLATION OF THE CONSUMER PROTECTION ACT**
**(WASH. REV. CODE §19.86.010, *ET SEQ.*)**
**AGAINST ALL DEFENDANTS**

2577. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in the State of Washington, against all Defendants.

2578. The members of the Class and Defendants are "persons" within the meaning of WASH. REV. CODE §19.86.010(1).

2579. Defendants are engaged in "trade" or "commerce" within the meaning of WASH. REV. CODE §19.86.010(2).

- 537 -

2580. The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE §19.86.020.

2581. In the course of Defendants' business, Defendants violated the Washington CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above. Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of WASH. REV. CODE §19.86.010, *et seq.*: representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2582. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2583. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Washington CPA. Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2584. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and

serious defect discussed above. Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2585. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2586. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2587. Defendants knew or should have known that their conduct violated the Washington CPA.

2588. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2589. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2590. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

      (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

      (b)    intentionally concealed the foregoing from the Class; and/or

      (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2591. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2592. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2593. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or

1  would not have purchased or leased them at all.  The members of the Class had no
2  way of discerning that Defendants' representations were false and misleading, or
3  otherwise learning the facts that Defendants had concealed or failed to disclose.

4  2594.  The members of the Class did not receive the benefit of their bargain as
5  a result of Defendants' misconduct.

6  2595. As a direct and proximate result of Defendants' violations of the
7  Washington CPA, the members of the Class have suffered injury-in-fact and/or actual
8  damage.

9  2596.  Pursuant to WASH. REV. CODE §§19.86.140 and 19.86.090, the members
10  of the Class seek an order awarding damages, treble damages, and any other just and
11  proper relief available under the Washington CPA.

12                    **WASHINGTON COUNT II**

13              **BREACH OF IMPLIED WARRANTIES**
    **(WASH. REV. CODE §§62A.2-314, 62A.2-315, 62A.2A-103,**
14                    **AND 62A.2A-212)**
              **AGAINST ALL DEFENDANTS**
15

16  2597. Plaintiffs bring this claim on behalf of all members of the Class, or
17  alternatively the members of the Class that reside and/or purchased or leased their
18  Class Vehicles in the State of Washington, against all Defendants.

19  2598.  Defendants are and were at all relevant times "sellers" of motor vehicles
20  and/or ACUs under WASH. REV. CODE §62A.2-313(1)-(2).  At all relevant times,
21  Defendants also were "merchants" with respect to motor vehicles and/or ACUs
22  within the meaning of WASH. REV. CODE §§62A.2-104(1) and 62A.2A-103(1)(t).

23  2599. The Class members are and were at all relevant times "buyers" with
24  respect to the Class Vehicles and/or the defective ACUs installed in them under
25  WASH. REV. CODE § 62A.2-313(1).  The Class Vehicles and/or the defective ACUs
26  installed in them are and were at all relevant times "goods" within the meaning of
27  WASH. REV. CODE §§62A.2-313(1)-(2) and 62A.2A-103(1)(h).

28

2600. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under WASH. REV. CODE §62A.2A-103(1)(p).

2601. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to WASH. REV. CODE §§62A.2-314 and 62A.2A-212.

2602. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to WASH. REV. CODE §62A.2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2603. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2604. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2605. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

### WASHINGTON COUNT III

### BREACH OF EXPRESS WARRANTY
### (WASH. REV. CODE §§62A.2-313, 62A.2A-103, AND 62A.2A-210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2606. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in the State of Washington, against the Vehicle Manufacturer Defendants.

2607. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under WASH. REV. CODE §§62A.2-313(1)-(2), and "merchants" with respect to motor vehicles within the meaning of §§62A.2-104(1) and 62A.2A-103(1)(t).

2608. The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WASH. REV. CODE §62A.2-313(1).

2609. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under WASH. REV. CODE §62A.2A-103(1)(p).

2610. The Class Vehicles are and were at all relevant times "goods" within the meaning of WASH. REV. CODE §§62A.2-105(1) and 62A.2A-103(1)(h).

2611. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is

defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2612. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2613. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2614. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods

in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2615. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2616. The members of the Class could not have reasonably discovered the ACU Defect.

2617. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2618. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2619. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2620. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2621. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2622. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2623. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which

unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2624. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2625. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2626. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2627. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2628. Accordingly, the Class asserts as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 49.   West Virginia

### WEST VIRGINIA COUNT I

### BREACH OF IMPLIED WARRANTIES
### (W. VA. CODE §§46-2-314, 46-2-315, 46-2A-103, AND 46-2A-212)
### AGAINST ALL DEFENDANTS

2629. Plaintiff Nicholas Crouch (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles West Virginia, against all Defendants.

2630. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under W. VA. CODE §46-2-314(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles and/or ACUs under §§46-2-314(1) and 46-2-315.

2631. Plaintiff and the Class members are and were at all relevant times "buyers" within the meaning of W. VA. CODE §46-2-315.

2632. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under W. VA. CODE §46-2A-103(1)(p).

2633. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of W. VA. CODE §§46-2-105(1) and 46-2A-103(1)(h).

2634. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to W. VA. CODE §§46-2-314 and 46-2A-212.

2635. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to W. VA. CODE §46-2-315. Defendants knew at the time of sale of the Class

Vehicles and/or the defective ACUs installed in them, that Plaintiff and the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the Class were relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2636. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident. This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2637. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2638. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the members of the Class have been damaged in an amount to be proven at trial.

### WEST VIRGINIA COUNT II

**BREACH OF EXPRESS WARRANTY**
**(W. VA. CODE §§46-2-313, 46-2A-103, AND 46-2A-210)**
**AGAINST THE VEHICLE MANUFACTURER DEFENDANTS**

2639. Plaintiff Nicholas Crouch (for the purposes of this section, "Plaintiff") brings this claim on behalf of himself and all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles West Virginia, against the Vehicle Manufacturer Defendants.

2640. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under W. VA. CODE §46-2-103(1)(d), and "merchants" with respect to motor vehicles within the meaning of §§46-2-104(1) and 46-2A-103(1)(t).

2641. Plaintiff and the Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under W. VA. CODE §46-2-313(1).

2642. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under W. VA. CODE §46-2A-103(1)(p).

2643. The Class Vehicles are and were at all relevant times "goods" within the meaning of W. VA. CODE §§46-2-313(1)-(2) and 46-2A-103(1)(h).

2644. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation. Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance.

Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2645. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to Plaintiff and the Class.

2646. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and the members of the Class purchased or leased their Class Vehicles.

2647. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform Plaintiff and the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff and the members of the Class.

2648. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2649. Plaintiff and the members of the Class could not have reasonably discovered the ACU Defect.

2650. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2651. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2652. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2653. Plaintiff and the members of the Class have given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2654. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff and the members of the Class is not limited to the warranties' remedies.

2655. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to

their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2656. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and the members of the Class. Among other things, Plaintiff and the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and Plaintiff and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2657. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make Plaintiff and the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2658. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2659. Plaintiff and the members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2660. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, Plaintiff and the members of the Class have been damaged in an amount to be determined at trial.

2661. Accordingly, Plaintiff and the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 50.   Wisconsin

### WISCONSIN COUNT I

**VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT (WIS. STAT. §100.18, *ET SEQ.*) AGAINST ALL DEFENDANTS**

2662. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Wisconsin, against all Defendants.

2663. Defendants are "person[s], firm[s], corporation[s] or association[s]" within the meaning of WIS. STAT. §100.18(1).

2664. The Class members are members of "the public" within the meaning of WIS. STAT. §100.18(1).

2665. The Class Vehicles and/or the defective ACUs installed in them are and were "merchandise" within the meaning of WIS. STAT. §100.18(1).

- 554 -

2666. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. §100.18(1).

2667. In the course of Defendants' business, Defendants violated the Wisconsin DTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, as described above.   Specifically, in marketing, offering for sale, and selling the defective Class Vehicles and/or the defective airbag systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices within the meaning of WIS. STAT. §100.18(1): representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

2668. Defendants have known of the ACU Defect in their defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

2669. By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Wisconsin DTPA.  Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

2670. In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and

serious defect discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective airbag systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

2671. Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective airbag systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

2672. Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead the members of the Class.

2673. Defendants knew or should have known that their conduct violated the Wisconsin DTPA.

2674. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

2675. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

2676. Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because Defendants:

        (a)    possessed exclusive knowledge of the dangers and risks posed by the foregoing;

        (b)    intentionally concealed the foregoing from the Class; and/or

        (c)    made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

2677. Because Defendants fraudulently concealed the ACU Defect in Class Vehicles and/or the defective airbag systems installed in them, and disclosure of the ACU Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

2678. Defendants' failure to disclose and active concealment of the dangers and risks posed by the defective airbag systems in Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

2679. The members of the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the ACU Defect that existed in the Class Vehicles and/or the defective airbag systems installed in them, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or

1  would not have purchased or leased them at all.  The members of the Class had no

2  way of discerning that Defendants' representations were false and misleading, or

3  otherwise learning the facts that Defendants had concealed or failed to disclose.

4  2680.  The members of the Class did not receive the benefit of their bargain as

5  a result of Defendants' misconduct.

6  2681. As a direct and proximate result of Defendants' violations of the

7  Wisconsin DTPA, the members of the Class have suffered injury-in-fact and/or actual

8  damage.

9  2682. Pursuant to WIS. STAT. §100.18(11)(b)(2), the members of the Class

10  seek an order awarding damages, double damages, and any other just and proper

11  relief available under the Wisconsin DTPA.

12  **WISCONSIN COUNT II**

13  **BREACH OF IMPLIED WARRANTIES**
**(WIS. STAT. §§402.314, 402.315, 411.103, AND 411.212)**

14  **AGAINST ALL DEFENDANTS**

15  2683. Plaintiffs bring this claim on behalf of all members of the Class, or

16  alternatively the members of the Class that reside and/or purchased or leased their

17  Class Vehicles in Wisconsin, against all Defendants.

18  2684. Defendants are and were at all relevant times "merchants" with respect

19  to the Class Vehicles and/or ACUs under WIS. STAT. §§402.314(1) and

20  411.103(1)(t), and "sellers" of motor vehicles and/or ACUs under §402.103(1)(d).

21  2685. The Class members are and were at all relevant times "buyers" within

22  the meaning of WIS. STAT. §402.315.

23  2686. With respect to leases, Vehicle Manufacturer Defendants are and were

24  at all relevant times "lessors" of motor vehicles under WIS. STAT. §411.103(1)(p).

25  2687. The Class Vehicles and/or the defective ACUs installed in them are and

26  were at all relevant times "goods" within the meaning of WIS. STAT. §§402.105(1)(c)

27  and 411.103(1)(h).

28

2688. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to WIS. STAT. §402.314.

2689. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to WIS. STAT. §402.315.  Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2690. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above.  Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2691. Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2692. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## WISCONSIN COUNT III

### BREACH OF EXPRESS WARRANTY
### (WIS. STAT. §§402.313, 411.103, AND 411.210)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2693. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Wisconsin, against the Vehicle Manufacturer Defendants.

2694. Vehicle Manufacturer Defendants are and were at all relevant times "sellers" of motor vehicles under WIS. STAT. §402.313(1)-(2), and "merchants" with respect to motor vehicles within the meaning of §§402.104(3) and 411.103(1)(t).

2695. The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WIS. STAT. §402.313(1).

2696. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under WIS. STAT. §411.103(1)(p).

2697. The Class Vehicles are and were at all relevant times "goods" within the meaning of WIS. STAT. §402.105(1)(c) and 411.103(1)(h).

2698. In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties. Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers repairs to vehicles that fail to function properly during normal use. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use. Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or

factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2699. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2700. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2701. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and concealed by the Vehicle Manufacturer Defendants.  Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2702. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2703. The members of the Class could not have reasonably discovered the ACU Defect.

2704. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2705. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2706. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2707. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2708. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2709. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2710. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable and inadequate to protect the members of the Class. Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants. A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2711. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2712. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2713. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2714. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2715. Accordingly, the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### 51. Wyoming

**WYOMING COUNT I**

**BREACH OF IMPLIED WARRANTIES**
**(WYO. STAT. ANN. §§34.1-2-314, 34.1-2-315, 34.1-2.A-103, AND 34.1-2.A-212)**
**AGAINST ALL DEFENDANTS**

2716. Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Wyoming, against all Defendants.

2717. Defendants are and were at all relevant times "merchants" with respect to motor vehicles and/or ACUs under Wyo. Stat. Ann. §§34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles and/or ACUs under §34.1-2-103(a)(iv).

2718. With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. Ann. §34.1-2.A-103(a)(xvi).

2719. The Class Vehicles and/or the defective ACUs installed in them are and were at all relevant times "goods" within the meaning of Wyo. Stat. Ann. §§34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2720. A warranty that the Class Vehicles and/or the defective ACUs installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wyo. Stat. Ann. §34.1-2-314 and 34.1-2.A-212.

2721. In addition, a warranty that the Class Vehicles and/or the defective ACUs installed in them were fit for their particular purpose is implied by law pursuant to Wyo. Stat. Ann. §34.1-2-315. Defendants knew at the time of sale of the Class Vehicles and/or the defective ACUs installed in them, that the Class intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that the Class was relying on Defendants' skill and judgment to furnish suitable products for this particular purpose.

2722. The Class Vehicles and/or the defective ACUs installed in them, when sold or leased (if applicable) and at all times thereafter, were not in merchantable condition, not fit for the ordinary purpose, and not fit for their particular purpose as a result of their inherent defects, as detailed above. Specifically, they are inherently defective and dangerous in that the defective ACUs fail to deploy airbags and seatbelt

pretensioners during an accident.  This ACU Defect renders the Class Vehicles unsafe and reduces their value.

2723.  Defendants were provided notice of these issues by the numerous consumer complaints against them regarding the ACU Defect, by numerous individual letters and communications sent by Plaintiffs and others within a reasonable amount of time after the allegations of the ACU Defect became public, and by internal and NHTSA investigations, *inter alia*.

2724.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the members of the Class have been damaged in an amount to be proven at trial.

## WYOMING COUNT II

### BREACH OF EXPRESS WARRANTY
### (WYO. STAT. ANN. §§34.1-2-313 AND 34.1-2.A-103)
### AGAINST THE VEHICLE MANUFACTURER DEFENDANTS

2725.  Plaintiffs bring this claim on behalf of all members of the Class, or alternatively the members of the Class that reside and/or purchased or leased their Class Vehicles in Wyoming, against the Vehicle Manufacturer Defendants.

2726.  Defendants are and were at all relevant times "merchants" with respect to motor vehicles under WYO. STAT. ANN. §§34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under §34.1-2-103(a)(iv).

2727.  With respect to leases, Vehicle Manufacturer Defendants are and were at all relevant times "lessors" of motor vehicles under WYO. STAT. ANN. §34.1-2.A-103(a)(xvi).

2728.  The Class Vehicles are and were at all relevant times "goods" within the meaning of WYO. STAT. ANN. §34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2729.  In connection with the purchase of all Class Vehicles, Vehicle Manufacturer Defendants provided express warranties.  Kia provides a limited basic warranty for a period of five years or 60,000 miles, whichever occurs first, and covers

repairs to vehicles that fail to function properly during normal use.  Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers any repair or replacement of any part that is defective in material or workmanship under normal use.  Toyota provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first, and covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota.  Chrysler provides a basic limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair of any item on a vehicle that is defective in material, workmanship, or factory preparation.  Hyundai provides a new vehicle limited warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Hyundai that is defective in material or factory workmanship, under normal use and maintenance. Mitsubishi provides a new vehicle limited warranty and a restraint system warranty for a period of five years or 60,000 miles, whichever occurs first, and covers the repair or replacement of any component manufactured or originally installed by Mitsubishi that is defective in material or factory workmanship, under normal use and maintenance.

2730. In addition, Vehicle Manufacturer Defendants' various oral and written representations regarding the Class Vehicles' durability, safety, and performance constituted express warranties to the Class.

2731. Vehicle Manufacturer Defendants' warranties formed a basis of the bargain that was reached when the members of the Class purchased or leased their Class Vehicles.

2732. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but the members of the Class had no knowledge of the existence of the defect, which was known and

concealed by the Vehicle Manufacturer Defendants. Despite the applicable warranties, the Vehicle Manufacturer Defendants failed to inform the members of the Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to the members of the Class.

2733. Because of the ACU Defect, the Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

2734. The members of the Class could not have reasonably discovered the ACU Defect.

2735. The Vehicle Manufacturer Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

2736. The Vehicle Manufacturer Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when the Vehicle Manufacturer Defendants knew the defective airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects preventing airbags and seatbelt pretensioners from performing as warranted.

2737. Specifically, on information and belief, Vehicle Manufacturer Defendants breached their express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing the Class with Class Vehicles containing defects in material that were never disclosed to the Class; (b) failing to repair or replace the defective Class Vehicles at no cost within the warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith;

and (d) supplying products and materials that failed to conform to the representations made by Vehicle Manufacturer Defendants.

2738. The Class has given Vehicle Manufacturer Defendants a reasonable opportunity to cure their breach of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by Vehicle Manufacturer Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

2739. Thus, Vehicle Manufacturer Defendants' written warranties fail of their essential purpose and the recovery of the members of the Class is not limited to the warranties' remedies.

2740. The Vehicle Manufacturer Defendants were provided notice of the ACU Defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Vehicle Manufacturer Defendants have known of and concealed the ACU Defect and, on information and belief, have refused to repair or replace the defective airbag systems in the Class Vehicles free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

2741. Any attempt by the Vehicle Manufacturer Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Vehicle Manufacturer Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Vehicle Manufacturer Defendants' warranty periods were also unconscionable

and inadequate to protect the members of the Class.  Among other things, the members of the Class did not determine these time limitations, the terms of which unreasonably favored the Vehicle Manufacturer Defendants.  A gross disparity in bargaining power existed between the Vehicle Manufacturer Defendants and the members of the Class, and the Vehicle Manufacturer Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

2742. Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedies are insufficient to make the members of the Class whole because, on information and belief, the Vehicle Manufacturer Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

2743. The Vehicle Manufacturer Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and the members of the Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

2744. The members of the Class have been excused from performance of any warranty obligations as a result of the Vehicle Manufacturer Defendants' conduct described herein.

2745. As a direct and proximate result of Vehicle Manufacturer Defendants' breach of express warranties, the members of the Class have been damaged in an amount to be determined at trial.

2746. Accordingly, the members of the Class assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to the members of the Class of the purchase price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class, and award the following relief:

A.     An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Plaintiffs' counsel as counsel for the Class;

B.     An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful and unfair business conduct and practices alleged herein;

C.     Appropriate injunctive and equitable relief, including a recall of all Class Vehicles and return of monies paid for the Class Vehicles;

D.     A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

E.     An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value and out-of-pocket costs in an amount to be determined at trial;

F.     An order awarding any applicable statutory and civil penalties;

G.     An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

H.     An award of costs, expenses, and attorneys' fees as permitted by law; and

I.     Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

DATED:  May 20, 2019

LAW OFFICE OF ROBERT G.
  LOEWY, P.C.
ROBERT G. LOEWY


_/s/ Robert G. Loewy_
ROBERT G. LOEWY

20 Enterprise, Suite 310
Aliso Viejo, CA  92656
Telephone:  949/468-7150
949/242-5105 (fax)
rloewy@rloewy.com

ROBBINS GELLER RUDMAN &
  DOWD LLP
PAUL J. GELLER
MARK J. DEARMAN
RICARDO J. MARENCO
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com
rmarenco@rgrdlaw.com

KESSLER TOPAZ
  MELTZER CHECK LLP
STACEY KAPLAN
(State Bar No. 241989)
JENNY PAQUETTE
(State Bar No. 321561)
1 Sansome Street, Suite 1850
San Francisco, CA  94104
Telephone:  415/400-3000
skaplan@ktmc.com
jpaquette@ktmc.com

- 572 -

KESSLER TOPAZ
  MELTZER & CHECK, LLP
JOSEPH H. MELTZER
MELISSA L. TROUTNER
NATALIE LESSER
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
jmeltzer@ktmc.com
mtroutner@ktmc.com
nlesser@ktmc.com

CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY & AGNELLO,
  P.C.
JAMES E. CECCHI
CAROLINE F. BARTLETT
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com
decklund@carellabyrne.com

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
CHRISTOPHER AYERS
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/639-9393 (fax)
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
cayers@seegerweiss.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOIES SCHILLER FLEXNER LLP
DAMIEN MARSHALL
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: 212/446-2300
212/446-2350 (fax)
dmarshall@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEPHEN N. ZACH
100 SE Second Street, Suite 2800
Miami, FL 33131
Telephone: 305/539-8400
305/539 1307 (fax)
szack@bsfllp.com

WITES LAW FIRM
MARC WITES
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: 954/933-4400
954/428-3929 (fax)
mwites@witeslaw.com

*Attorneys for Plaintiff*